Scott J. Kiepen (State Bar No. 175504)
Katrina A. Pagonis (State Bar No. CA 262890)
**HOOPER LUNDY & BOOKMAN, P.C.**
101 Montgomery Street, 11th Floor
San Francisco, CA 94104
Telephone: (415) 875-8500
Facsimile: (415) 986-2157
Email: SKiepen@health-law.com
Email: KPagonis@health-law.com

Joseph R. LaMagna (State Bar No. CA 246850)
**HOOPER LUNDY & BOOKMAN, P.C.**
101 W. Broadway, Suite 1200
San Diego, CA 92101
Telephone: (619) 744-7300
Facsimile: (619) 230-0987
Email: JLamagna@health-law.com

Attorneys for Defendants Roy Hong, M.D.
aka Roy W. Hong and Palo Alto Foundation
Medical Group, Inc., a corporation

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and THE STATE OF CALIFORNIA, *ex. rel.* Judy Jones, an individual,<br><br>                Plaintiffs,<br><br>       vs.<br><br>SUTTER HEALTH, a corporation; SUTTER BAY MEDICAL FOUNDATION, a corporation; PALO ALTO MEDICAL FOUNDATION, a corporation, PALO ALTO FOUNDATION MEDICAL GROUP, INC., a corporation; ROY HONG, M.D., aka ROY W. HONG, and individual; and DOES 1-10,<br><br>            Defendants. | Case No. 18-CV-02067-LHK<br><br>(*Assigned to The Honorable Lucy H. Koh*)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS ROY HONG, M.D. aka ROY W. HONG AND PALO ALTO FOUNDATION MEDICAL GROUP, INC., A CORPORATION, MOTION TO DISMISS**<br><br>Date: October 29, 2020<br>Time: 1:30 p.m.<br>Crtrm: 8<br>Judge: Lucy H. Koh<br><br>First Amended Comp. Filed: October 19, 2018<br>Trial Date: Not Set |

MEMO ISO DEFENDANTS DR. HONG AND PAFMG MOTION TO DISMISS

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on October 29, 2020 at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 8, 4th Floor of the United States District Court for the Northern District of California, 280 South 1st Street, San Jose, CA 95113, Defendants Palo Alto Foundation Medical Group, Inc. (PAFMG) and Roy Hong, M.D., by and through their counsel will and hereby do respectfully move this Court to dismiss the First Amended Complaint in the above-captioned action pursuant to Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6).

This Motion is based on this notice of motion and motion, memorandum of points and authorities below, the request for judicial notice filed herewith, the declaration of Joseph R. LaMagna filed herewith, and the pleadings and papers on file in this action, and on such other further evidence and argument as may be presented prior to, and at, the hearing on this Motion.

Dated:  June 15, 2020               HOOPER, LUNDY & BOOKMAN, P.C.


By:  _____/s/ Scott J. Kiepen_____
            SCOTT J. KIEPEN
            KATRINA A. PAGONIS
            JOSEPH R. LAMAGNA
Attorneys for Defendants Roy Hong, M.D.
aka Roy W. Hong; Palo Alto Foundation Medical
Group, Inc., a corporation

# TABLE OF CONTENTS

I. Introduction ........................................................................................................ 6

II. Factual Background ............................................................................................. 7

    A. Relator's Previous and Pending Lawsuits ................................................. 7

    B. Relator's Allegations ................................................................................. 8

III. Pleading Standards Under the FCA and CFCA .............................................. 12

IV. Argument ......................................................................................................... 13

    A. Plaintiff is the Paradigmatic Parasitic Relator Whose Claims—Materially Derived from a Federal Report—are Barred under the Public Disclosure Bar ..... 13

        1. Relator's allegations of unbundling and upcoding are wholly derived from a FOIA report and are thus subject to the public disclosure bar ....... 14

        2. Plaintiff is not an original source because she has no knowledge concerning Medicare claims that is independent of the FOIA reports and her other allegations do not "materially add" to the public disclosure ................................................................................................. 16

    B. Relator's FCA Action Fails under Rules 8(a) and 9(b) ............................ 19

        1. Plaintiff Cannot Show the Materiality of the Purported Coding "Rules" Alleged by Plaintiff ........................................................... 20

        2. Relator has not Alleged any False Claims ................................... 22

        3. Relator has not Alleged that PAFMG Caused the Submission of Any Claim or that Dr. Hong Caused the Submission of Any of the Claims Associated with Dr. Gates ........................................................... 24

        4. Relator has not Alleged Knowledge on the Part of Dr. Hong or PAFMG ........................................................................................ 25

        5. Relator has not Alleged any Reverse False Claims by Dr. Hong or PAFMG ........................................................................................ 26

    C. Relator has Failed to State a Claim under the CFCA ............................... 27

    D. This Action was Filed Under a Pseudonym in Violation of Rule 10(a) ............... 28

V. Conclusion ....................................................................................................... 28

MEMO ISO DEFENDANTS DR. HONG AND PAFMG MOTION TO DISMISS

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                               **Page(s)**

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ........................................................................ 13, 15, 24, 27

*Bailey v. Gatan, Inc.,*
  783 Fed. Appx. 692 (9th Cir. 2019) ....................................................... 14

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ................................................................................ 17, 24

*U.S. ex rel. Conrad v. Abbott Labs., Inc.,*
  2013 WL 682740 (D. Mass. Feb. 25, 2013) ............................................ 16

*San Francisco Unified Sch. Dist. ex rel. Contreras v. First Student, Inc.,*
  224 Cal. App. 4th 627 (2014) ................................................................... 14

*United States ex rel. Doe v. Stanford Healthcare Billing Dep't,*
  No. 2:17-cv-08726, 2020 U.S. Dist. LEXIS 40906 (C.D. Cal. Feb. 4, 2020) ................. *passim*

*United States ex rel. Mateski v. Raytheon Co.,*
  816 F.3d 565 (9th Cir. 2016) .................................................................... 16

*United States ex rel. Roe v. Stanford Healthcare Billing Department,*
  No. 2:17-cv-8726 (C.D. Cal. filed Dec. 4, 2017) .................................... 9

*Schindler Elevator Corp. v. United States ex rel. Kirk,*
  563 U.S. 401 (2011) ................................................................................ 15, 16

*State v. Altus Fin.,*
  116 P.3d 1175 (Cal. 2005) ....................................................................... 14

*United Health Services, Inc. v. Escobar,*
  136 S. Ct. 1989 (2016) ............................................................................. 21

*United States v. Safran Grp., S.A.,*
  2017 U.S. Dist. LEXIS 8408, 2017 WL 235197 (N.D. Cal. Jan. 19, 2017) ........... 28

**Statutes**

31 U.S.C.
  § 3729(b)(2) ............................................................................................. 28
  § 3730(e)(4)(A) ............................................................................. 7, 14, 16, 19
  § 31730(e)(4)(A) ..................................................................................... 17

Cal. Gov't Code
  § 12650(b)(1) ........................................................................................... 28

Cal. Ins. Code
    § 1871 *et seq.*.................................................................................................. 8

**Other Authorities**

Fed. R. Civ. P.
    Rule 8(a)............................................................................ 13, 14, 24, 26
    Rule 9(b)............................................................................ 13, 14, 21, 25
    Rule 10(a)................................................................................. 9, 29

MEMO ISO DEFENDANTS MOTION TO DISMISS

## I.    __INTRODUCTION__

Relator is proceeding without authorization under the pseudonym Judy Jones.  She brings this False Claims Act ("FCA") lawsuit after having already unsuccessfully litigated a malpractice action against Defendants Dr. Hong and Palo Alto Foundation Medical Group ("PAFMG") for three years in state court.  Most importantly, she is a parasitic relator trying to gain a bounty from the government while using the results of a federal Freedom of Information Act ("FOIA") report as the exclusive basis for the purported false claims she alleges.  The entire theory of Relator's case is that various breast reconstruction claims contained in this FOIA report are facially false based on her (mis)understanding of the relevant procedure codes.

