LATHAM & WATKINS LLP
Katherine A. Lauer (Bar No. 138010)
katherine.lauer@lw.com
Jason M. Ohta (Bar No. 211107)
jason.ohta@lw.com
12670 High Bluff Drive
San Diego, CA 92130
Telephone: (858) 523-5400
Facsimile: (858) 523-5450

*Attorneys for Defendants Sutter Health, Sutter Bay Medical Foundation, and Palo Alto Medical Foundation*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and THE STATE OF CALIFORNIA, *ex rel.* Judy Jones, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>SUTTER HEALTH, a corporation; SUTTER BAY MEDICAL FOUNDATION, a corporation; PALO ALTO MEDICAL FOUNDATION, a corporation; PALO ALTO FOUNDATION MEDICAL GROUP, INC., a corporation; ROY HONG, M.D., aka ROY W. HONG, an individual; and DOES 1-10,<br><br>Defendants. | CASE NO. 5:18-cv-02067-LHK<br><br>**DEFENDANTS SUTTER HEALTH, SUTTER BAY MEDICAL FOUNDATION, AND PALO ALTO MEDICAL FOUNDATION'S REPLY IN SUPPORT OF MOTION TO DISMISS RELATOR'S FIRST AMENDED COMPLAINT**<br><br>Date: September 17, 2020<br>Time: 1:30 p.m.<br>Courtroom: 8, 4th Floor<br>Hon. Lucy H. Koh |

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ..................................................................................................................1

II. DISCUSSION .......................................................................................................................3

    A.    Relator's FCA and CFCA Claims Must be Dismissed Under the Public Disclosure Bar ................................................................................................ 3

        1.    Relator's Allegations Are Based on Publically Disclosed Information ................................................................................................. 3

        2.    Relator Is Not an "Original Source" under the FCA or CFCA ............................................................................................................. 5

    B.    Relator Fails to Adequately Plead FCA or CFCA Claims as to Sutter Defendants Under Federal Rule of Civil Procedure 9(b) ............................ 9

    C.    Relator Fails to Allege Knowledge of any False or Fraudulent Statement to the Government................................................................................ 12

    D.    Relator Uses a Pseudonym in Violation of Federal Rule of Civil Procedure 10(a) and the Common Law ............................................................... 13

III. CONCLUSION....................................................................................................................14


# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Does I thru XXIII v. Adv. Textile Corp.*,
  214 F.3d 1058 (9th Cir. 2000) .................................................................................... 13, 14

*Pascal v. Agentra, LLC*,
  No. 19-CV-02418-DMR, 2019 WL 5212961 (N.D. Cal. Oct. 16, 2019) ............................ 12

*Rockwell Int'l Corp. v. United States*,
  549 U.S. 457 (2007) ............................................................................................................ 7

*Schindler Elevator Corp. v. United States ex rel. Kirk*,
  563 U.S. 401 (2011) ....................................................................................................... 3, 6

*United States ex rel. Harman v. Trinity Indus., Inc.*, No. 2:12-CV-00089-JRG,
  2014 WL 47258 (E.D. Tex. Jan. 6, 2014) .......................................................................... 6

*United States ex rel. Heath v. Wisconsin Bell, Inc.*,
  760 F.3d 688 (7th Cir. 2014) .............................................................................................. 6

*United States ex rel. Integra Med Analytics LLC v. Providence Health & Servs.*,
  No. CV 17-1694 PSG (SSX), 2019 WL 3282619 (C.D. Cal. July 16, 2019) ..................... 4

*United States ex rel. Lamers v. City of Green Bay*,
  168 F.3d 1013 (7th Cir. 1999) ............................................................................................ 6

*United States ex rel. Ormsby v. Sutter Health*, No. 3:15-cv-01062-LB (N.D. Cal) ............ passim

*United States ex rel. Roe v. Stanford Healthcare Billing Dep't*,
  No. 2:17-cv-08726-DSF-AFM, 2020 WL 1074585 (C.D. Cal. Feb. 4, 2020) ............. passim

*United States ex rel. Rostholder v. Omnicare, Inc.*,
  745 F.3d 694 (4th Cir. 2014) .............................................................................................. 6

*United States ex rel. Silingo v. WellPoint, Inc.*,
  904 F.3d 667 (9th Cir. 2018) ............................................................................................ 12

*United States v. Aurora Las Encinas, LLC*,
  No. LACV1001031JAKRZX, 2012 WL 12897081 (C.D. Cal. Sept. 6, 2012) .................. 11

