UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and THE STATE OF CALIFORNIA, *ex rel.* Judy Jones, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>SUTTER HEALTH, et al.,<br><br>Defendants. | Case No. 18-CV-02067-LHK<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS WITH LEAVE TO AMEND**<br><br>Re: Dkt. Nos. 72, 73 |

    Pseudonymous *qui tam* plaintiff "Judy Jones" ("Relator") brings this action under the False Claims Act and California False Claims Act against three groups of Defendants: (1) Sutter Health, Sutter Bay Medical Foundation, and Palo Alto Medical Foundation (collectively, "Sutter Defendants"); (2) Palo Alto Foundation Medical Group and Dr. Roy Hong (collectively, "Doctor Defendants"); and (3) unknown Does 1–10. Before the Court are Sutter Defendants' motion to dismiss Relator's First Amended Complaint ("FAC"), ECF No. 73, and Doctor Defendants' motion to dismiss the FAC, ECF No. 72. Having considered the submissions of the parties, the relevant law, and the record in this case, the Court GRANTS Defendants' motions to dismiss with leave to amend.

1

I.     BACKGROUND

   A. Factual Background

Relator filed this *qui tam* action against Sutter Defendants, Doctor Defendants, and unknown Does 1–10 (collectively, "Defendants"). Relator alleges that Defendants' "fraudulent billing practices" violated the False Claims Act ("FCA"), 31 U.S.C. §§ 3729–33, and the California False Claims Act ("CFCA"), Cal. Gov't Code §§ 12650–56. FAC ¶ 2, ECF No. 13. Specifically, Relator alleges that "through her expert analysis of thousands of adjudicated Medicare claims," she has "showed that Sutter [Health] and its surgeons freely took advantage of a flawed medical payment system by regularly upcoding and unbundling major surgical codes for breast cancer surgery, and coding 'first-time' immediate mastectomy reconstruction codes multiple times in the same patient." *Id.*; *see* FAC ¶¶ 4 (similar allegation against all Defendants), 22 (defining Defendant Sutter Health as "Sutter").

To obtain the Medicare claims she analyzed, Relator made two Freedom of Information Act ("FOIA") requests to the Centers for Medicare & Medicaid Services ("CMS"). The first FOIA request was made "in or about November 2016" and sought "billing and coding records for [Dr.] Hong and Sutter [Health]." FAC ¶ 94. The second FOIA request was made sometime before March 2017 and sought "Medicare billing and payment data for other Sutter [Health] plastic and reconstructive surgeons from 2010 through 2016." FAC ¶ 98. Relator's analysis of the FOIA data allegedly showed that "Sutter [Health] had pattern billed and received federal and State funds for breast surgery claims which did not appear to conform to NCCI [CMS' National Correct Coding Initiative], were incompatible code combinations, and failed to adhere to CMS mandates." FAC ¶ 100. Altogether, Defendants allegedly miscoded and overbilled surgical services. *See* FAC ¶¶ 115–131 (alleging that Defendants "routinely upcoded and unbundled mastectomy reconstruction claims").

   B. Procedural History

The instant case is one of two that Relator has pseudonymously brought against Doctor Defendants. In December 2012, Relator underwent a bilateral preventative mastectomy at

2

Case No. 18-CV-02067-LHK
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS WITH LEAVE TO AMEND

Defendant Palo Alto Medical Foundation. FAC ¶ 41. In November 2016, Relator allegedly reviewed the medical bills from her December 2012 mastectomy and noticed billing irregularities. FAC ¶ 94. On March 5, 2014, Relator brought a malpractice case against Defendants Dr. Hong, Palo Alto Foundation Medical Group, and other parties in Santa Clara County Superior Court. *See* Compl. for Damages, *Doe vs. Hong*, No. 1-14-CV-261702 (Cal. Super. Ct. Mar. 05, 2014). Relator brought her malpractice case under the pseudonym "Jane Doe." *Compare* FAC ¶ 41 (alleging a December 2012 bilateral mastectomy performed by Dr. Hong), *with, e.g.*, Compl. for Damages ¶¶ 17–19 (same). On November 29, 2017, the Superior Court dismissed Relator's malpractice case after she failed to appear for trial. *See* Doctor Defendants' Request for Judicial Notice in Support of Motion to Dismiss ("Doctor RJN") at Ex. B, ECF No. 72-2 (Order re: Defendants' Motion to Dismiss dismissing case pursuant to Cal. Code Civ. Proc. § 581(b)(5)).

On April 4, 2018, Relator brought the instant *qui tam* action. ECF No. 1 (original complaint). On October 19, 2018, Relator filed the FAC, which is the operative complaint. ECF No. 13. The FAC cites discovery obtained in Relator's dismissed Superior Court malpractice case. *See, e.g.*, FAC ¶¶ 96, 118, 119 (deposition testimony).