Relator's claims must be dismissed under the public disclosure bar, 31 U.S.C. § 3730(e)(4)(A), because she freely alleges that her allegations derived from a Federal FOIA report.  Congress, through the "public disclosure bar", has barred outsiders like Relator from obtaining Federal reports and suing (with the goal of diverting a bounty from the government) based on the information contained in the Federal report.  Despite the vehemence of Relator's argument, she cannot meet the original source exception to the public disclosure bar, because she adds nothing material to the publicly disclosed information (and in fact merely adds misstatements and misunderstandings).  Therefore, her claims must be dismissed.

Even if Relator's claims were not barred, they should be dismissed for failure to state a claim.  Relator has not reviewed a single medical record to validate her interpretation of the billings or her belief as to why certain codes were used.  She simply assumes that codes were used to secure additional reimbursement, without considering the more likely explanation that codes were used to capture the services provided to the Medicare beneficiary.  She also pulls selectively from coding descriptions to craft various coding "rules" from whole cloth.  Despite Relator's apparently strong belief that certain codes cannot be billed together in any situation or that various codes must constitute upcoding or unbundling, she cites to no Medicare rules or guidance that render any claim false.  Moreover, her own allegations show that Medicare routinely paid claims with coding combinations that she alleges are universally and unfailingly improper.  As such, either the coding "rules" that Relator advances are not actual coding rules, or those rules are not

1  material to payment under Medicare.  In either case, Relator cannot state a claim under the FCA

2  and this action should be dismissed.[1]

3  ## II.  FACTUAL BACKGROUND

4  ### A.  Relator's Previous and Pending Lawsuits

5         Relator is a serial, pseudonymous plaintiff and former patient who unsuccessfully sued

6  Defendants Dr. Hong and PAFMG along with other parties following her November 2012

7  preoperative consult and December 2012 mastectomy.  *Compare* FAC ¶ 41 (alleging a November

8  2012 preoperative consult with Dr. Hong followed by a December 2012 bilateral mastectomy and

9  reconstruction procedure) *with* RJN, Ex. A, ¶¶ 21-22, 168, 169, 450, 447 (same).  Like the current

10  action, her malpractice action was filed under a pseudonym—Jane Doe in her malpractice case

11  and Judy Jones in the instant FCA matter.  On November 29, 2017, her state-court malpractice

12  action was dismissed after she failed to appear for trial, despite having obtained discovery from

13  Dr. Hong, PAFMG, and others.  RJN, Ex. B (dismissing her complaint pursuant to Cal. Code Civ.

14  Proc. § 581(b)(5)).  Approximately four months later, she filed her original complaint (ECF 1) in

15  this action under a new pseudonym.  Her FAC includes allegations of responses to interrogatories

16  (FAC ¶ 120) and depositions (FAC ¶¶ 96, 118, 119) obtained in her unsuccessful state court

17  action, again confirming that Relator Judy Jones is Plaintiff Jane Doe from the prior action.  *See*

18  *also* RJN, Ex. A, ¶ 452 (making similar allegations concerning interrogatory responses), ¶ 440

19  (referencing the November 2014 deposition excerpted in paragraph 119 of Relator's FAC), ¶ 441

20  (referencing the February 2016 deposition excerpted in paragraph 118 of Relator's FAC).

21  Although Relator makes no allegations concerning whether her care resulted in any Medicare

22  claim, Relator's allegations in her malpractice action confirm that her surgery was only covered by

23  commercial insurance and not Medicare.  *E.g.*, RJN, Ex. A, ¶¶ 161, 166, 200, 374-75.

24

25

26         [1] Although Relator's FAC includes a claim under California's Insurance Frauds Prevention
   Act (Cal. Ins. Code § 1871 *et seq.*) (the Third Cause of Action), on December 4, 2019, she
27  voluntarily dismissed this Third Cause of Action.  ECF 39.  As such, this motion will not address
   the Insurance Frauds Prevention Act or Relator's dismissed Third Cause of Action.

28

Relator is also separately litigating another FCA suit against Stanford Health Care and other Defendants under a third pseudonym (Emily Roe) following another unsuccessful malpractice action. *United States ex rel. Roe v. Stanford Healthcare Billing Department*, No. 2:17-cv-8726 (C.D. Cal. filed Dec. 4, 2017). As is true in the case at bar, Relator alleges in her *Roe* action that she is a certified medical coder and a practicing physician who underwent a mastectomy in December 2012 and thereafter procured a FOIA report from CMS. *Compare* RJN, Ex. C, ¶¶ 179-181 *with* FAC ¶¶ 38-41 (setting forth the same allegations). In *Roe*, like the case at bar, Relator filed her complaints under a pseudonym in violation of Fed. R. Civ. P. 10(a) and failed to seek leave of the Court to do so. Because "Relator's surgery was covered by private insurance, not Medicare, . . . Relator relies on extensive evidence obtained from Medicare via a FOIA request" in this other FCA action. *United States ex rel. Doe v. Stanford Healthcare Billing Dep't*, No. 2:17-cv-08726, 2020 U.S. Dist. LEXIS 40906, *2 (C.D. Cal. Feb. 4, 2020).[2] On February 4, 2020, the district court in *Roe* dismissed her First Amended Complaint under the public disclosure bar, noting that the FOIA report is a public disclosure and that Relator's independent information do not "materially add" to the FOIA report. *Id.* at *2-4. At present, the defendants' motion to dismiss Relator's second amended complaint is pending in *Roe*.

## B.     Relator's Allegations

In 2012, Relator underwent a bilateral preventative mastectomy and breast reconstruction, the latter of which was performed by Defendant Dr. Hong. FAC ¶ 41.[3] In November 2016,

---

[2] Although Relator filed her Stanford action under the pseudonym "Emily Roe," RJN, Ex. C, the Court's order granting the motion to dismiss uses the pseudonym "Emily Doe." 2020 U.S. Dist. LEXIS 40906.

[3] Although Relator alleges that Defendant Dr. Hong performed the mastectomy, FAC ¶ 41, this allegation is inconsistent with her allegation that Dr. Hong is a "board certified plastic surgeon" rather than a surgical oncologist, FAC ¶ 26. Relator's complaint in her unsuccessful malpractice action correctly notes that Dr. Dirbas (a defendant in her other FCA case brought under the pseudonym "Emily Roe") performed the mastectomy and Dr. Hong performed a breast reconstruction procedure. RJN, Ex. A, ¶¶ 21-22.

Relator reviewed the medical bills from her 2012 surgery and care.[4]  FAC ¶ 94.  Although she broadly asserts that she "observed certain billing irregularities," she does not allege any falsity with respect to her commercial insurance claim.[5]  During her litigation of her malpractice claim, she submitted a FOIA request to CMS for the billing and coding records of the Defendants.  *Id*.  In response, CMS provided Relator with the coding, billing, and payment records attached to the FAC as Exhibit A.  FAC ¶ 95.  Review of the FOIA report, resulted in Relator pursuing a second FOIA request.  FAC ¶ 98.  The government then provided several additional reports from March 2017 through March 2018.  *Id*.