*United States v. Stoterau*,
  524 F.3d 988 (9th Cir. 2008) ............................................................................................ 14

*United States v. United Healthcare Ins. Co.*,
  848 F.3d 1161 (9th Cir. 2016) .......................................................................................... 11

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ............................................................................................ 9

**STATUTES**

31 U.S.C. § 3730(e)(4)(A) ................................................................................................. 3, 5, 6

31 U.S.C. § 3730(e)(4)(B) ........................................................................................................ 5

**RULES**

Fed. R. Civ. P. 9(b) ...................................................................................................... 2, 10, 11

Fed. R. Evid. 201(b) ................................................................................................................. 1

Local Rule 3-4(c)(2) ................................................................................................................. 1

Local Rule 7-4(b) ..................................................................................................................... 1

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

iii

SUTTER DEFENDANTS' REPLY ISO MOTION TO
DISMISS RELATOR'S FIRST AMENDED COMPLAINT
5:18-cv-02067-LHK

Defendants Sutter Health, Sutter Bay Medical Foundation and Palo Alto Medical Foundation ("Sutter Defendants") file this Reply in Support of Their Motion to Dismiss the First Amended Complaint ("FAC").

## I. INTRODUCTION

Relator's FAC must be dismissed on multiple independent grounds, and her procedurally-defective Opposition[1] (ECF 80) does nothing to change that conclusion.[2]

*First*, because Relator's allegations are based on publicly disclosed data, her action must be dismissed pursuant to the False Claims Act ("FCA") public disclosure bar.  Relator's repeated assertion that she has unique, material information to offer because she was in the "belly of the beast" of Sutter is irrational—Relator was never a Sutter "insider," but was merely a patient of one doctor who practiced at Sutter, who then had a dispute with that doctor arising from her surgery which was covered by private insurance.  Relator knows nothing about Sutter's Medicare or Medicaid business other than what she gathered though a Freedom of Information Act ("FOIA") request.  The case law is clear—the data upon which Relator relies already have been publicly disclosed and cannot serve as the basis for her FCA claims.

---

[1] Relator's Opposition fails to comply with a number of Northern District of California Local Rules.  For example, Local Rule 3-4(c)(2) requires that the text of papers presented for filing must be double-spaced, with no more than 28 lines per page.  *See* N.D. Cal. L.R. 3-4(c)(2).  Relator's Opposition is 1.5-spaced and contains more than 28 lines per page.  As a result, the Opposition exceeds the 25-page limit imposed by Local Rule 7-4(b).  In addition, Relator has improperly utilized a request for judicial notice, the purpose of which is to ask the Court to consider material that is "not subject to reasonable dispute," Fed. R. Evid. 201(b), in order to further advocate her position.  *See, e.g.,* Rel. RJN at 5 ("Using Defendants' own words, Defendants here have demonstrated themselves as the 'Paradigmatic Parasitic [healthcare] Provider' whose healthcare fraud and habitual overbilling conduct spans across the healthcare space.").  The Court should not consider any of Relator's arguments beyond the 28 lines per page provided by Local Rule and should deny Relator's improper request for judicial notice.

[2] A number of arguments in Relator's Opposition are entirely unrelated to the arguments raised in Sutter Defendants' Motion.  Some of Relator's arguments appear to relate to arguments raised in the motion to dismiss filed by Defendants Dr. Roy Hong and Palo Alto Foundation Medical Group, while other of Relator's arguments do not appear to relate to arguments made by any defendant in this matter.  (*See, e.g.*, arguments concerning the Request for Judicial Notice in ECF 72, Opp. at 3; whether the Court lacks subject matter jurisdiction in connection with the Public Disclosure Bar, Opp. at 6–7; whether Relator failed to allege submission of false claims, Opp. at 16; whether billing guidance can serve as the basis for FCA claims, Opp. at 17–18; and whether Relator failed to allege the materiality of alleged false claims submitted to the government, Opp. at 22–23.)

*Second*, Relator's vague allegations of fraud fail to comply with Federal Rule of Civil Procedure 9(b).  Relator's lack of any unique, "insider" knowledge is highlighted by the glaring absence of factual specificity in the FAC.  The FAC impermissibly groups defendants together, fails to plead the specifics of purportedly fraudulent acts, and alleges a vast conspiracy to defraud the government based on a handful of purported coding errors in bills submitted to her private insurer.

*Third*, Relator's FAC fails to state a claim against Sutter Defendants because she fails to allege sufficient facts to support an inference that Sutter Defendants had any knowledge of a billing fraud against the Government.  *Finally*, Relator's FAC should be dismissed because she uses a pseudonym rather than reveal her identity.