On June 11, 2019, the United States declined to intervene in the instant *qui tam* action. ECF No. 23. On June 19, 2019, California followed suit. ECF No. 29.

At first, the FAC alleged violations of not only the FCA and CFCA, but also the California Insurance Fraud Prevention Act. However, on December 4, 2019, Relator voluntarily dismissed without prejudice her California Insurance Fraud Prevention Act claim. ECF No. 39. Thus, only the FCA and CFCA claims remain.

On June 15, 2020, Sutter Defendants and Doctor Defendants each filed a motion to dismiss (ECF Nos. 72, 73),[1] and Doctor Defendants filed a request for judicial notice in support of their

---

[1] Sutter Defendants' motion to dismiss contains a notice of motion paginated separately from the memorandum of points and authorities in support of the motion. ECF No. 73 at 2. Civil Local Rule 7-2(b) provides that the notice of motion and points and authorities should be contained in one document with the same pagination.

motion to dismiss. ECF No. 72-2 ("Doctor RJN"); ECF No. 81 (errata to same). On August 14, 2020, Relator filed identical oppositions to the motions to dismiss and a request for judicial notice.[2] ECF Nos. 79 ("Opposition" or "Opp'n"), 80. On September 11, 2020, Sutter Defendants and Doctor Defendants each filed a reply supporting their motion to dismiss (ECF Nos. 84, 87), Doctor Defendants filed a request for judicial notice in support of their reply (ECF No. 85), and Defendants jointly filed an opposition to Relator's request for judicial notice (ECF Nos. 86, 88).

The Court may take judicial notice of matters that are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Moreover, courts may consider materials referenced in the complaint under the incorporation by reference doctrine, even if a plaintiff failed to attach those materials to the complaint. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). Public records, including judgments and other publicly filed documents, are proper subjects of judicial notice. *See, e.g.*, *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007). However, to the extent any facts in documents subject to judicial notice are subject to reasonable dispute, the Court will not take judicial notice of those facts. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). Here, Doctor Defendants request judicial notice of court filings and a CMS fee schedule available on CMS's website. ECF No. 72-2; ECF No. 85. These documents are public records. Accordingly, the Court GRANTS Doctor Defendants' requests for judicial notice, ECF No. 72-2 and ECF No. 85.

Relator requests judicial notice of 504 pages of documents plus other "redacted" documents that in fact have not been filed on the Court's docket. ECF No. 79-1. Defendants

---

[2] The Opposition violates Local Rules 3-4(c)(2) and 7-4(b), which require that opposition papers "may not exceed 25 pages," and each page "must be double-spaced with no more than 28 lines per page." The Opposition instead contains 25 pages of at least 32 lines each—and hardly any paragraph breaks. Thus, the Opposition is overlong by 100 lines or 3.5 pages of properly spaced text.

correctly note several defects with Relator's request for judicial notice. *See* ECF No. 86 at 4–6. However, given that Relator seeks judicial notice of public records (such as court filings and government announcements), the Court also GRANTS Relator's request for judicial notice. The Court notes again that to the extent any facts in documents subject to judicial notice are subject to reasonable dispute, the Court does not take judicial notice of those facts. *See Lee*, 250 F.3d at 689.

## II.   LEGAL STANDARD

### A.  Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The U.S. Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see Schwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation marks omitted). Mere "conclusory allegations of law and unwarranted

1  inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183
2  (9th Cir. 2004).

### B. Motion to Dismiss Under Federal Rule of Civil Procedure 9(b)

Claims sounding in fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001). Under the Federal Rules, a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To satisfy this standard, the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Thus, claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). In other words, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). The plaintiff must also plead facts explaining why the statement was false when it was made. *See In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1549 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in Adomitis ex. rel. United States v. San Bernardino Mountains Cmty. Hosp. Dist.*, 816 F. App'x 64, 66 (9th Cir. 2020). When there are multiple defendants in a case, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" *Swartz*, 476 F.3d at 764–65 (alterations in original omitted) (quoting *Haskin v. R.J. Reynolds Tobacco Co.*, 995 F. Supp.1437, 1439 (M.D. Fla. 1998)). The heightened pleading requirement of Rule 9(b) does not apply to allegations regarding defendant's state of mind. Thus, knowledge and intent need only be alleged generally to state a valid claim. *See* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be

1  alleged generally.").