Relator analyzed the government reports and "determined that Sutter had pattern billed and received federal and State funds for breast surgery claims which did not appear to conform to NCCI [National Correct Coding Initiative], were incompatible code combinations, and failed to adhere to CMS mandates.  FAC ¶ 100.  Relator's complaint, however, does not allege any NCCI requirements and does not allege any CMS rule that rendered any code combination "incompatible."  Moreover, although she alleges that Medicare prohibits "unbundling," FAC ¶ 78, and repeatedly characterizes claims as "unbundling" and "upcoding," Relator does not allege any actual unbundling of global fees or upcoding by any Defendant.

The thrust of Relator's allegations is that Defendants improperly billed specific combinations of Current Procedural Terminology ("CPT") Codes related to breast reconstruction surgeries after mastectomies.  FAC ¶ 2.  Relator alleges that the codes used necessarily render the

---

[4] Relator alleges that she is a physician and certified medical coder, suggesting that this experience qualifies her to review breast reconstruction claims.  FAC ¶ 38-40.  But she does not allege that she is a plastic surgeon or has any experience specific to coding breast reconstruction claims.

[5] Relator has not alleged that when she underwent surgery she received a anything other than a single-stage reconstruction billed to her commercial insurer under CPT Code 19340.  Her prior malpractice case also focused on assertions that Dr. Hong was not sufficiently experienced to perform the single stage reconstruction, which is why the deposition transcripts and paragraphs 96, 118-120 allege Dr. Hong's representations of his experience with single-stage reconstruction.  *See also* RJN, Ex. A.  Thus, Relator seems to have made the FOIA request to evaluate Dr. Hong's representations of his experience, but then used the resulting government report to form the basis for this lawsuit.

claims false and that, therefore, she can ascertain falsity that was unknown to the government from the FOIA report alone. Relator does not allege she has any experience as a plastic surgeon, that she has ever performed breast reconstruction surgery, that she has ever billed or coded these codes before, or that she has any specific training on these breast reconstruction codes. Yet, she has three main theories about how the coding/billing disclosed in the Federal reports could not possibly be proper.

First, Realtor puts forth a theory related to the placement and removal of tissue expanders (TEs). FAC ¶ 5. She asserts that CPT Code 19357 is to be used for multi-stage reconstruction where a TE is used. FAC ¶¶ 5 and 105. According to relator a multi-stage procedure is when the physician performs the mastectomy, but instead of immediately inserting a breast implant, a TE is inserted, which is then expanded with saline over a period of time to create enough room to accommodate the insertion of a breast implant at a later date. FAC ¶ 84. Without reviewing any medical records, she alleges that the CMS data showed CPT Code 19340 was sometimes being used to bill for the replacement of the TE with a permanent prosthesis. FAC ¶ 7. She alleges that CPT Code 11970 is the code that must be used with CPT 19357 instead of CPT 19340, because she believes "[i]t is improper to code CPT 19340 after 19357." FAC ¶ 106; *see also* FAC ¶ 5. Thus, she asserts all billings of CPT Code 19340 after CPT Code 19357 must be false, and that through "upcoding" to 19340, Defendants received more reimbursement. *See also* FAC ¶¶ 116 and 123-125 (repeating the theory). She provided no NCCI manual provisions or Medicare rules to support her position.

Second, along these same lines, Relator alleges that CPT Cod 19340 can only be used for immediate/single stage breast reconstruction, but that Defendants also used it for delayed/multi-stage procedures rather than using CPT Code 19342 (delayed insertion of prosthesis). FAC ¶¶ 9 and 101. According to Relator, CPT Code 19340 is only to be used for is a "one and done" procedure, which is when a permanent implant (rather than a TE) is inserted during the same

surgery as the mastectomy.[6]  FAC ¶ 101.  Relator alleges that there is a separate CPT code, CPT Code 19342, that must be used when there is a delayed/multi-stage procedure.  *Id*. and ¶ 87. Relator alleges that the CMS reports show that Defendants performed delayed reconstructions and should have used CPT Code 19342, but they improperly upcoded the bill by using CPT Code 19340, which pays more than CPT Code 19342.  FAC ¶¶ 100-101.  She cited to no NCCI manual provisions or Medicare rules to support her theory.

Third, Relator alleges a theory of improperly billing of CPT Codes 19370 and/or 19380 on the same date of service as CPT Code 19340 (which she alleges was unlawfully billed under her first theory above).  Relator asserts, without support, that the immediate insertion code 19340 always includes any capsulectomy (CPT Code 19370) or breast revision (CPT Code 19380) such that these codes cannot be billed separately.  FAC ¶ 129.  However, she alleges the FOIA report included claims where 19340 was billed with 19370 or 19380 showing that Defendants must have been overbilling any time a CPT Code 19340 was used with either 19370 or 19380.  FAC ¶¶129-130.  She offered no NCCI manual provisions or Medicare rules to support her assertions.

In addition to these three main theories, Relator briefly suggests two other categories of claims that violate her billing "rules."  In paragraph 127, she alleges that "Sutter and Hong also unbundled wo stage TE surgery by adding on a 19371 code [capsulectomy] to 19328 [removal of intact implant]."[7]  Lastly, Relator alleges that "Sutter and Hong billed CPT 12032 to close the wound in breast surgery *in addition* to CPT 19340, which is illegal unbundling."  FAC ¶ 131. Although Relator assumes that CPT Code 12032 was being used to code for the closure of the incision used to insert the implant, she cannot allege this fact because she has no actual knowledge

---

[6] At the same time, however, Relator alleges that the definition of CPT Code 19340 includes "immediate insertion . . . following mastopexy, mastectomy or in reconstruction."  FAC ¶¶ 87, 89.  But her allegations render this language null as she asserts that CPT Code 19340 can only be used for a "single stage 'one-and-done' mastectomy reconstruction with an immediate prosthesis."  *E.g.* FAC ¶ 101.

[7] She asserts in paragraph 126 that this is contrary to guidance from the American Society of Plastic Surgeons, but because "the removal of the implant comes with the capsule," but this entire sentence is taken verbatim from an online form, *see* RJN Ex. E, and not from the American Society of Plastic Surgeons or any official source.

1   of the medical case underlying the claim.  Again, Relator offers no NCCI manual provisions or

2   Medicare rules to support either of these rules.

3   **III.        PLEADING STANDARDS UNDER THE FCA AND CFCA**

4          To survive a motion to dismiss, a complaint must "contain sufficient factual matter,

5   accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

6   U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); Rule 8(a);

7   *United States ex rel Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115-16 (9th Cir.

8   2014) (dismissing FCA action under Rule 8(a)); *Cafasso v. General Dynamics C4 Systems, Inc.*,

9   637 F.3d 1047, 1055 (9th Cir. 2011) (footnotes omitted) (explicitly recognizing that FCA claims

10  must meet Rule 8(a) plausibility and state "enough fact[s] to raise a reasonable expectation that

11  discovery will reveal evidence of [the misconduct alleged]."  When deciding a Rule 12(b)(6)

12  motion, the Court must accept the facts pleaded in the complaint as true.  However, pleadings that

13  "are no more than conclusions . . . are not entitled to the assumption of truth."  *Twombly*, 550 U.S.

14  at 555.

15         The heightened pleading standard of Rule 9(b) applies to FCA and CFCA actions.  "Rule

16  9(b) serves to give defendants adequate notice to allow them to defend against the charge and to

17  deter the filing of complaints as a pretext for the discovery of unknown wrongs. . . ."  *In re Stac*

18  *Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996) (internal quotation marks omitted).  To

19  satisfy Rule 9(b), a relator must "state with particularity the circumstances constituting fraud or

20  mistake, including the who, what, when, where, and how of the misconduct charged."  *Ebeid ex*

21  *rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (internal quotation marks

22  omitted); *see also United States ex rel. Modglin v. DJO Glob. Inc.*, 114 F. Supp. 3d 993, 1011

23  (C.D. Cal. 2015), ("[A] plaintiff must specify the content of the fraudulent representation, the

24  person who made it, when and where the representation was made, and the manner in which it was

25  untrue and misleading, or the circumstances indicating that it was false."), *aff'd sub nom United*

26  *States v. DJO Glob., Inc.*, 678 F. App'x 594 (9th Cir. 2017).