Relator attempts to save her lawsuit by referencing for the first time in her Opposition *publicly disclosed* allegations from a separate ongoing *qui tam* action against Sutter.  *See United States ex rel. Ormsby v. Sutter Health*, No. 3:15-cv-01062-LB (N.D. Cal).  But the allegations in that case are not relevant to the Court's analysis of whether a prior public disclosure bars Relator's *qui tam* action or the sufficiency of allegations pleaded in this FAC.[3]  Relator's only conceivable motives for citing allegations made in a completely unrelated lawsuit are to unfairly disparage Sutter Defendants and distract the Court from Relator's deficient claims.

No amount of obfuscation can hide the fact that Relator's "whistleblower" action amounts to no more than a dispute between a private insurance patient and her surgeon.  Relator has failed to allege with particularity any claims as to Sutter Defendants or to connect her personal claims against particular doctors to Sutter Defendants.  The Court should dismiss Relator's FAC in its

---

[3] Indeed, *Ormsby* concerns Medicare Advantage, an entirely different federal payer program than the one at issue in the FAC.  *Ormsby* Complaint, Rel. RJN No. 3, at 2.  "A beneficiary eligible for Medicare may choose to be covered under what is commonly referred to as 'traditional' Medicare, which is Medicare Parts A and B, in which CMS reimburses healthcare providers for services rendered via submission of claims.  This is known as a fee-for-service payment system.  Another option for a Medicare beneficiary is Medicare Advantage, in which a beneficiary may opt instead to enroll in a Medicare Advantage Plan ... managed by a private insurance company[.]"  *Id*. at 2-3.  Relator's allegations in the FAC do not concern Medicare Advantage payments, but instead concern fee-for-service payments under "traditional" Medicare.

1  entirety with prejudice, or in the alternative should dismiss the FAC with prejudice as to Sutter
2  Defendants.

## II. DISCUSSION

### A. Relator's FCA and CFCA Claims Must be Dismissed Under the Public Disclosure Bar

#### 1. *Relator's Allegations Are Based on Publically Disclosed Information*

Relator's FAC offers no new, material information regarding her allegations that was not already known to the government, and hence her FCA and California False Claims Act ("CFCA") claims are barred under the public disclosure bar. Relator devotes a number of pages to a red-herring argument concerning the applicability of the public disclosure bar in light of allegations in the *Ormsby* matter. *See* Opp. at 7–9. But the FAC does not include any allegations related to the issues in *Ormsby*, and that case is of no relevance here. As for the Medicare claims data referenced in the FAC, Relator argues that allegations concerning those data are merely "foundational." Opp. at 9–10. However, the FAC contains no factual allegations concerning Sutter Defendants' purported fraud other than public information Relator obtained from that "foundational" Medicare data. Relator obtained the Medicare data through a FOIA request, and the case law clearly establishes that Medicare claims data obtained pursuant to a FOIA request comprise a publicly disclosed report under the FCA and hence cannot serve as the basis for an FCA claim. *See Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 404 (2011) (holding that "a federal agency's written response to a request for records under ... FOIA ... constitutes a 'report' within the meaning of the public disclosure bar"); *United States ex rel. Roe v. Stanford Healthcare Billing Dep't*, No. 2:17-cv-08726-DSF-AFM, 2020 WL 1074585, at *1 (C.D. Cal. Feb. 4, 2020) (relying on *Schindler Elevator* to conclude that Medicare claims data obtained through a FOIA request constitute a "report" under 31 U.S.C. § 3730(e)(4)(A));[4] *Roe*, 2020 WL 5033219, at *1-2 (C.D. Cal. July 13, 2020) (dismissing *qui tam* complaint with prejudice pursuant to the public

---

[4] The *Roe* court's February 4, 2020 order granting defendants' motion to dismiss, and the Westlaw entry for that order, erroneously refer to the relator in that case as "Emily Doe," instead of "Emily Roe."

disclosure bar because relator's FCA allegations were based on data obtained via a FOIA request); *cf. United States ex rel. Integra Med Analytics LLC v. Providence Health & Servs.*, No. CV 17-1694 PSG (SSX), 2019 WL 3282619, at *6 (C.D. Cal. July 16, 2019) (determining that Medicare claims data released by CMS to analytics company for research purposes were publicly disclosed in a federal report).