2      "When an entire complaint . . . is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint . . . ." *Vess*, 317 F.3d at 1107. The Ninth Circuit has recognized that "it is established law in this and other circuits that such dismissals are appropriate," even though "there is no explicit basis in the text of the federal rules for the dismissal of a complaint for failure to satisfy 9(b)." *Id.* A motion to dismiss a complaint "under Rule 9(b) for failure to plead with particularity is the functional equivalent of a motion to dismiss under Rule 12(b)(6) for failure to state a claim." *Id.*

### C. Leave to Amend

If the Court determines that a complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

### III.   DISCUSSION

The FCA "prohibits submitting false or fraudulent claims for payment to the United States, [31 U.S.C.] § 3729(a), and authorizes qui tam suits, in which private parties bring civil actions in the Government's name, § 3730(b)(1)." *Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 563 U.S. 401, 404 (2011). The "California analogue" to the FCA, the CFCA, "is nearly identical." *United States ex rel. Mosler v. City of Los Angeles*, 414 F. App'x 10, 11 (9th Cir. 2010) (citing Cal. Gov't

1  Code § 12652(d)(3)). "For that reason, California courts look to federal decisions to interpret the public disclosure provision of the state statute." *Id.* (citing *State of California ex rel. Bowen v. Bank of Am. Corp.*, 126 Cal. App. 4th 225, 240 n.11 (Ct. App. 2005)); *accord, e.g.*, *State of California v. Altus Fin.*, 116 P.3d 1175, 1184 (Cal. 2005) ("[T]he CFCA 'is patterned on similar federal legislation' and it is appropriate to look to precedent construing the equivalent federal act." (quoting *Laraway v. Sutro & Co.*, 96 Cal. App. 4th 266, 274 (Ct. App. 2002))).

Similarly here, the parties assume that the relevant provisions of the CFCA are substantively identical to the corresponding provisions of the FCA. Those provisions are the statutes' public disclosure bar, 31 U.S.C. § 3730(e)(4)(A) & Cal. Gov't Code § 12652(d)(3)(A), and "original source" exception to that bar, 31 U.S.C. § 3730(e)(4)(B) & Cal. Gov't Code § 12652(d)(3)(B). Indeed, Plaintiff never cites (let alone analyzes) the CFCA in her Opposition. *See, e.g.*, Opp'n at vi (table of authorities citing federal statutes only); Opp'n at 6–16 (discussing only the FCA and federal case law). Defendants also focus on federal law and argue that "any failure to state a claim under the FCA will similarly foreclose claims alleged under the CFCA." ECF No. 73 at 3; *accord* ECF No. 72 (Doctor Defendants' same argument). Thus, to resolve the instant motions, the Court analyzes the FCA. The parties have waived any argument that the FCA and the CFCA are not functionally identical here. *See, e.g.*, *United States v. Chattanooga-Hamilton Cty. Hosp. Auth.*, 782 F.3d 260, 264 n.3 (6th Cir. 2015) (holding, in a FCA case, that "[i]ssues averted to in a perfunctory manner and without developed argumentation are deemed waived."); *U.S. ex rel. Estate of Cunningham v. Millennium Labs. of California, Inc.*, 713 F.3d 662, 674 (1st Cir. 2013) (similar).

Defendants move to dismiss the FAC on three grounds: (1) the public disclosure bar; (2) Relator's failure to allege fraud—or Defendants' knowledge of fraud—under Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6); (3) and Relator's use of a pseudonym in violation of Federal Rule of Civil Procedure 10(a) and the common law. *See* ECF Nos. 72, 73. However, because the public disclosure bar is dispositive, the Court need not address Defendants' other arguments.

The Court's analysis below proceeds in two parts. To start, the Court holds that the public disclosure bar requires the Court to dismiss the FAC. The Court then holds that Plaintiff's arguments to the contrary are meritless.

### A. The Public Disclosure Bar Requires Dismissing Relator's Claims.

The public disclosure bar provides that "[t]he court shall dismiss" a *qui tam* action "if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed" in any of several sources. 31 U.S.C. § 3730(e)(4)(A). One source covered by the public disclosure bar is a federal "report." *Id.* § 3730(e)(4)(A)(ii). Most relevant here, "a federal agency's written response to a request for records under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, constitutes a 'report' within the meaning of the public disclosure bar." *Schindler Elevator*, 563 U.S. at 404.

As the United States Supreme Court explained in *Schindler Elevator*, *qui tam* actions based on FOIA requests are "a classic example of the 'opportunistic' litigation that the public disclosure bar is designed to discourage." *Id.* at 413. These suits are "opportunistic" or "parasitic" because they are "based on 'evidence or information in the possession of the United States at the time such suit was brought.'" *Id.* at 412 (quoting *Graham Cty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 294 (2010)). "[A]nyone could [] file[] the same FOIA requests and then file[] the same suit." *Id.* at 413.[3]

So too here. Relator made FOIA requests to CMS to obtain the Medicare claims data analyzed in the FAC. Thus, *Schindler Elevator* controls. The Medicare claims data were "publicly

---

[3] *Schindler Elevator* analyzed a prior version of the public disclosure bar. In 2010, the Affordable Care Act amended the public disclosure bar but retained the bar's provision for federal "report[s]." *Compare* 31 U.S.C. § 3730(e)(4)(A) (1986) ("in a congressional, administrative, or Government Accounting Office report"), *with id.* at § 3730(e)(4)(A)(ii) (2010) ("in a congressional, Government Accountability Office, or other Federal report"). Thus, *Schindler Elevator*'s analysis of FOIA requests still controls. In fact, even where the amended language has differed more substantially, the Ninth Circuit has held that the court's analysis "would be the same under either version" of the statute. *U.S. ex rel. Mateski v. Raytheon Co.*, 816 F.3d 565, 569 n.7 (9th Cir. 2016) (analyzing change from "based upon" to "substantially the same").

disclosed" under the public disclosure bar.