27

28

## IV. ARGUMENT

Despite the length of Relator's complaint, her material allegations are based on (1) the CMS report and (2) inconsistences between the claims data contained in that report and her view of how breast reconstruction claims should be coded. Her reliance on the CMS report to substantiate all of her allegations concerning Medicare claims is alone fatal to her FCA and CFCA action because the public disclosure bar prohibits parasitic and opportunistic relators from seeking to profit off the government's own data and reports. *See* Part IV.A, *infra*. Moreover, her understanding and interpretation of the applicable codes and breast reconstruction claims are fundamentally flawed, and she cannot allege the elements of an FCA or CFCA action with the requisite level of plausibility under Rule 8(a) or specificity under Rule 9(b). *See* Part IV.B, *infra*. Because any amendment of her complaint would be futile, her FAC should be dismissed with prejudice, bringing to a close Relator's attempt to continue pursuing Defendants following the dismissal of her three-year malpractice action.[8]

### A. Plaintiff is the Paradigmatic Parasitic Relator Whose Claims—Materially Derived from a Federal Report—are Barred under the Public Disclosure Bar

Under the public disclosure bar, the court "shall dismiss" an action if substantially the same allegations or transactions as alleged in the action were publicly disclosed unless the relator is an "original source" of the information. 31 U.S.C. § 3730(e)(4)(A). The public disclosure bar prevents parasitic relators from sharing in the government's recovery and profiting off information already in the government's possession or the public domain. "The public disclosure bar is intended to encourage suits by whistle-blowers with genuinely valuable information, while discouraging litigation by plaintiffs who have no significant information of their own to

---

[8] California courts generally interpret the CFCA by reference to case law interpreting the FCA, given the "very close similarity" between the two. *San Francisco Unified Sch. Dist. ex rel. Contreras v. First Student, Inc.*, 224 Cal. App. 4th 627, 638, (2014); *see also State v. Altus Fin.*, 116 P.3d 1175, 1184 (Cal. 2005) ("[T]he CFCA is patterned on similar federal legislation and it is appropriate to look to precedent construing the equivalent federal act.) (internal quotations and citation omitted); *Bailey v. Gatan, Inc.*, 783 Fed. Appx. 692, 693-94 (9th Cir. 2019) (same). Therefore, the arguments presented in Parts IV.A and IV.B, *infra*, although stated in terms of the FCA, apply with equal force to Relator's CFCA claims.

contribute." *United States ex rel. Mateski v. Raytheon Co.*, 816 F.3d 565, 570 (9th Cir. 2016). "The public disclosure bar is triggered if three things are true: (1) the disclosure at issue occurred through one of the channels specified in the statute; (2) the disclosure was 'public'; and (3) the relator's action is "based upon" the allegations or transactions publicly disclosed." *Malhotra v. Steinberg*, 770 F.3d 853, 858 (9th Cir. 2014).[9] The "channels" through which an allegation or transaction may be publicly disclosed include any "Federal report." 31 U.S.C. § 3730(e)(4)(A)(ii). If the public disclosure bar applies, the court must dismiss the action unless the relator is an original source of the information. *See* 31 U.S.C. § 3730(e)(4)(B).

In Relator's other FOIA-based FCA action, her first amended complaint was dismissed by the United States District Court for the Central District of California based on the public disclosure bar. *Stanford Healthcare Billing Dep't*, 2020 U.S. Dist. LEXIS 40906. Her FAC should likewise be dismissed here for the same reasons.

        1.    <u>Relator's allegations of unbundling and upcoding are wholly derived from a FOIA report and are thus subject to the public disclosure bar</u>

Written FOIA responses constitute a "Federal report" triggering the public disclosure bar. *Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 412 (2011); *Stanford Healthcare Billing Dep't*, 2020 U.S. Dist. LEXIS 40906, *2 ("[I]nformation acquired via a FOIA request qualifies as public disclosure."). In *Schindler*, the Supreme Court instructed that the term "report" in the public disclosure bar should be interpreted broadly. *Id.* at 408. It held that the U.S. Department of Labor's responses to a relator's FOIA requests were "reports" under the FCA because each "was an 'official or formal statement' that 'gave information' and 'notified' [the relator] of the agency's resolution of her FOIA request." *Id.* at 411 (alterations omitted); *see also id.* at 407-08 (reasoning that a "report" is "something that gives information or a notification or an official or formal statement of facts or proceedings") (internal quotation marks, citations, and alterations omitted).

---

[9] Relator's allegations regarding the public disclosure bar are limited to her legal conclusion that the bar does not apply and that she is an original source, FAC ¶¶ 14-16, 133, 150, and the Court need not accept these bare allegations as true. *Iqbal*, 556 U.S. at 678.

The FOIA responses from CMS are no different, and *Schindler* squarely applies. 2020 U.S. Dist. LEXIS 40906, *2; *see also United States ex rel. Ibanez v. Bristol-Myers Squibb Co.,* 2015 WL 12991207, at *4 (S.D. Ohio Sept. 24, 2015) (finding that Medicare Provider Utilization and Payment Data from CMS qualify as a "report" because "the aggregate data are an official statement of facts"), *aff'd on other grounds,* 874 F.3d 905 (6th Cir. 2017); *U.S. ex rel. Conrad v. Abbott Labs., Inc.,* 2013 WL 682740, at *4-5 (D. Mass. Feb. 25, 2013) (finding that data files available to the public on CMS's website were within *Schindler's* definition of "report"); *see also U.S. ex rel. Ambrosecchia v. Paddock Labs., LLC,* 2015 WL 5605281, at *5-6 (E.D. Mo. Sept. 23, 2015) (finding that public disclosure bar applied, in part, because relator relied on the same government reports, including publicly disclosed CMS data files, as relator in *Conrad).* Like *Schindler,* this case is "a classic example of the opportunistic litigation that the public disclosure bar is designed to discourage." *Schindler,* 563 U.S. at 413 (internal quotation marks omitted).

Despite the length of her complaint, Relator's factual allegations exclusively concern alleged upcoding and unbundling that Relator contends can be ascertained from the four corners of the FOIA report itself. Thus, Relator's theory of the case relies on her assertion that fraud can be inferred from the FOIA report alone, meaning that the government report itself fully discloses the transactions at issue.[10] For example, in paragraph 123, Relator alleges upcoding of two claims based exclusively on pseudonymized claim data contained in the FOIA report. In essence, her allegations are that, her review of a Federal report (a public disclosure) reveals that three codes were billed for a Medicare beneficiary that she does not believe were correct based on the definitions of the codes themselves. In short, Relator knows nothing about the actual care provided to any Medicare beneficiary whose claims data was included in the FOIA report, and she asserts that she does not need to know anything about the actual care furnished to any Medicare

---

[10] The Ninth Circuit has generally defined "transactions" in the context of the public disclosure bar as "facts from which fraud can be inferred." *Mateski*, 816 F.3d 565, 571. Because Relator exclusively infers fraud from the data in the FOIA report, it naturally follows that "substantially the same . . . transactions as alleged in" her FAC "were publicly disclosed" in a "Federal report," 31 U.S.C. § 3730(e)(4)(A).