The district court in *Integra Med Analytics* clearly explains why the Medicare claims data on which Relator relies cannot, as a matter of law, form the basis for her FCA claim. In that case, the court concluded, "[j]ust as the FOIA responses in *Schindler Elevator* disclosed the contents of reports filed with the government, the Medicare data that CMS provided to Integra disclosed the contents of Medicare claims filed with the government," and therefore "it constituted a federal report within the meaning of the public disclosure bar." *Integra Med Analytics*, 2019 WL 3282619, at *6. Ignoring this clear statement of the law, Relator inconceivably attempts to rely on *Integra Med Analytics* to argue that the Medicare claims data at issue here did not "publicly disclose 'substantially the same allegations or transactions' of fraud that are alleged in the Complaint." Opp. at 16. Relator's argument is misplaced.

*Integra Med Analytics* concerned a billing determination that could not be made on the basis of claims data *alone*. *See Integra Med Analytics*, 2019 WL 3282619, at *17 (concluding that "[t]he data itself does not provide an explanation for the high coding rates"). Contrary to that case, Relator alleges that where a physician or entity bills CPT code 19357 ("a 'first-time' reconstruction code[]," FAC ¶ 5) and CPT code 19340 ("a second 'first-time' major surgery code," *id.*) for a single patient, inaccurate billing would be evident on the *face* of the claims data. Similarly, to the extent a physician or entity separately billed Medicare for a procedure covered under the global surgical payment for that patient, *see id.* ¶ 6, the inaccurate billing alleged in the FAC would also be self-evident from the claims data. Therefore, according to Relator's own allegations, Sutter Defendants' purported fraud was uncovered simply by looking at the Medicare claims data, without the need for any additional information or documentation. This is a paradigmatic example of public information that cannot form the basis of an FCA claim as a matter of law.

2.   *Relator Is Not an "Original Source" under the FCA or CFCA*

Relator attempts to argue that even if the information underlying her allegations was already publicly disclosed, she "has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions," and therefore is an "original source" under the FCA's public disclosure bar. *See* 31 U.S.C. § 3730(e)(4)(B).[5] Sutter Defendants argued in their Motion to Dismiss that Relator's "analysis" of the Medicare claims data cannot render her an "original source" under the public disclosure bar because any knowledge obtained through such analysis is not "independent of" the publicly disclosed transactions. Mot. to Dismiss at 7. In her Opposition, Relator contends that her analysis does render her an "original source," because she has supposedly brought "'new and material information' to the government's attention as a result of an 'independent investigation' of publicly available data." Opp. at 12–13. But Relator does not explain what independent investigation she conducted, or what new material information she can offer, concerning Sutter Defendants. Merely analyzing publicly disclosed data cannot form the basis for an FCA claim.

Furthermore, Relator's Opposition conflates the notion of whether information is publicly *available* (in the sense of not being a closely guarded secret) with whether such information has been publicly *disclosed*. The FCA's public disclosure bar forbids basing an FCA action on information that had already been *disclosed* in (i) a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party; (ii) a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or (iii) publication via the news media. *See* 31 U.S.C. § 3730(e)(4)(A). Therefore, although publicly *available* information may form the basis for an FCA claim, publicly *disclosed* information cannot. And courts have consistently held that information obtained through FOIA reports constitute publicly

---

[5] Despite Relator's allegations that Sutter Defendants have set forth their arguments under the pre-2010 Amendment standards, Opp. at 6, it is Relator who has set forth the wrong standard here. Relator's Opposition states that Relator is an original source under the public disclosure rule because she "has 'direct and independent knowledge' of the information underlying the allegations in the lawsuit." Opp. at 11. However, the current provision refers not to an individual who has "direct and independent knowledge," but instead to one "who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions." *See* 31 U.S.C. § 3730(e)(4)(B).

1    disclosed "Federal reports" under 31 U.S.C. § 3730(e)(4)(A), and hence cannot form the basis for
2    an FCA action.  *See, e.g., Schindler Elevator*, 563 U.S. at 416; *Roe,* 2020 WL 1074585, at *1.