It follows that "the [C]ourt shall dismiss" Relator's action if the Medicare claims data comprise "substantially the same allegations or transactions as alleged in the action." 31 U.S.C. § 3730(e)(4)(A). "The phrase 'allegations or transactions' in § 3730(e)(4)(A) [] suggests a wide-reaching public disclosure bar." *Schindler Elevator*, 563 U.S. at 408. In particular, the word "transactions" has "broad meaning." *Id.* A "'transaction' [] refers to facts from which fraud can be inferred." *U.S. ex rel. Mateski v. Raytheon Co.*, 816 F.3d 565, 571 (9th Cir. 2016). In other words, "the substance of the disclosure need not contain an explicit 'allegation' of fraud, so long as the material elements of the allegedly fraudulent 'transaction' are disclosed in the public domain." *Id.* (original alterations omitted) (quoting *United States ex rel. Found. Aiding the Elderly v. Horizon W., Inc.*, 265 F.3d 1011, 1014 (9th Cir.), *amended on denial of reh'g*, 275 F.3d 1189 (9th Cir. 2001)). In turn, a "transaction" is "substantially the same" as what is alleged in the *qui tam* action if the action does not "provide the Government with genuinely new and material information of fraud." *Id.* at 579; *see id.* at 576–77 (describing the appropriate level of generality for "genuinely new and material information").

Here, all "the material elements of the allegedly fraudulent 'transaction' are disclosed in" CMS's responses to Relator's FOIA requests. The FAC alleges that "Relator's Investigation" comprised (1) two FOIA requests; (2) CMS's "reports" of Medicare claims data in response; (3) and Relator's analysis of that publicly disclosed Medicare claims data. FAC ¶¶ 94, 96, 100. Relator then inferred fraud from that data. For instance, Relator made the following inferences on the face of the Medicare claims data, which Relator attached to the FAC as Exhibits A and B, *see* FAC ¶¶ 95, 99:

- Dr. Hong billed CMS $488,575 for breast-related procedures, *see* FAC ¶ 95;
- Dr. Hong used an allegedly erroneous procedure code, CPT code 19340, 29 times from April 20, 2010 through May 14, 2014, *see* FAC ¶ 96; and
- Defendant Sutter Health also often used CPT code 19340 where other procedure codes allegedly would have been more appropriate, *see* FAC ¶¶ 101, 107.

By the FAC's own terms, Relator uncovered Defendants' alleged fraud simply by analyzing data

"in the possession of the United States at the time [her] suit was brought.'" *Schindler Elevator*, 563 U.S. at 412 (quoting *Graham Cty.*, 559 U.S. at 294). This analysis fails to offer "genuinely new and material information." *Mateski*, 816 F.3d at 579. Rather, Relator's analysis relies on publicly disclosed procedure codes and CMS billing guidelines. *Id.* at 576; *see also* FAC ¶ 75 (attaching, as Exhibit C, "CMS guidelines for global surgical codes").

Thus, "it is possible to say that the evidence and information in the possession of the United States at the time the False Claims Act suit was brought was sufficient to enable it adequately to investigate the case and to make a decision whether to prosecute." *Found. Aiding*, 265 F.3d at 1016 (alteration in original omitted) (quoting *United States ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1377 (D.C. Cir. 1981)). Indeed, the United States and California have declined to intervene here. ECF Nos. 23, 29. All told, Relator's suit is a paradigmatic example of a suit foreclosed by the public disclosure bar.

Another court has reached the same conclusion for the same Relator. On December 4, 2017, four months before filing the instant action, Relator brought another *qui tam* action under the FCA and CFCA against Stanford Healthcare. *See United States ex rel. Roe v. Stanford Healthcare Billing Department*, No. 2:17-CV-8726 (C.D. Cal. filed Dec. 4, 2017). There, as here, Relator alleges pseudonymously that she is a medical coder and physician who underwent a mastectomy in December 2012 and then procured FOIA reports from CMS. *Compare* Doctor RJN at Ex. C ¶¶ 179–181 (First Am. Compl. filed in No. 2:17-CV-8726 on June 22, 2018), *with* FAC ¶¶ 38–41 (alleging same).