1  beneficiary because the "falsity" of the claims can be ascertained from the public disclosure (the

2  FOIA report) alone.

3      2.   Plaintiff is not an original source because she has no knowledge concerning
           Medicare claims that is independent of the FOIA reports and her other
4          allegations do not "materially add" to the public disclosure

5      Because the FOIA report on which Relator relies constitutes a public disclosure that

6  predates her filing of this suit, Relator has the burden of proving that she "has knowledge that is

7  independent of and materially adds to the publicly disclosed allegations or transactions" and "has

8  voluntarily provided the information to the Government" such that she can proceed under the

9  "original source" exception to the public disclosure bar.[11]  31 U.S.C. § 3070(e)(4)(B).

10 Notwithstanding her bare and conclusory assertion that she "has knowledge that is independent of

11 any materially adds to any purported publicly disclosed allegations or transactions," FAC ¶ 16, the

12 FAC makes clear that Relator's relevant knowledge concerning Medicare claims fully derives

13 from the public disclosure at issue here and thus cannot be "independent" of that disclosure. *Cf.*

14 *Aflatooni*, 163 F.3d at 525 (relator had independent knowledge because his knowledge preceded

15 the public disclosure).  Rather, Relator is a serial, parasitic relator seeking to leverage Federal

16 reports into a windfall or, at a minimum, to further burden Defendants with defense of another

17 meritless suit following dismissal of her state court malpractice action.

18     Relator does not have "knowledge that is independent of and materially adds to the

19 publicly disclosed allegations or transactions" because her material knowledge is based

---

20 [11] Alternatively, an individual who, "prior to a public disclosure . . . , has voluntarily

21 disclosed to the Government the information on which allegations or transactions in a claim are based" is an original source.  As the District Court for the Central District of California noted in

22 Relator's other FCA action, Relator "did not disclose any of the Medicare information at issue to the government" prior to the public disclosure, so the alternative original source definition cannot

23 apply to her.  2020 U.S. Dist. LEXIS 40906, *2-3.  Because Relator had no knowledge of any Defendant's Medicare billing history before the public disclosure (the CMS report procured

24 through a FOIA request), she could not have disclosed anything material to the government *prior to* the public disclosure.  Her bare and conclusory paraphrasing of 31 U.S.C. § 31730(e)(4)(A),

25 FAC ¶ 15, is a mere legal conclusion couched as a factual allegation that should not be accepted as

26 true, *Twombly*, 550 U.S. at 555.  Moreover, her allegation that she disclosed the allegations or

27 transactions at issue prior to the public disclosure is in fact contradicted by her allegations concerning her FOIA request and analysis of CMS data, *e.g.*, FAC ¶¶ 94-100

28

exclusively on the FOIA reports.  Her knowledge of her own surgery is not material to this action because she does not allege Medicare or Medicaid coverage for her procedure or that any of the theories of falsity she relies on in her FAC arose in her own care.  In fact, Relator's previous malpractice suit, filed under a different pseudonym but alleging the same procedures and dates, was dismissed.  In that suit, she alleges the submission of claim information to a commercial insurance carrier, confirming that she was not a Medicare beneficiary.  RJN, Ex. A, ¶¶ 161, 166, 200, 374-75; *see also* 2020 U.S. Dist. LEXIS 40906, *2 (noting Relator's commercial coverage).

Her allegations concerning CPT code definitions do not materially add to the claims data, and in fact demonstrate her inability to materially add to the allegations.  For example, Relator alleges that that "Sutter and Hong billed CPT 12032 to close the wound in breast surgery in addition to CPT 19340," but based on claims data alone she cannot allege that this was improper. CPT 12032 is for "repair, intermediate, wounds of scalp, axillae, trunk and/or extremities (excluding hands and feet), 2.6 to 7.5 cm."  Based on the claims data alone, Relator improperly and implausibly assumes that because Dr. Hong performed this wound closure on the same date as the breast reconstruction,  this code must represent the closure of the surgical incision for the breast reconstruction, rather than (for example) the closure of a separate, unrelated incision (*e.g.*, the oncology surgeon's incision as part of the axillary lymph node dissection).  Relator's baseless assumptions do not constitute "independent information" and certainly do not "materially add" to CMS's FOIA report.

Furthermore, even if Relator provided genuine "expertise" rather than misleading and inaccurate coding "rules," she still would not be an original source because her purported "expert analysis" does not constitute "independent knowledge."  *E.g.*, *A-1 Ambulance Serv. v. California*, 202 F.3d 1238, 1245 (9th Cir. 2000) ("If a relator merely uses his or her unique experience or training to conclude that the material elements already in the public domain constitute a false claim, then a qui tam action cannot proceed.") (quoting *United States ex rel. Findley v. FPC-Boron Employees' Club*, 105 F.3d 675, 688 (D.C. Cir. 1996)); *United States ex rel. Zizic v. Q2Administrators*, LLC, 728 F.3d 228, 240 (3d Cir. 2013) ("[W]e have repeatedly rejected the argument that a realtor's knowledge is independent when it is gained through the application of

expertise to information publicly disclosed under § 3730(e)(4)(A)."); *United States ex rel. Calva*, No. SACV 16-1983 JVS(JCGx), 2018 U.S. Dist. LEXIS 227679, at *24 (C.D. Cal. June 12, 2018) ("[N]o matter how sophisticated and rigorous his analysis might have been, simply conducting a specialized analysis of publicly available information based on his expertise does not make [a relator] an 'original source.'").  As such, even if Relator's analysis demonstrated actual expertise and mastery of applicable coding rules (it does not), her use of that expertise in analyzing the CMS reports does not render her an original source.

To the extent that Relator contends that discovery she obtained in her unsuccessful state court malpractice action renders her an original source, the excerpted deposition testimony and responses to interrogatories do not "materially add[] to the publicly disclosed allegations or transactions," as is required under 31 U.S.C. § 3730(e)(4)(B).  In sum, Relator contends that discovery in state court indicates that Dr. Hong had only performed a handful of "single stage" breast reconstruction surgeries involving subcutaneous or subpectoral implants before December 2012.  FAC ¶¶ 118-120.  She alleges that this information is inconsistent with the number of claims for breast reconstruction procedures coded with CPT Code 19340 in that time frame.  FAC ¶¶ 96, 121-122.  This allegation, however, is premised on her understanding that CPT Code 19340 can only be billed when an implant is immediately inserted following only a *mastectomy*.  Rather, the code definition she recites makes clear that this code is also used where the implant is immediately inserted "in reconstruction" regardless of the date of any mastectomy.  *E.g.*, FAC ¶¶ 87, 89; *see also* discussion *infra* Parts B.1 & B.2.  Because the cited deposition testimony and responses to interrogatories only concern one type of procedure that can be billed with CPT Code 19340 and are wholly silent as to the immediate insertion of an implant "in reconstruction," the information she provides is not material to the allegations and transactions at issue here.

Furthermore, the claims data itself makes clear that the procedures listed were not single-stage reconstruction procedures, and thus her allegation that these procedures were not single-stage reconstruction procedures cannot materially add to the public disclosure.  For example, in paragraphs 123 and 124, Relator presents claims data for two beneficiaries that underwent breast reconstruction procedures.  In both instances, the beneficiary's first procedure was billed as a

MEMO ISO DEFENDANTS MOTION TO DISMISS

breast reconstruction with a tissue expander (CPT Code 19357). The claims data then shows that each beneficiary later underwent a second procedure that was coded as "immediate insertion of breast prosthesis . . . in reconstruction" (CPT Code 19340). Based on the claims data alone, then, it is clear that neither of these cases involved a single-stage breast reconstruction surgery. Rather, each case involved the insertion of a tissue expander and then a subsequent reconstruction procedure and insertion of the permanent implant. Relator's her allegations concerning the (in)frequency with which Dr. Hong performed single-stage breast reconstruction surgery thus cannot materially add to the CMS claims data.