3          The cases on which Relator relies are all inapposite because they address information that
4    may have been publicly available, but had not been publicly disclosed.  In *United States ex rel.
5    Heath v. Wisconsin Bell, Inc.*, the relator initially determined through an audit of school
6    telecommunications bills that certain schools paid much higher rates than others for the same
7    telecommunications services.  760 F.3d 688, 689 (7th Cir. 2014).  Later, the relator discovered
8    publicly disclosed materials that supported his own findings, but those publicly disclosed materials
9    were only meaningful when combined with relator's independent "extensive knowledge of the
10   schools' telecommunication pricing" and "knowledge of other 'similarly situated' entities and the
11   price they were being charged[.]"  *Id.* at 691-92.  Similarly, in *United States ex rel. Rostholder v.
12   Omnicare, Inc.*, the court determined that the relator's assessment "was based on his conversations
13   with other employees in the Toledo building, his personal familiarity with the repackaging
14   operations, and his own independent research," rather than on an FDA Warning Letter or relevant
15   SEC filings.  745 F.3d 694, 700 (4th Cir. 2014).  In *United States ex rel. Harman v. Trinity Indus.,
16   Inc.*,  the court concluded that information the relator obtained via a FOIA request did not provide
17   the basis for his claim, and that relator instead learned of the alleged fraud when he "inspected
18   approximately 100 crash sites in several states and took measurements of approximately 125 ET–
19   Plus terminals on highways throughout the nation."  No. 2:12-CV-00089-JRG, 2014 WL 47258,
20   at *4 (E.D. Tex. Jan. 6, 2014).  Finally, in *United States ex rel. Lamers v. City of Green Bay*, the
21   relator "walked the streets of Green Bay observing the buses in action," and on that basis filed an
22   action alleging that "in order to remain eligible for annual federal transit grants the City of Green
23   Bay lied to the Federal Transit Administration (FTA) about its efforts to transport local school
24   children on public buses."  168 F.3d 1013, 1014, 1017 (7th Cir. 1999).  By no stretch of the
25   imagination can these cases be read to hold that an individual can become an "original source"
26   under the public disclosure rule merely by analyzing publicly disclosed data.

27         Relator then suggests that the purported evidence arising out of her individual dispute with
28   Dr. Hong—her private insurance billing data, the deposition testimony of Dr. Hong and Dr.

Frederick Dirbas, and correspondence she sent to several Sutter executives regarding Dr. Hong—can comprise knowledge that is "independent of and materially adds to the publicly disclosed transactions," thereby rendering her an original source under the public disclosure rule. Opp. at 12–16. However, as Sutter Defendants argued in their Motion to Dismiss, these allegations do not "materially add" to publicly disclosed information, nor do they comprise "knowledge" of the alleged fraud that render her an original source. *See* Mot. to Dismiss at 8–9. Again, these allegations relate to a dispute with *a single physician* regarding a *private insurance claim*. Even interpreting the allegations in the light most favorable to Relator, such allegations cannot "materially add" to Relator's broad and unsupported allegations that Sutter Defendants engaged in "system-wide schemes to exploit healthcare reimbursement through Sutter's knowing upcoding and unbundling, and submission of inaccurate and unsupported codes to the government." Opp. at 1.[6]

A court in the Central District of California recently addressed a very similar FCA action brought by an anonymous relator against Stanford Healthcare and others, and found that the relator's allegations—which, like Relator's here, were based primarily on public Medicare billing records obtained through a FOIA request—were subject to the public disclosure bar. *Roe*, 2020 WL 1074585, at *1. Like Relator's allegations here, "[t]he details of [Roe's] fraud allegations are almost exclusively supported by [her] personal experience with Stanford Health Care when she underwent surgery at Stanford Hospital." *Id*. But like the present case, Roe's "surgery was covered by private insurance, not Medicare, so there was no claim made to any government agency for the surgery." *Id*. "To overcome this deficiency, [Roe] relie[d] on extensive evidence obtained from Medicare via a FOIA request." *Id*. The court held that even if the description of Roe's private surgery experience constituted independent evidence in support of her claims, such

---

[6] Even if the Court were to determine that the allegations "materially add" to Relator's claims (which they do not), the Court should limit that determination to claims related to actions by Dr. Hong. *Cf. Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 476 (2007) ("Section 3730(e)(4) does not permit jurisdiction in gross just because a relator is an original source with respect to some claim. We, along with every court to have addressed the question, conclude that § 3730(e)(4) does not permit such claim smuggling.").

evidence did not materially add to the information acquired from the government, and the court granted defendants' motion to dismiss on that basis:

> Relator's experiences do not appear to add anything to the allegations of improper added billing for office visits that should have been bundled with the surgical costs. These allegations appear to be entirely based on a review of Medicare records. Relator's independent information adds something to the allegations relating to provider upcharging—*i.e.*, charging MD. rates for PA services—and overcharging pathology services, but the Court finds that the allegations in the FAC are not sufficient to show that the independent information "materially adds" to the public information. The only independent evidence alleged in the complaint appears to be Relator's single surgery experience at Stanford. Based on the current allegations in the FAC, the Court cannot say that this "materially adds" to the government information because little can be inferred from a single instance of incorrect billing.