The *Stanford Healthcare* Court dismissed Relator's action twice under the public disclosure bar. The first time, the court held that "information acquired via a FOIA request qualifies as public disclosure under 31 U.S.C. § 3730(e)(4)(A)" and dismissed Relator's complaint with leave to amend. *Stanford Healthcare Billing Dep't*, 2020 WL 1074585, at *1 (C.D. Cal. Feb. 4, 2020). Despite that clear holding and other guidance on how to fix a "poorly organized and extremely repetitive" complaint, Relator's amended complaint was again defective. *Id.* at *2. "Essentially nothing was added to bolster Relator's claim" that the public disclosure bar did not

foreclose her lawsuit. *Stanford Healthcare*, 2020 WL 5033219, at *2 (C.D. Cal. July 13, 2020). Thus, the second time around, the court dismissed Relator's *qui tam* suit with prejudice. *Id.*

### B. Relator's Contrary Arguments are Meritless.

Relator's arguments to the contrary are meritless. Essentially three arguments can be discerned from Relator's overlength, rambling, and bombastic Opposition.[4] The first argument is that the dissent in *Schindler Elevator* somehow controls here. The second argument is that, under a district court case from the Central District of California, Relator's data analysis discovered new evidence outside the public disclosure bar. Lastly, Relator argues that she meets the "original source" exception to the public disclosure bar. The Court rejects each argument in turn.

#### 1. *Schindler Elevator*'s majority opinion, not its dissent, controls here.

Relator first argues that "Defendants' reliance on *Schindler* [*Elevator*] is misplaced." Opp'n at 10. To support this argument, Relator discusses the "significant abstention [sic] of 4 justices" in *Schindler Elevator* and Justice Ginsburg's "compelling dissenting opinion." Opp'n at 11. Justice Ginsburg argued that "a federal agency's response to a FOIA request should not automatically qualify as a 'report, hearing, audit, or investigation' preclusive of a whistleblower's lawsuit under the public disclosure bar of the FCA." *Id.* (quoting *Schindler Elevator*, 563 U.S. at 417 (Ginsburg, J., dissenting)).

Justice Ginsburg's dissent is not controlling precedent. The majority opinion in *Schindler*

---

[4] The Opposition violates this district's Guidelines for Professional Conduct, https://www.cand.uscourts.gov/forms/guidelines-for-professional-conduct/. Among other things, the Guidelines require that "[w]ritten materials submitted to the court should always be factual and concise, accurately state current law, and fairly represent the parties' positions without unfairly attacking the opposing party or opposing counsel." By contrast, the Opposition inaccurately states the law, misrepresents Defendants' arguments, and unfairly attacks Defendants' counsel. For instance, the Opposition purports to respond to several arguments that neither motion to dismiss raised. *See* ECF No. 84 at 6 n.6 (Doctor Defendants' Reply noting such arguments); ECF No. 87 at 5 n.2 (Sutter Defendants' Reply noting same). The Opposition also baselessly asserts that "Defendants and their counsel have knowingly made legally frivolous arguments based on deliberate factual falsehoods." Opp'n at 2. It is unacceptable for Relator and Relator's counsel, Anthony George Graham, to make such accusations without basis.

*Elevator* is. Suffice it to say, this Court is bound by the Supreme Court's holding that "a request for records under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, constitutes a 'report' within the meaning of the public disclosure bar." *Schindler Elevator*, 563 U.S. at 404.

### 2. Notwithstanding *Integra Med*, the publicly disclosed Medicare claims data comprise "substantially the same allegations or transactions" alleged in the FAC.

Relator next argues that her "data analysis" of FOIA reports "discover[ed] 'previously unknown' evidence" outside the public disclosure bar. Opp'n at 14 (quoting David C. Gryce & Roxanne A. Esch, 1 World Online Business Law § 6:4 (2010)). For support, Relator relies on *United States ex rel. Integra Med Analytics LLC v. Providence Health and Services*, No. 17-CV-1694-PSG, 2019 WL 3282619 (C.D. Cal. July 16, 2019), *motion to certify appeal granted*, 2019 WL 6973547 (C.D. Cal. Oct. 8, 2019). *See* Opp'n at 13–14 (discussing *Integra Med*). Specifically, Relator quotes a holding from *Integra Med* that "public disclosure of the Medicare claims data *alone* did not publicly disclose 'substantially the same allegations or transactions' of fraud that are alleged in [the *Integra Med* relator's] complaint." *Id.* at 14 (emphasis added) (quoting *Integra Med*, 2019 WL 3282619, at *17).[5]

If anything, *Integra Med* explains why Relator's suit fails. The holding quoted by Relator above pertains to alleged facts missing from the *Integra Med* Medicare data. Specifically, the *Integra Med* complaint alleged facts "taken from [a defendant's] business practice information" that, though posted online, potentially failed to meet the public disclosure bar's provision for "news media." *Integra Med*, 2019 WL 3282619, at *17 (discussing 31 U.S.C. § 3730(e)(4)(A)(iii)). That business practice information was "key to [r]elator's fraud claim." *Id*. Without that information, the *Integra Med* relator would have had only Medicare claims data—