In her other FCA action, Relator included additional details concerning her own experiences and asserted that some defendants falsely billed her commercial claim, RJN, Ex. C, ¶¶ 181-87. No such details are alleged in the FAC at bar. Even with those additional allegations, however, the district court concluded that Relator failed to establish that her "single surgery experience at Stanford" materially adds to the government information "because so little can be inferred from a single instance of incorrect billing." *United States ex rel. Doe*, 2020 U.S. Dist. LEXIS 40906, *4. Here, her allegations do not allege independent knowledge of even a single instance of incorrect billing or any other information that materially adds to CMS's FOIA report.

In light of the foregoing, dismissal under the public disclosure bar is appropriate and required for this serial Relator. In addition, given that her FAC makes clear that her action is solely premised on the content of a FOIA report, amendment of the complaint would be futile and would only serve to further Relator's abuse of the courts to burden Defendants and other physicians and providers involved with her 2012 mastectomy and breast reconstruction with defense of her meritless claims.

### B. Relator's FCA Action Fails under Rules 8(a) and 9(b)

An entity violates the FCA when it "knowingly presents . . . a false or fraudulent claim for payment." 42 U.S.C. § 3729(a)(1). The "essential elements of [FCA] liability are: (1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 902 (9th Cir. 2017). Relator has not pleaded an FCA claim

because she has not and cannot allege that her asserted coding "rules" were material to payment by CMS, that any claim was actually false, or that any Defendant acted with the requisite scienter. Thus, her claims, already barred under the public disclosure bar, are meritless and her FAC should be dismissed with prejudice.

1. Plaintiff Cannot Show the Materiality of the Purported Coding "Rules" Alleged by Plaintiff

Relator asserts various coding "rules"—*e.g.*, that a capsulotomy (CPT code 19370) or a capsulectomy (CPT code 19371) cannot be billed in connection with the immediate insertion of a breast prosthesis (CPT code 19340) or the delayed insertion of a breast prosthesis (CPT code 19342). Even assuming that Relator's coding "rules" are correct and applicable to Medicare (they are not), she does not allege that any of these rules are material to payment by Medicare. Rather she simply includes the word "material" in conclusory allegations such as paragraph 113. Such conclusory allegations do not satisfy the materiality requirement of the FCA under Fed. R. Civ. P. (9)(b), and Relator's FAC is inadequate and must be dismissed. *See United States ex rel. Mateski v. Raytheon Co.* No. 2:06-cv-03614, 2017 WL 3326452 at *7 (C.D. Cal. Aug. 3, 2017) (citing *Ebeid,* 616 F. 3d at 1000 for the proposition that bald assertions do not satisfy Rule (9)(b)).

As the Supreme Court has observed, the FCA's "materiality standard is demanding." *United Health Services, Inc. v. Escobar,* 136 S. Ct. 1989 (2016). In *Escobar*, the Supreme Court held that a misrepresentation about compliance with a regulatory or contractual requirement must be material to the Government's payment decision to be actionable under the FCA. The Court explained that "if the Government pays a particular claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material." *Escobar* at 2003. In so holding, the Supreme Court expressly disagreed with the Government's view that any regulatory violation is material so long as the defendant knows that the Government would be entitled to refuse payment were it aware of the violation. *Id*. at 2004; *see also United States ex rel. Harman v. Trinity Industries Inc.*, 872 F.3d 645, 661-65 (5th Cir. 2017) (surveying the holdings of "sister circuits," including the Ninth Circuit, regarding the impact of the government's continuing payment action in FCA cases in light of *Escobar*'s

characterization of the materiality requirement as "demanding" and "rigorous").

Relator's FAC suggests that claims violating her so-called coding "rules" were routinely paid by Medicare. For example, she does not allege that a single claim seeking payment for (1) a capsulotomy (CPT code 19370) or a capsulectomy (CPT code 19371) and (2) the immediate insertion of a breast prosthesis (CPT code 19340) or the delayed insertion of a breast prosthesis (CPT code 19342) was ever denied by Medicare even though both services appear on the same claim in violation of her asserted (and erroneous) coding "rules." Nor does she allege that Medicare has ever denied payment for the insertion of a breast prosthesis (CPT code 19340 and 19342) following a breast reconstruction with tissue expander (CPT code 19357). Nor does Relator allege that CMS or its contractors ever audited for violations of her supposed coding "rules" or otherwise sought to ensure compliance with these "rules." Thus, to the extent that any of these purported "rules" exist at all (they do not), the "violation" of these rules can be readily ascertained from the claims submitted to Medicare and then paid, and Relator cannot show that any such "rule" was material to payment.

In addition, Relator's FAC is wholly devoid of any applicable Medicare rules indicating that payment was not available for any of the procedure or that her asserted coding "rules" were material to Medicare payment. Instead, she largely relies on her personal interpretation of the American Medical Association's description of various codes and asserts that codes that deviate from her views must be materially false. The only piece of Medicare guidance cited by Relator consists of a Medicare Learning Network "Global Surgery Fact Sheet." FAC, Ex. C. This fact sheet—which is expressly "not intended to grant rights or impose obligations" and does not "take the place of either the written law or regulations"—confirms that the global surgery payment encompasses additional medical or surgical services, but only if they "do not require additional trips to the operating room." FAC, Ex. C, p.3. Contrary to her assertion, this Fact Sheet provides no support for her assumption or assertion that additional surgeries following a breast reconstruction with tissue expander (CPT code 19357) (*e.g.*, the subsequent insertion of a breast prosthesis) are part of Medicare's global surgery payment for the initial reconstruction with tissue expander. Likewise, the Fact Sheet explicitly notes that "separate payment may be allowed" for

"separate procedures performed by a single physician . . . on the same patient at the same operative session or on the same day," FAC, Ex. C, pp.6, providing no support for her assumption or assertion that the global surgery payment for insertion of a breast prosthesis (CPT code 19340 or 19342) encompasses a capsulotomy or capsulectomy (CPT code 19370 or 19371).

Relator also alleges that CMS maintains the National Correct Coding Initiative ("NCCI") Coding Policy Manual for Medicare Services, FAC ¶ 71, but she does not allege that any Defendant's coding of a claim was inconsistent with this manual because the "rules" she asserts simply are not contained in the NCCI Coding Policy Manual. *See* RJN, Ex. D. Instead, Relator appears to believe that she need not allege that any Defendant failed to adhere to any material Medicare rule and that instead, this court should defer to her alleged coding expertise (which she does not even allege includes any familiarity with coding for plastic surgery procedures). Her bare assertion of "materiality" does not satisfy the demanding standard set forth in *Escobar* and her action should therefore be dismissed.

### 2. Relator has not Alleged any False Claims

Even putting the question of materiality aside, the coding rules advanced by Relator are simply not borne out, and thus her entire theory of falsity falls apart. Indeed, the specific authorities Relator cites at a minimum belie and, in some instances, expressly contradict Relator's coding theories.

For example, Relator devotes significant attention to her contention that Defendants inappropriately billed for the insertion of a permanent implant following the use of a TE using CPT Code 19340. She describes CPT Code 19340 as representing a "single stage immediate mastectomy reconstruction" that can only be used during the same surgery as a mastectomy, FAC ¶ 139. However, Relator alleges that the code description for CPT Code 19340 reads as follows: "Immediate insertion of breast prosthesis following mastopexy, mastectomy or in reconstruction." FAC ¶¶ 87, 90.[12] This definition confirms that CPT Code 19340 can properly be used for

---

[12] In paragraph 105, however, she paraphrases it differently to effectively eliminate the words "or in reconstruction," saying that the code is for "immediate implant-based *mastectomy reconstruction*, or even after mastopexy." FAC ¶ 105 (emphasis added). Her rewording, (footnote continued)

"immediate insertion of breast prosthesis . . . in reconstruction" regardless of the date of any

mastectomy. Thus, by way of example where the surgeon performs a periprosthetic capsulectomy

(a type of reconstruction coded with CPT Code 19371) and replaces the TE with an implant, CPT

Code 19340 would be properly used. Likewise, in a case where more extensive revision of the

breast was required, CPT Code 19380 (revision of reconstructed breast) could be billed with CPT

Code 19340. At the very least, Relator's allegations fall well short of the plausibility and

particularity necessary under Rules 8(a) and 9(b).