*Id*. The relator amended her complaint, but such amendments did not cure the deficiencies the court identified in its initial order, and following another round of motions to dismiss, the court dismissed the action with prejudice:

> As noted in the Court's prior order, the fraud allegations are supported by Relator's personal experience with Stanford Health Care when she underwent surgery at Stanford Hospital, evidence received via a Freedom of Information Act request, and information from prior lawsuits against Defendants. Information produced by the government in response to a FOIA request is a public disclosure ... and information from prior lawsuits is obviously from public disclosures. Relator's own experience was not publicly disclosed, but her experience was with private insurance and did not involve any government claim.... [E]ven if her personal experience with private insurance claims could count as independent information under the FCA, Relator still has not addressed the problem previously noted by the Court—that her personal experience does not appear to "materially add" to the public information. Relator has a single experience with incorrect billing that did not even involve a government claim. Relator's failure to address, either in the second amended complaint or her opposition to the motion to dismiss, exactly how this single claim could materially add to the huge amount of public information Relator has relied on confirms the Court's prior conclusion that "little can be inferred from a single instance of incorrect billing."

*Roe*, 2020 WL 5033219, at *1.

Just as in *Roe*, the purported independent information Relator alleges in the FAC does not materially add to any of the information already known to the government and publicly disclosed. Alleged discrepancies in Relator's private insurance billing (which cannot serve as the basis for a

FCA action, *see* Mot. to Dismiss at 8) led Relator to file a FOIA request for Medicare claims data related to Dr. Hong. *See* FAC ¶ 94. Those data remain the primary basis in the FAC for Relator's allegations that Dr. Hong "upcoded" and "unbundled" billing for his surgeries. *See, e.g.,* FAC ¶¶ 5–11, 95–108. And those publicly disclosed data *are the only basis in the FAC for her allegations against Sutter Defendants*.

This *qui tam* action is based on information that has been publicly disclosed, and Relator is not an original source of information that is independent of and materially adds to the publicly disclosed information. The Court therefore should dismiss Relator's claims under the public disclosure bar.

### B. Relator Fails to Adequately Plead FCA or CFCA Claims as to Sutter Defendants Under Federal Rule of Civil Procedure 9(b)

Relator's lack of independent knowledge concerning the fraudulent scheme she alleges in the FAC is also evident in her failure to plead with particularity the details of that scheme and the Sutter Defendants' purported involvement in it. Allegations of fraud must be "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks and citation omitted). Such allegations must include the "the who, what, when, where, and how" of the alleged misconduct. *Id.* In this case, the FAC does not include any specific factual allegations demonstrating a widespread practice of surgeons affiliated with Sutter Defendants submitting improper claims for reimbursement to Medicare. *See* Mot. to Dismiss at 9–12. Relator's FAC attempts to baselessly transform her private insurance dispute with one physician into a claim that an entire not-for-profit health system is engaged in a widespread fraud.

Relator's Opposition indicates that she recognizes these shortcomings in her FAC. Regarding the Medicare claims data referenced in the FAC, Relator acknowledges that "there was *no inherent evidence of the fraud in the Medicare ledgers*." Opp. at 9–10 (emphasis in original). But information Relator obtained from the Medicare ledgers comprises the *only information* Relator even *alleges* to have regarding anyone other than Dr. Hong. Relator simply pleads no facts

connecting her narrow allegations regarding Dr. Hong's billing practices with any broader practices of Sutter Defendants.

Unable to find facts alleged in the FAC to overcome the stringent pleading requirements of Rule 9(b), Relator attempts to pull the wool over the Court's eyes by referring multiple times to allegations from the *Ormsby* litigation as if they were included in the FAC, and, at other times, by making blatant misstatements of the allegations in her own FAC. In describing the alleged fraud, Relator's Opposition repeatedly refers to allegations that appear nowhere in the FAC, although Relator frequently attributes them to the FAC. Some of these allegations appear to be borrowed from Complaints filed in the *Ormsby* litigation; for others, the source is unclear. Such misleading allegations in the Opposition with no basis in the FAC include the following:

1. "As detailed in the Complaint, which the Court must accept as true, Defendants . . . ignored . . . internal audit results, including physician warnings, biller and auditor objections, and other red flags." Opp. at 2.