---

[5] Relator also cites *United States ex rel. Ormsby v. Sutter Health*, 444 F. Supp. 3d 1010 (N.D. Cal. 2020), for the proposition that this district has "disregard[ed] many of the same frivolous arguments made by Sutter Defendants here." Opp'n at 8. Not so. As Sutter Defendants rightly note, *Ormsby* is "not relevant to the Court's analysis of whether a prior public disclosure bars Relator's *qui tam* action." ECF No. 87 at 6. *Ormsby* does not cite—let alone discuss—the public disclosure bar.

13
Case No. 18-CV-02067-LHK
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS WITH LEAVE TO AMEND

and "[n]othing in the claims data reveals [defendant]'s role in the alleged scheme, or even [defendant]'s existence." *Id.*

The Medicare claims data by themselves "constituted a federal report within the meaning of the public disclosure bar." *Id.* at *6. To reach this conclusion, the *Integra Med* Court *expanded* the public disclosure bar beyond FOIA. The Medicare data in *Integra Med* had not been disclosed through FOIA. Rather, CMS had disclosed the data only to researchers "subject to various privacy provisions." *Id.* at *7. Even so, the *Integra Med* Court found that the public disclosure bar applied. The court reasoned that "[j]ust as the FOIA responses in *Schindler Elevator* disclosed the contents of reports filed with the government, the Medicare data that CMS provided to Integra disclosed the contents of Medicare claims filed with the government." *Id.* at *6.

In short, *Integra Med* reached two holdings. First, the public disclosure bar might not categorically apply to business practice information found online. *See also Integra Med*, 2019 WL 6973547, at *8 (certifying for interlocutory appeal "[w]hether all online information is disclosed from the 'news media' such that it would fall under the public disclosure bar"). Second, even though some online information might not trigger the public disclosure bar, semi-private Medicare claims data reported by CMS certainly does.

The instant case is much easier than *Integra Med*. Here, the "facts from which fraud can be inferred" are all in the Medicare data that the FAC discusses at length. *Mateski*, 816 F.3d at 571; *see* FAC ¶¶ 94–108 (analysis of FOIA reports of Medicare data). Far from "[n]othing in the claims data reveal[ing] [defendant]'s role in the alleged scheme, or even [defendant]'s existence," *Integra Med*, 2019 WL 3282619, at *17, the Medicare claims data here contain Defendants' "unique National Provider Identifier[s] (NPI)." FAC ¶ 54. The NPIs identify "each institution, physician, non-physician practitioner, or medical group practice requesting or receiving payment for services provided to beneficiaries." *Id.*; *see id.* ¶¶ 55–58 (listing Defendants' NPIs). Relator used these NPIs to attribute allegedly fraudulent billing practices to Defendants. *See, e.g.*, FAC ¶¶ 99, 121, 128–130 (quoting data tables with NPIs attributed to Defendants). Anyone can use NPIs to look up a healthcare provider. *See* CMS, *NPPES NPI Registry*, https://npiregistry.cms.hhs.gov/ (last visited

Oct. 28, 2020) (searchable database of NPIs).

Furthermore, Relator's unclear argument still fails even if it relies not on *Integra Med*, but on Relator's alleged expertise in data analysis. Precedent rejects expertise as an exception to the public disclosure bar. As the Ninth Circuit has explained, "[t]he mere fact that [relator's] own expertise . . . may have enabled it to formulate [her] novel legal theory of fraud is irrelevant to the question of whether the material transactions giving rise to the alleged fraud were already disclosed in the public domain in the first place." *A-1 Ambulance Serv., Inc. v. California*, 202 F.3d 1238, 1245 (9th Cir. 2000); *see also, e.g.*, *United States ex rel. Zizic v. Q2Adm'rs., LLC*, 728 F.3d 228, 240 (3d Cir. 2013) ("[W]e have repeatedly rejected the argument that a [relator's] knowledge is independent when it is gained through the application of expertise to information publicly disclosed."). In sum, Relator's analysis of the data in FOIA reports does not exempt those reports from the public disclosure bar.

### 3. Relator is not an "original source."

Lastly, Relator claims that she is "the original source of the allegations in" the FAC. Opp'n at 11. The FCA exempts "original source[s]" from the public disclosure bar. 31 U.S.C. § 3730(e)(4)(A)(iii). The FCA defines two types of individuals who are an "original source":

> "original source" means an individual who either (i) prior to a public disclosure under subsection (e)(4)(A), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) [sic] who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section.