Along similar lines, despite Relator's repeated use of the word "unbundling", her FAC

does not alleged any unbundling of global surgery services. She does not allege that, for example,

any Defendant billed for a post-operative visit or post-operative pain management items or

services.[13] (Nor could she—CMS code edits ensure that such claims are not paid.) Each surgery

she identifies is an independent and separately billable service, and she can identify no CMS

guidance to the contrary. In fact, the one CMS fact sheet she appends to her FAC explicitly

contradicts her "unbundling" contention, stating that "[m]ultiple surgeries are separate procedures

performed by a single physician . . . on the same patient at the same operative session or on the

same day for which separate payment may be allowed." FAC, Ex. C, p.6 (emphasis added). Nor

does she cite to any language in a claim definition indicating that any of these codes are only

_____

however, does not negate her fuller allegation that the code can be used for insertion of an implant
"in reconstruction."

[13] Relator makes a passing allegation that "Sutter and Hong billed CPT 12032 to close the
wound in breast surgery *in addition* to CPT 19340, which is illegal unbundling." She does not
allege any supporting facts; rather, she is proceeding based on her inference that no other wound
could have been closed during this procedure and that the wound repair code must be referencing
closure of the surgical incision for the breast reconstruction procedure performed by Dr. Hong.
Because she has no actual knowledge of any patient's case, however, she cannot exclude other
plausible and lawful interpretations of the claims data. For example, it would be proper to report
the intermediate wound repair code (CPT code 12032) for closure following the excision of a
benign or malignant lesion or closure of a separate axillary incision. The FAC, thus, fails to
satisfy the pleading standard under Rule 8(a): "[W]here a complaint pleads facts that are merely
consistent with a defendant's liability, it stops short of the line between possibility and plausibility
of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotations omitted); see also *Twombly*,
550 U.S. at 567–69 (holding that where there is an "obvious alternative explanation" and that is
legal, then the complaint fails to state a claim).

1    appropriate when performed separately.

2       In the end, there are obvious (and plausible) non-fraudulent explanations for each claim

3 that Relator asserts was improper. Either the "rules" she asserts are inconsistent with guidance, or

4 they assume an uncomplicated, routine procedure, and Relator fails to consider other plausible

5 explanations for the coding in the FOIA report. For example, Relator alleges that Dr. Hong

6 erroneously billed CPT Code 19371 (periprosthetic capsulectomy) with CPT Code 19328

7 (removal of intact mammary implant).[14] There are, however, situations where a periprosthetic

8 capsulectomy would need to be performed with removal of an intact implant. For example, a

9 portion of the capsule may need to be removed and sent to pathology if certain side effects from

10 the implant are suspected, in which case the surgeon would need to perform a capsulectomy in

11 addition to the removal of the intact implant. Relator's assumption of a fraudulent explanation

12 does not satisfy the pleading standards in an FCA action, and her FAC should be dismissed.

13       3.    <u>Relator has not Alleged that PAFMG Caused the Submission of Any Claim or that Dr. Hong Caused the Submission of Any of the Claims Associated</u>

14            <u>with Dr. Gates</u>

15       Relator's allegations concerning PAFMG are scant, at best. She alleges that PAFMG is a

16 professional corporation and that Defendant Palo Alto Medical Foundation for Health Care,

17 Research and Education dba Palo Alto Medical Foundation (PAMF) has offices staffed by

18 PAFMG physicians. FAC ¶ 25. Her only other allegation concerning PAFMG is that Defendant

19 Sutter Health ("Sutter") is "the corporate parent of, owns, or otherwise controls" PAFMG. FAC ¶

20 27. She does not otherwise mention PAFMG and instead collectively references "Defendants"

21 without mentioning *any* conduct by PAFMG.

22       The Ninth Circuit has explained, "Rule 9(b) does not allow a complaint to merely lump

23 multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing

24 more than one defendant.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citation

25 omitted). The plaintiff "must, at a minimum identify the role of each defendant in the alleged

26

27       [14] Although Relator purports to quote from the American Society of Plastic Surgeons in asserting that these codes cannot be billed together, the quoted language in fact comes from an

28 anonymous online user's message on a web-based forum and thus cannot be credited. RJN, Ex. E.

fraudulent scheme." *United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 998 (9th Cir. 2011). This requirement is necessary to "inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz*, 476 F.3d at 764-65 (citation omitted). Moreover, the rule is the same when the defendants are related corporate entities. *See, e.g., United States ex rel. Pecanic v. Sumitomo Elec. Interconnect Prods. Inc.*, 2013 U.S. Dist. LEXIS 27913, 2013 WL 774177, at *5 (S.D. Cal., Feb. 28, 2013) (holding that plaintiffs may not "commingle" defendants, whether related entities or not, but rather must clearly "demonstrate that each entity is liable for its own role in the submission of false claims or statements"); *see also United States v. Safran Grp., S.A.*, 2017 U.S. Dist. LEXIS 8408, 2017 WL 235197, at *8 (N.D. Cal. Jan. 19, 2017) (holding that Relators' "generalized allegations made against the three 'Defendants' . . . make it impossible" to determine which defendant or defendants made false statements and certifications).

Without any allegation that PAFMG presented or caused to be presented any claim or made or used a false record or statement material to a false or fraudulent claim, Relator's claims against PAFMG must be dismissed.

Relator also makes various allegation concerning claims data associated with Steven Bates, M.D., who is not a party to this action. FAC ¶¶ 99, 128-130, Ex. B. But Relator fails to present any theory or factual allegations that would render Defendants PAFMG or Dr. Hong liable in connection with any claims for Dr. Bates' services. To the extent that Relator's claims are based on any Medicare claim for Dr. Bates' services, such claims should be dismissed.

### 4. Relator has not Alleged Knowledge on the Part of Dr. Hong or PAFMG

Defendants vehemently oppose Relator's asserted coding rules, but even accepting her coding "rules" as true and material to Medicare claims, her action should nonetheless be dismissed because she cannot allege that any Defendant *knowingly* submitted false claims. Falsity "is a necessary, but not sufficient, requirement for FCA liability—after alleging a false statement, a plaintiff must still establish scienter." *Winter ex rel. United States v. Gardens Reg'l Hosp. & Med. Ctr.*, 953 F.3d 1108, 1118 (9th Cir. 2020); *Gonzalez*, 759 F.3d 1112 (dismissing FCA complaint under Rule 8(a) where relator failed to plausibly allege scienter). At issue is not whether Defendants coding practices lived up to Relator's standard. At issue is whether Defendants knew

1  the law, violated the law, and knowingly submitted false claims.  Relator simply has not alleged as

2  much.  She has not pleaded that the rules she espouses were documented in Medicare rules or

3  regulations, the NCCI manual or in any other Medicare guidance or that any Defendant otherwise

4  had knowledge of these "rules."  Although Relator repeatedly quotes the scienter requirement of

5  the FCA and CFCA, *see* FAC ¶¶ 134-35, 140, 144, 152-53, 158, 162, Relator never alleges

6  knowledge other than to generally state that the "Defendants knowingly" presented false claims,

7  made or used false records and statements, or concealed or avoided an obligation to repay the

8  Government.  FAC ¶¶ 5, 12, 136, 137, 142, 146, 156, 157, 160, 164.  These allegations are

9  "[t]hreadbare recitals of a cause of action's elements, supported by mere conclusory statements"

10  and need not be accepted as true on a motion to dismiss.[15]  *Iqbal*, 556 U.S. at 678.  Because

11  Relator does not allege (let alone plausibly allege) a knowing violation of the FCA, the FAC

12  should be dismissed.