2. "Sutter management and 'physician champions' began to meet and discuss the urgency that the upper echelon of Sutter felt to enhance revenues. To capture lost CMS revenues, Defendants embarked on an institutional campaign of enhanced revenue training, particularly in their surgical departments and women's health platforms. Defendants' scheme and vision were facilitated by implementation of their electronic medical system (EMR) and claims submissions which allowed Defendants to easily manipulate the EMR and maximize their billables." Opp. at 4–5 (citing FAC ¶ 60, which states only that, "[t]o bill Medicare for services provided to beneficiaries in California, facility providers submit a claim on Form CMS-1450 to Noridian, usually in electronic form, certifying that the contents of the form are true, correct, complete and that the form was prepared in compliance with all Medicare laws and regulations").

3. "The Complaint identifies specific plastic surgeons including Hong and Bates, who were part of regularly held revenue training sessions. The stated goal of the revenue training sessions was to mandate maximal coding. Billers were instructed to perform

one-way reviews and upcode, even though items were neither performed nor medically necessary." Opp. at 5 (citing *Ormsby* Complaint, Rel. RJN No. 3).

4. "Sutter's own employees and doctors were also sounding the alarms." Opp. at 5 (citing *Ormsby* Complaint and related documents and filings, Rel. RJN No. 1-6).

5. "Defendants' management mandated that doctors manipulate loopholes in Sutter's EMR to capture high level codes and services which were not code complaint [sic]." Opp. at 17.

6. "Defendants' scheme included upcoding and using revenue enhancement training to pressure clinicians to increase their codes, and performing one-way reviews . . . Defendants had no meaningful safeguards or compliance training." Opp. at 19 (citing Motion to Dismiss *Ormsby* Complaint, Rel. RJN No. 4).

Relator's effort to mislead the Court into believing that such allegations are contained in the FAC must be rejected. The FAC does not contain any allegations regarding internal campaigns, trainings, or processes, nor does it describe internal audits, physician complaints, or other alleged "red flags" for which even Relator's Opposition provides no further elucidation.[7]

At most, Relator's FAC sets forth allegations as to two physicians, although even those allegations are not sufficient to allege a fraudulent scheme. Under Rule 9(b), Relator cannot "merely lump multiple defendants together," *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016) (citation omitted), and she provides no basis on which to conclude that her claims regarding Dr. Hong and Dr. Bates comprise a "representative sample[] of the broader class of claims," *United States v. Aurora Las Encinas, LLC*, No. LACV1001031JAKRZX, 2012 WL 12897081, at *4 (C.D. Cal. Sept. 6, 2012). In fact, Relator's acknowledgment that there was "no inherent evidence of the fraud in the Medicare ledgers" demonstrates that the Court should not view her allegations regarding Dr. Hong as representative of physicians practicing with Sutter Defendants—to the contrary, Relator takes the position that further corroborating evidence, in the

---

[7] Relator will likely, of course, request permission to amend her FAC to include these allegations. However, such an amendment would be futile, as Relator's lack of independent knowledge as to any of these allegations would continue to bar her claims under the FCA's public disclosure bar.

1  form of Dr. Hong's deposition testimony and other discovery in Relator's medical malpractice
2  action, was necessary to identify the purported "upcoding" and "unbundling" her FAC attributes
3  to Dr. Hong. Relator therefore cannot rely on her allegations regarding Dr. Hong to show that
4  "upcoding" and "unbundling" were widespread practices at Sutter.

5  Finally, if Relator wants to claim that Sutter Defendants are somehow liable for the acts of
6  Dr. Hong and Dr. Bates, she must allege that those physicians are agents of Sutter Defendants.
7  *See* Mot. to Dismiss at 12–13. In her Opposition, Relator contends that it is Sutter Defendants
8  who have an affirmative burden to "show[] that Hong is not their employee or agent, or under their
9  direction and control." *See* Opp. at 7. It is no surprise Relator is unable to find case law to support
10 this contention, which is clearly contrary to governing law. When alleging an agency relationship,
11 "sufficient facts must be offered to support a reasonable inference that an agency relationship
12 existed." *Pascal v. Agentra, LLC*, No. 19-CV-02418-DMR, 2019 WL 5212961, at *3 (N.D. Cal.
13 Oct. 16, 2019). Here, with four entities named as defendants, the necessity for this standard is
14 particularly clear. If Relator seeks to allege that the three entities comprising Sutter Defendants—
15 in addition to the Medical Group to which Dr. Hong and Dr. Bates belong—are responsible for the
16 acts of these physicians, she must establish the nature of the relationship between the physicians
17 and those entities and why such relationship can give rise to the liability Relator alleges.[8]