*Id.* § 3730(e)(4)(B). Relator argues she is the latter type of original source. Relator specifically argues that she "has 'direct and independent knowledge' of the information underlying the allegations in the lawsuit . . . . Relator was inside the 'belly of the beast'. Thus, Relator was an 'insider', and a Sutter healthcare surgeon client. Relator witnessed firsthand Defendants' efforts to intentionally mislead the government." Opp'n at 12.

To support her conclusory argument, Relator quotes the pre-2010 definition of original source ("direct and independent knowledge," 31 U.S.C. § 3730(e)(4)(B) (1986)) and cites four

15

paragraphs from the FAC: paragraphs 17, 43, 96, and 118. Opp'n at 12. None shows that Relator "has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions." 31 U.S.C. § 3730(e)(4)(B) (2010). The general hurdle posed by the knowledge requirement and specific flaws with Relator's cited paragraphs explain why.

As a general matter, the requirement of "independent" and "material[]" knowledge is a meaningful hurdle to overcoming the public disclosure bar. Case law from courts of appeals and a court in this district support this conclusion.

Courts of appeals have set slightly different—but all rigorous—thresholds for satisfying materiality. The Ninth Circuit has held in a memorandum disposition that "[a]llegations do not materially add to public disclosures when they provide only background information and details relating to the alleged fraud—they must add value to what the government already knew." *United States ex rel. Hastings v. Wells Fargo Bank, NA, Inc.*, 656 F. App'x 328, 331 (9th Cir. 2016). Other circuits have construed the materiality requirement even more strictly in published opinions. The First, Sixth, and Tenth Circuits have held that materiality "requires the claimant to show [she] had information 'of such a nature that knowledge of the item would affect a person's decision-making,' is 'significant,' or is 'essential.'" *U.S. ex rel. Advocates for Basic Legal Equal., Inc. v. U.S. Bank, N.A.*, 816 F.3d 428, 431 (6th Cir. 2016) (Sutton, J.) (quoting Black's Law Dictionary 1124 (10th ed. 2014)); *accord United States ex rel. Reed v. KeyPoint Gov't Sols.*, 923 F.3d 729, 756 (10th Cir. 2019) (holding same and discussing case law); *United States ex rel. Winkelman v. CVS Caremark Corp.*, 827 F.3d 201, 211 (1st Cir. 2016) (same). The Eleventh Circuit has held that relator's contribution of "background information and details relating to the value of the services offered" was immaterial—even though those details "ma[de] it somewhat more plain that [defendants]' programs could violate" the FCA. *U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 815 (11th Cir. 2015) (discussing FCA claim based on the Anti-Kickback Statute). Lastly, the strictest circuit definition of materiality perhaps comes from the Seventh Circuit. There, if a relator's "allegations are substantially similar to those contained in the [public disclosure], [relator's] allegations has not 'materially added' to the public disclosure." *Cause of Action v. Chicago Transit Auth.*, 815 F.3d

267, 283 (7th Cir. 2016).

As for case law from this district, one court has held that a few "inconsistencies" in defendants' statements across different legal proceedings, without more, "is hardly the stuff of an original source." *Silbersher v. Valeant Pharm. Int'l, Inc.*, 445 F. Supp. 3d 393, 407 (N.D. Cal. 2020) (citing *United States ex rel. Solis v. Millennium Pharm., Inc.*, 885 F.3d 623, 627 (9th Cir. 2018)). Overall, whatever the precise definition of "independent" and "material[]" knowledge, the FCA requires rigorous scrutiny of Relator's argument that she is an original source. Under scrutiny, Relator's specific citations to FAC ¶¶ 17, 43, 96, and 118 fail to show that Relator is an original source. The Court addresses each cited FAC paragraph in turn.

FAC ¶ 17 states that Relator served the original complaint and "material evidence" on federal and California officials, in accordance with 31 U.S.C. § 3730(b)(2)'s service requirement. This paragraph thus merely shows Relator's compliance with a procedural requirement of *qui tam* actions.

FAC ¶ 43 purports to justify why Relator brings this action anonymously. The first reason is "to protect Relator's medical privacy." The second is that "as a practicing physician and surgeon, Relator relies on referrals from other medical professionals. . . . [I]f her identity were to become publicly known, . . . Sutter [Health] and an entire cadre of its referring physicians could adversely impact both her family's finances and her career." This paragraph at most suggests that Relator has some medical and surgical expertise. Relator's expertise, however, "is irrelevant to the question of whether the material transactions giving rise to the alleged fraud were already disclosed in the public domain in the first place." *A-1 Ambulance Serv., Inc*, 202 F.3d at 1245.

FAC ¶ 96 alleges that "[t]he CMS reports obtained by Relator conflicted sharply with the deposition testimony given by Hong in another matter, in which he testified that he had not performed any, or at most a couple of single stage immediate implant-based mastectomy reconstructions (CPT 19340). The CMS reports obtained by Relator show that Hong in fact billed Medicare and received payment for CPT Code 19340 twenty-nine times from 4/20/2010 through 5/14/2014."