13       5.     <u>Relator has not Alleged any Reverse False Claims by Dr. Hong or PAFMG</u>

14       Relator also failed to include <u>any</u> allegations to support her claim of reverse false claims

15  liability beyond a summary recitation of the respective elements of such a claim.  In cases, such as

16  this one, in which a relator "alleges a reverse false claim by claiming that the defendant

17  fraudulently overcharged the government and then failed to repay the government, courts have

18  consistently dismissed the claim as redundant of false statement and presentment claims."  *United*

19  *States v. Kinetic Concepts, Inc.*, No. CV 08-01885-BRO (AGRx), 2017 U.S. Dist. LEXIS 221777,

20  at *40 (C.D. Cal. Mar. 6, 2017) (citations omitted).  Otherwise, "whenever there is a violation

21  under § 3729(a)(1)(A) . . . there would also be a violation of § (a)(1)(G) . . . which is not the intent

22  of the statute."  *Id.* at 40–41.

23       In addition, Relator has alleged no facts that would support a theory that Dr. Hong or

24  PAFMG knowingly and improperly failed to repay the government, and this cause of action

25      [15] In addition, Relator makes no effort to distinguish between Defendants in making her

26  conclusory allegations concerning knowledge.  Rather, each time she mentions scienter, she refers
   to Defendants' collective knowledge, with the exception of a lone and vague reference to

27  knowledge on the part of "Sutter's surgeons" in paragraph 5.  *Compare* FAC ¶ 5 *with* FAC ¶ 12,
   136, 137, 142, 146, 156, 157, 160, 164.

28

should be dismissed.  In particular, the FAC includes no allegations as to the existence of an obligation to pay or transmit money or property to the United States, let alone a false record or statement or concealment or avoiding or decreasing an obligation to the United States, that is necessary to support Relator's claim of reverse false claim liability.  Similarly, Relator simply recites the elements of a claim under Government Code section 12651(a)(8) and fails to allege any facts establishing that Dr. Hong or PAFMG were the "beneficiary of an inadvertent submission of a false claim" and failed to disclose such claims to the State of California after discovery thereof.

## C.    Relator has Failed to State a Claim under the CFCA

Relator's tagalong claim for relief under the CFCA relies on even thinner allegations than her FCA claim, and it therefore fails for all the reasons set forth in Part IV.B, *supra*, and for her failure to make any material allegations concerning Medi-Cal claims.[16]  To state a claim under the CFCA, Relator must plead that Defendants (1) knowingly (2) submitted (3) materially (4) false claims to Medi-Cal.  Gov't Code § 12651(a).  Relator, however, presents no material allegations concerning any Medi-Cal claim for a breast reconstruction procedure, let alone any *false* Medi-Cal claim.  Her Medi-Cal allegations consist of the following: (1) allegations of Sutter Health's Medi-Cal revenue in 2016 and 2017 based on publicly available reports (FAC ¶ 29); (2) a general statement that "many patients" of physicians allegedly "employ[ed]" by Sutter "are covered by . . . Medi-Cal" (FAC ¶¶ 30-31); (3) background allegations concerning the existence and scope of the Medi-Cal program and its processes for claims submission (FAC ¶¶ 50-51, 63); (4) an assertion that Medi-Cal uses the Physicians CPT system (FAC ¶ 70); (5) the unfounded summary statement that the "practices complained of herein are continuing, resulting in the submission of additional

---

[16] Because key provisions of the CFCA mirror the language of the FCA, generally "courts apply the same analysis to federal and California FCA claims."  *United States v. Safran Grp., S.A.*, No. 15-CV-00746-LHK, 2017 U.S. Dist. LEXIS 8408, at *13 (N.D. Cal. Jan. 19, 2017) (citing *Fassberg Const. Co. v. Hous. Auth. of City of L.A.*, 152 Cal. App. 4th 720, 735 (2007)).  The definition of "claim" in the two statutes are largely identical, with the exception that the FCA defines "claim" by reference to payment by or using funds of the United States, while the CFCA defines "claim" by reference to payment by or using funds of the "state or any political subdivision."  *Compare* 31 U.S.C. § 3729(b)(2) *with* Cal. Gov't Code § 12650(b)(1).  Thus, the CFCA only applies to programs funded by California or its political subdivisions, which in the context of this case would be the Medi-Cal program.

false or fraudulent claims to . . . Medi-Cal" (FAC ¶114); and (6) her acknowledgment that her claims analysis does not include any Medi-Cal billing by Dr. Hong (FAC ¶122). Relator cannot establish the elements of a CFCA claim by merely suggesting that some Defendant at some time may have submitted a Medi-Cal claim for some unspecified service (FAC ¶29-31) and then concluding that the "practices" she complains of "result[ed] in the submission of . . . false or fraudulent" Medi-Cal claims (FAC ¶114). Moreover, she wholly fails to allege that Defendants Dr. Hong and/or PAFMG ever submitted or caused to be submitted a single Medi-Cal claim.

### D. This Action was Filed Under a Pseudonym in Violation of Rule 10(a)

Relator has been informed of the defect in pleading under a pseudonym and counsel for Defendants Dr. Hong and PAFMG has requested that she file an appropriate petition or seek leave to amend the FAC to disclose her identity. LaMagna Decl. ¶ 2, Ex. A. At 5:06 p.m. on June 15, 2020, counsel for Relator responded to counsel's June 10, 2020 letter concerning Relator's noncompliance with Rule 10(a). LaMagna Decl. ¶ 3, Ex. B. Counsel for Defendants Dr. Hong and PAFMG have not had time to fully review this letter, but it appears that Relator does not intend to petition the court for permission to proceed anonymously at this time. *Id.* While some courts would dismiss the complaint for lack of jurisdiction over a lawsuit filed anonymously without leave of the court, *see e.g.*, *W.N.J. v. Yocom*, 257 F.3d 1171, 1172-73 (10th Cir. 2001), the Ninth Circuit has been more flexible giving anonymous plaintiffs an opportunity to file the required application within a specified time period or have the lawsuit dismissed, *see e.g.*, *John v. Cty. of Sacramento*, No. 2:16-cv-1640 JAM DB PS, 2018 U.S. Dist. LEXIS 86865 (E.D. Cal. May 22, 2018). Defendants request that the Court give Relator a deadline to file an application or dismiss the FAC for lack of jurisdiction.

## V. CONCLUSION

Based on the foregoing, Defendants Roy Hong, M.D. aka Roy W. Hong and Palo Alto Foundation Medical Group, Inc., respectfully asks this Court to dismiss Relator's claims against Defendants with prejudice.

Dated: June 15, 2020

HOOPER, LUNDY & BOOKMAN, P.C.


By: _____*/s/ Scott J. Kiepen*_____
            SCOTT J. KIEPEN
            KATRINA A. PAGONIS
            JOSEPH R. LAMAGNA
Attorneys for Defendants Roy Hong, M.D.
aka Roy W. Hong; Palo Alto Foundation Medical
Group, Inc., a corporation

MEMO ISO DEFENDANTS MOTION TO DISMISS