### C. Relator Fails to Allege Knowledge of any False or Fraudulent Statement to the Government

20 Relator's FAC also fails to state a claim against Sutter Defendants because she fails to
21 allege sufficient facts to support an inference that Sutter Defendants had knowledge of any billing
22 fraud. *See United States ex rel. Silingo v. WellPoint, Inc.*, 904 F.3d 667, 679–80 (9th Cir. 2018)
23 (citation omitted). Once again, Relator has attempted to hide this gap by referring to allegations
24 from *Ormsby* as if they were contained in the FAC. *See* Opp. at 20 (alleging that "Defendants
25 ignored red flags showing that their 'revenue enhancement' campaign would lead, and had led, to

---

[8] Relator, in her Opposition, repeatedly asserts that Dr. Hong and Dr. Bates are Sutter "employees." *See, e.g.*, Opp. at 1. This is incorrect, and indeed under California law Sutter cannot directly employ physicians. If Relator had truly been in the "belly of the beast" at Sutter, she surely would have understood this basic fact regarding Sutter's organization and California law.

thousands of false claims"). But the FAC does not include any of these allegations, nor does Relator have any personal knowledge that could serve as the basis for such allegations.

Relator's attempt to "borrow" allegations from *Ormsby* is not her only ploy to improperly and inaccurately invoke other FCA litigation against Sutter in the context of her scienter argument. She also argues that "Defendants have . . . conceded their false claims scienter because on Friday, April 12, 2019 (a full year after this Complaint was filed) they demonstrated repeated willingness to then refund CMS for $30,000,000 for false CMS (Medicare Advantage) billing." Opp. at 15 (citing Rel. RJN No. 1). This argument is bizarre—the settlement agreement Relator references explicitly states that it is not "an admission of liability by Sutter and its Affiliates" as to *that case*, let alone as to the allegations at issue here. Rel. RJN No. 1. Relator cannot by any means characterize Sutter Defendants' cooperation with the government in an unrelated matter as a concession regarding her claims in the present action.

### D. Relator Uses a Pseudonym in Violation of Federal Rule of Civil Procedure 10(a) and the Common Law

Finally, Relator argues that she must be allowed to maintain her use of a pseudonym, referring to a state court decision assessing this issue and contending that Sutter Defendants "have not and cannot plead any prejudice." Opp. at 24–25. However, this Court must evaluate Relator's desire to proceed anonymously in accordance with the governing law of this Circuit. *See Does I thru XXIII v. Adv. Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000). Whatever standard the state court may have applied in the other action to which Relator refers has no relevance here. *See* Mot. to Dismiss at 16–18. Under clear Ninth Circuit law, "the public has a separate and independent interest in the openness of judicial proceedings, and it is Relator's burden to show that anonymity is warranted." Order re Motion to Dismiss for Failure to Proceed Under True Name, *United States ex rel. Roe v. Stanford Healthcare Billing Dep't*, No. 2:17-cv-08726-DSF-AFM (C.D. Cal. July 13, 2020), ECF No. 82. Relator has not met that burden here, because she provides no basis for her purported fear of "potential physical harm" if her identity were revealed to the public (she acknowledges it is already known to defendants). *See id.* ("Relator has not met her burden because she has not shown that she has any reasonable fear of severe harm.... Relator has not provided any

evidence of a concrete threat of any kind of retaliation that she is actually likely to face.").

Moreover, having held herself out as an "expert," with a background as "a certified medical coder and biller, as well as a practicing surgeon," FAC ¶ 100, Relator has placed her own identity at issue in this litigation, and the public has an interest in evaluating her credibility. *See id.* ("The public interest and Defendants' interests also favors disclosure of Relator's name, especially in the context of claims of fraud against the government.... If Relator might be viewed as somehow not very competent or credible, Defendants have an interest in having the public view her allegations in that light."). The general presumption is that "parties' identities are public information," *Adv. Textile Corp.*, 214 F.3d at 1068, and "[t]he people have a right to know who is using their courts," *United States v. Stoterau*, 524 F.3d 988, 1013 (9th Cir. 2008) (citation omitted). Relator has provided no basis for departing from that general rule here. Therefore, the Court should dismiss Relator's *qui tam* action on this basis.

### III.  CONCLUSION

For the foregoing reasons, Sutter Defendants respectfully request that the Court grant their Motion to Dismiss and dismiss Relator's First Amended Complaint with prejudice.

Dated: September 11, 2020                     Respectfully submitted,

LATHAM & WATKINS LLP

By: */s/ Jason M. Ohta*
   Katherine A. Lauer
   Jason M. Ohta

*Attorneys for Defendants Sutter Health, Sutter Bay Medical Foundation, and Palo Alto Medical Foundation*