FAC ¶ 96 rests on an internally inconsistent premise. Relator presumes that the Medicare billing code "CPT Code 19340" appears only when an implant is inserted "immediate[ly]" after "implant-based *mastectomy* reconstructions." *Id.* (emphasis added) Yet the definition of CPT Code 19340 recited in the FAC states, on its face, that the code is also used in three operations: "*mastopexy*, mastectomy or *in reconstruction*." FAC ¶ 87 (emphasis added); *id.* ¶ 89 (stating same). Thus, there is no apparent conflict in Dr. Hong's deposition testimony. Dr. Hong could have performed at most two "immediate implant-based mastectomy reconstructions" while also performing dozens of mastopexy or non-mastectomy reconstructions billed to CPT Code 19340. *Id.* ¶ 96.

Moreover, even if Relator identified a conflict between deposition testimony and data on one billing code, the FAC fails to "state with particularity" how that is material. Fed. R. Civ. P. 9(b); *see* Section II-B, *supra* (discussing pleading standard). Materiality for the "original source" knowledge requirement requires Relator to at least add more than "background information and details relating to the alleged fraud." *Hastings*, 656 F. App'x at 331. A few "inconsistencies" in Defendants' statements across different legal proceedings, without more, "is hardly the stuff of an original source." *Silbersher*, 445 F. Supp. 3d at 407. Here, Relator presents one alleged inconsistency from one deposition about one billing code. This alleged inconsistency is merely an immaterial "detail[] relating to the value of the services offered" that, at most, "mak[es] it somewhat more plain" that one Defendant allegedly broke the law. *Osheroff*, 776 F.3d at 815.

Lastly, FAC ¶ 118 is entirely unclear. FAC ¶ 118 appears to reallege FAC ¶ 96 with all its flaws. Specifically, FAC ¶ 118 alleges that Dr. Hong "testified at his deposition in another matter that he had only performed possibly *two* total 'single-stage' mastectomy reconstructions (CPT 19340)." FAC ¶ 118 (emphasis in original). Again, however, this allegation wrongly presumes that "CPT 19340" refers only to *mastectomy* reconstructions.

To support its false premise, FAC ¶ 118 quotes an excerpt of Dr. Hong's deposition in another matter brought by Relator. FAC ¶ 118, unclear as it is, seems to argue that this deposition

excerpt shows that CPT 19340 refers only to "'single-stage' mastectomy reconstructions." FAC ¶ 118. However, the deposition excerpt in no way supports Relator's argument. The excerpt in its entirety reads:

> Q. So on -- on both of those, you did an immediate reconstruction after mastectomy?
>
> A. Uh-huh.
>
> Q. And you did a subcutaneous implant?
>
> A. Yes.
>
> Q. And did you use AlloDerm?
>
> A. No. Did not.

*Id.* This deposition excerpt fails to show any inconsistency between Dr. Hong's deposition in another matter and the Medicare claims data here.

In sum, because Relator lacks "knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions," she is not an "original source." 31 U.S.C. § 3730(e)(4)(B). This conclusion, which is exhaustively supported by this record, was also reached for the same Relator in *Stanford Healthcare*. There too, the court held that "little can be inferred from a single instance of incorrect billing" and dismissed Relator's FCA and CFCA claims. *Stanford Healthcare*, 2020 WL 5033219, at *1; *accord* 2020 WL 1074585, at *2 ("Relator's experiences do not appear to add anything to the allegations of improper added billing . . . . These allegations appear to be entirely based on a review of Medicare records."). The *Stanford Healthcare* Court gave Relator one chance to amend and then dismissed her claims with prejudice. 2020 WL 5033219, at *2.

This Court agrees with *Stanford Healthcare*'s approach. The Court dismisses Relator's FAC with leave to amend because allowing amendment would not unduly prejudice the opposing party, cause undue delay, or be futile. *See Leadsinger*, 512 F.3d at 532. The Court warns, however, that failure to cure the deficiencies identified in this order and in the motions to dismiss will result in dismissal of the deficient claims with prejudice.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motions to dismiss the First Amended Complaint with leave to amend. Should Relator elect to file a second amended complaint curing the deficiencies identified herein, Relator shall do so within 21 days of the date of this Order. Failure to meet the 21 day deadline to file a second amended complaint or failure to cure the deficiencies identified in this Order and in Defendants' motions to dismiss will result in dismissal of deficient claims with prejudice. Relator may not add new causes of action or parties without leave of the Court or stipulation of the parties pursuant to Federal Rule of Civil Procedure 15.

**IT IS SO ORDERED.**

Dated: November 6, 2020

_Lucy H. Koh_
LUCY H. KOH
United States District Judge

20
Case No. 18-CV-02067-LHK
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS WITH LEAVE TO AMEND