**GRAHAM & ASSOCIATES LLP**
Anthony G. Graham (SBN. 148682)
2901 West Coast Hwy, Ste 200,
Newport Beach, CA 92663-4045
Phone Number: (949) 270-2792
Fax Number: (949) 270-2793
Cell Number: (714) 209-5640
Email: anthonyggraham@msn.com
ATTORNEYS FOR RELATOR
JUDY JONES

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and THE STATE OF CALIFORNIA, *ex. rel.* Judy Jones, an individual, <br><br>            Plaintiffs, <br>    v. <br><br>SUTTER HEALTH, a corporation; SUTTER BAY MEDICAL FOUNDATION, a corporation; PALO ALTO MEDICAL FOUNDATION, a corporation, PALO ALTO FOUNDATION MEDICAL GROUP, INC., a corporation; ROY HONG, M.D., aka ROY W. HONG, an individual; and DOES 1-10, <br><br>            Defendants. | Case No. 18-CV-02067-LHK <br><br>Complaint Filed April 4, 2018 <br><br><br>**SECOND AMENDED COMPLAINT FOR VIOLATIONS OF THE FALSE CLAIMS ACT AND THE CALIFORNIA FALSE CLAIMS ACT** <br><br><br>DEMAND FOR JURY TRIAL |

Plaintiffs the United States of America ("United States") and the State of California (the "State"), by and through Relator Judy Jones ("Relator"), bring this Second Amended Complaint against Defendants (collectively herein "Sutter") for violations of the False Claims Act, 31 U.S.C. § 3729, *et seq.* (the "FCA") and the California False

Claims Act, Cal. Gov't Code § 12650, *et seq*. (the "CFCA"), pursuant to 31 U.S.C. § 3730 and Cal. Gov't Code § 12652.  This False Claims Action is based Relator's personal discovery of Defendant's fraudulent billing practices when one of the doctors engaged in those fraudulent practices admitted to her that her diagnosis of breast cancer was fraudulent and was used to increase her bills by fraudulent manipulation by "upcoding" (using a higher priced non-applicable code) and "unbundling" (taking a specific surgical practice which is required to be charged at a fixed "all inclusive" price, and charging for each action and equipment used individually, and thus at a much higher overall price). That doctor also admitted he and others employed by Sutter performed the same billing practices on all their other patients, specifically including Medicare and Medi-Cal patients. These egregious institutional practices of "upcoding" and "unbundling" healthcare code/billing practices relating to women's healthcare by plastic and reconstructive surgeons practicing at Sutter and its subsidiaries and affiliates are clear violations of the Federal and State FCA's.

## **INTRODUCTION**

1.   Relator Jones is a physician and surgeon, and a certified professional medical coder, who has worked in a surgical specialty from 2000 to the present day.

2.   Relator Jones was diagnosed as having a high risk for potential breast cancer on November 15, 2012 by Doctor Roy Hong, who worked for Sutter and Palo Alto Medical Foundation and Palo Alto Medical Foundation, Inc. (hereinafter referred to

collectively as "PAMF"). Sutter billed Relator $2850.90 for Hong's service on December 12, 2012. [1]

3.     Relator Jones submitted to an operation for a single stage breast reconstruction by Dr. Hong on December 12, 2012 (following preventative double mastectomy by a non-Sutter surgeon Dr. Frederick Dirbas).

4.     Relator Jones brought suit for professional malpractice against both doctors due to the very poor results of the operation on April 5, 2014 in Superior Court.

5.     During that civil litigation, counsel for Relator deposed Doctor Hong and discovered that the reconstruction procedures performed by Hong on Relator were neither safe nor necessary.  Further, she independently discovered when examining her bill from Dr. Hong, and having many years working with such coded billings, that although the priced charged to her insurance was $2850.90, based on the use of a fraudulent code, the actual cost for the surgery in fact performed was less than $1550.

6.     On or about December 11, 2012 Relator Jones then spoke alone directly with Dr. Hong, who later admitted to her that he, PAMF and Sutter had falsely represented to her insurance carrier that she had been diagnosed with breast cancer, when in fact she did not have breast cancer.  Moreover, he admitted that he performed these same breast reconstructive procedures frequently on all his clients, specifically including those covered by Medicare and Medi-cal.

---

[1]     Relator is identified with a pseudonym.  However, Relator will file a motion to proceed under a fictitious name and to seal the reference list giving the corresponding true name to the Court, pursuant to F.R.C.P. 5.2.

7.      Doctor Hong's co-surgeon, Dr. Dirbas, also admitted while speaking to Relator that it was common knowledge that doctors Hong and others who were part of the Sutter Health Care system frequently did the same unnecessary procedures.  These surgeries were then "upcoded" for billing purposes, that is, the billers used a specific billing code for a non-diagnosed medical procedure which resulted in a higher and false bill being presented to the insurer, including Medicare and Medi-Cal.  Based on Relator's own experience of billing procedures and the costs allowed by medical insurers, including Medicare and Medi-Cal, on information and belief, Defendants thus gained unjust enrichment of approximately 30-50% per procedure.

8.      Mastectomy reconstruction and breast cancer treatment are one of the few carve out plastic surgeries that are not considered "elective" or cosmetic.  Federal and California state laws require that insurance carriers provide indemnity for plastic surgery related to breast cancer detection, prevention, treatment, and reconstruction.  *See* 29 U.S.C. § 1185b; Cal. Ins. Code § 10123.8; Cal. Health & Safety Code § 1367.6. Plastic surgery and breast augmentation are otherwise self-pay procedures costing $5000-$12,000, depending on geographical factors.  However, Medicare, Medicaid, and private insurance reimbursement for the professional component of mastectomy reconstruction with implants averages a fraction of self-pay rates.  Defendants executed various "upcoding" and "unbundling" schemes in order to subvert these lower rates.

9.      Defendants' misconduct has resulted in many tens of millions of dollars of overpayments from Medicare and the State. Sutter then compounded its misconduct by knowingly and improperly avoiding its obligations to repay these overpayments to

Medicare and the State.  Dr. Hong billed for surgeries which his colleagues testified under oath, and Dr. Hong admitted, he had never performed.

10.     Relator, in examining her own bills, discovered that the Sutter surgeons knowingly billed insurance carriers' higher "first-time" reconstruction codes and misused code modifiers which falsely represented greater "work"  in her case, and they unbundled and billed for component surgical services which in fact should have been free.

11.     Sutter uses Current Procedural Terminology ("CPT") code 19357 for placing a tissue expander ("TE") at the time of mastectomy reconstruction, a very high paying code.  CPT 19357 is nearly always a two-stage mastectomy reconstruction.  Then, at the second surgery, Defendants falsely stacked a *second* "first-time" major surgery code as a single-stage reconstruction by billing CPT 19340, a high paying code (approximately $1195)[2] meant for a "one-and-done," single stage reconstruction performed at the same time as the mastectomy. Further, they tacked on other improper codes like CT 19370 and 19371 to increase revenues per surgery.  Instead, Sutter should have billed only CPT 11970 for the second stage of the surgery, which is a much lower paying code (approximately $624) for implant exchange after TE and less work units than a "one and done" CPT code 19340.

---

[2] The amount allowed by Medicare for each CPT code, by year the services were rendered and by locality, is available at https://www.cms.gov/apps/physician-fee-schedule/search/search-criteria.aspx.  As the amount allowed for each code varies by location, and has somewhat decreased over time, these exemplar charges amounts may not correspond to the actual charges for a specific patient.

12.    As to "unbundling", Sutter increased the chargeable costs for Relator's, and other's staged mastectomy reconstructions with improper add-on single surgery codes like 19370, opening the scar capsule (capsulotomy), and CPT 19380 (revision of a reconstructed breast).  However, capsulotomy is not separately chargeable as it is **included** in the global fee for TE exchange (CPT 11970).  Moreover, the act of exchanging an implant after a TE is not "revision of a reconstructed breast" (CPT 19380), it is a prosthesis change within the meaning of CPT.  Sutter's coding manipulation and unbundling results in an *additional* $1386 in payment for the two-stage reconstruction.

13.    On October 20, 2016, Relator contacted Sutter and PAMF executive Michael Williams about Defendant Hong's December 2012 false cancer diagnosis which led to the false billing. Sutter, PAMF, and Hong admitted in writing on December 12, 2016 to making the specific false cancer entry of "bilateral history of breast cancer" dated "12/12/12", and admitted that no breast cancer had ever existed in Relator. Despite this undisputed admission, Sutter, PAMF, and Hong never made corrections to the carrier and the false cancer diagnosis payments were retained by Sutter.

14.    As to why surgeons like Hong would do this, the answer is simple. Money. Dr. Hong admitted that he, and other very "busy" surgeons were heavily incentivized to maximize coding for facility fees, as well as upcharges for the durable surgical supplies, such as breast implants and TE used, which are billed at thousands of dollars per breast. In 2016, Hong testified at his deposition in another matter that he had only performed possibly two total "single-stage" mastectomy reconstructions in his career (CPT 19340). On November 12, 2014, Hong's co-surgeon, Dr. Frederick Dirbas, testified at his

deposition that he had *never* seen Dr. Hong perform a single stage (CPT 19340) reconstruction after mastectomy. Dr. Dirbas also testified that as of December 12, 2012 he only knew of a single surgeon in San Francisco that had ever done the single stage post mastectomy implant-based surgery and, even then, only on a rare experimental basis.

15.     As a direct, proximate, and foreseeable result of Sutter's fraudulent course of conduct set forth herein, Defendants knowingly submitted, and caused to be submitted, thousands of false or fraudulent statements, records, and claims for payment to Medicare and Medicaid for upcoded and unbundled mastectomy and breast reconstruction surgeries and procedures, and related charges.

## JURISDICTION AND VENUE

14.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732, which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. § 3730, as well as the claims of the State brought pursuant to Cal. Gov't Code § 12652.  Pursuant to 28 U.S.C. § 1367, this Court also has supplemental jurisdiction over the claims of the State brought pursuant to Cal. Gov't Code § 12652.

15.     Under 31 U.S.C. § 3730(e)(4)(A), there has been no statutorily relevant public disclosure of "substantially the same allegations or transactions" alleged in this Complaint.

16.     Relator meets the definition of an "original source," as that term is defined under 31 U.S.C. § 3730(e)(4)(B). Relator has knowledge that is independent of and materially adds to any purported publicly disclosed allegations or transactions, and she

voluntarily disclosed to the United States the specific information admitted to her by Doctors Hong and Dirbas and the other information she thereafter collected and upon which allegations or transactions at issue in this complaint are based prior to any purported public disclosure under 31 U.S.C. § 3730(e)(4)(A).  Relator therefore qualifies as an "original source" of the allegations in this Complaint such that the so-called public disclosure bar set forth at 31 U.S.C. § 3730(e)(4) is inapplicable.

17.     Relator has served upon the Attorney General of the United States, the United States Attorney for the Northern District of California, the Attorney General of the State of California, and the Santa Clara County District Attorney's Office the original Complaint and a written disclosure summarizing the known material evidence and information in the possession of Relator related to the original Complaint, in accordance with the provisions of 31 U.S.C. § 3730(b)(2).  Relator will serve upon the Attorney General of the United States, the United States Attorney for the Northern District of California, the Attorney General of the State of California, and the Santa Clara County District Attorney's Office Commissioner or their respective designees a copy of this and any other subsequent amended complaints.

18.     This Court has personal jurisdiction over Defendants and venue is proper in this District pursuant to 31 U.S.C. § 3732(a), because Defendants can be found in, reside, and/or transact business in this District, and because acts proscribed by 31 U.S.C. § 3729 occurred in this District.

19.     Venue is also proper pursuant to 28 U.S.C. § 1391(b) because one or more Defendants reside in this District, and because a substantial part of the events or omissions giving rise to the claims alleged occurred in this District.

## PARTIES

## I.   DEFENDANTS

20.     Defendant SUTTER HEALTH ("Sutter") is a nonprofit public benefit corporation organized and existing under the laws of the State of California, having its principal place of business in Sacramento, California.  Sutter is designated as a tax-exempt, non-profit organization under section 501(c)(3) of the Internal Revenue Code. Defendant Sutter is the corporate parent of, owns, or otherwise controls defendants SBMF, PAMF, and PAFMG.

21.     Defendant SUTTER BAY MEDICAL FOUNDATION ("SBMF") is a nonprofit public benefit corporation organized and existing under the laws of the State of California, having its principal place of business in Emeryville, California.

22.     Defendant PALO ALTO MEDICAL FOUNDATION FOR HEALTH CARE, RESEARCH AND EDUCATION dba Palo Alto Medical Foundation ("PAMF") is a nonprofit public benefit corporation organized and existing under the laws of the State of California, having its principal place of business in Palo Alto, California.

23.     Defendant PALO ALTO FOUNDATION MEDICAL GROUP, INC. ("PAFMG") is a professional corporation organized and existing under the laws of the State of California, having its principal place of business in Mountain View, California.

PAMF has offices throughout the San Francisco Bay Area, staffed by over 1,450 PAFMG physicians.

24.     Defendant ROY HONG, M.D., aka ROY W. HONG ("Hong") is an individual and senior plastic surgeon at Sutter, having his residence in Menlo Park and his principal place of business at PAMF in Santa Clara County, California.

25.     Relator is ignorant of the true names and capacities of the defendants sued herein under the fictitious names Does 1 through 10.  Each of the fictitiously named defendants is responsible in some manner for the acts and violations herein alleged. Relator will seek leave to amend this complaint to allege said defendants' true names and capacities as soon as Relator ascertains them.

26.     At all times mentioned herein, each defendant was the agent for each other defendant, was acting in the course and scope of such agency, and was engaged in a conspiracy to do the things herein alleged.

II.   **PLAINTIFFS**

27.     Plaintiff is the United States of America, suing on behalf of the United States Department of Health and Human Services ("HHS"), which includes its operating division, CMS. At all times relevant to this Complaint, CMS administered and supervised the Medicare Program.

28.     Plaintiff is the State of California, suing on behalf of the California Department of Health and Human Services ("HHS"), which includes its operating division, Medi-Cal (Medicaid).

## III.    RELATOR

30.    Relator brings this FCA based upon direct and unique knowledge obtained about directly from two of the surgeons employed by Defendants. Relator is a resident of California, and auditor of Sutter private and government health claims. Relator's understanding of the matters giving rise to this action stem from the admissions of those employees and in part from Relator's position, training, and certification in healthcare claim billing.

## COMMON FACTUAL ALLEGATIONS

## IV.    BACKGROUND FACTS

### A.    Sutter's Relationship to Medicare and Medi-Cal.

29.    Medicare maintains a National Provider Identifier (NPI) system,[3] which assigns a unique, 10-digit numeric identifier to each institution, physician, non-physician practitioner, or medical group practice requesting or receiving payment for services provided to beneficiaries. NPI's are assigned to institutions as well as individual health care providers. Billing CMS requires utilization of the NPI's of both the institution and the individual rendering provider.[4]

---

[3]    The system formerly known as Unique Physician Identification Number (UPIN) was discontinued in June 2007, and replaced by the NPI system.

[4]    Sutter has numerous NPI numbers, including 1750559928, 1265755615, and 1346621349, and many others assigned to its various subsidiaries and affiliates.  SBMF has numerous NPI numbers, including 1013950807, 1982845186, 1104067115, 1043654486, 1164840088, 1306241534, 1568851327, 1366898538, 1861848046, 1760833834, 1861843955, 1003267196, 1679924765, 1992258263, 1093269235, 1902350168, 1104370253, 1841744992, and 1528512688. PAMF has numerous NPI numbers, including 1235200577, 1942355292, 1114182649, 1184077497, 1811178270, 1265839393, 1497996524, and 1316982994. Hong's NPI number is 1407967029.

30.     CMS administers the Medicare program through its contractors. CMS contracts with Medicare Administrative Contractors ("MAC") to process Medicare claims and perform administrative functions.  In California, CMS currently contracts with Noridian Healthcare Solutions, LLC ("Noridian"), which administers and pays Part A and Part B claims from the Medicare trust fund, a reserve of monies provided by the federal government.

31.     To bill Medicare for services provided to beneficiaries in California, facility providers submit a claim on Form CMS-1450 to Noridian, usually in electronic form, certifying that the contents of the form are true, correct, complete and that the form was prepared in compliance with all Medicare laws and regulations.

32.     To bill Medicare for services provided to beneficiaries in California, individual physicians and practices submit a claim electronically (837P) or on Form CMS-1500 to Noridian, containing certain required information pertaining to the Medicare beneficiary, including the beneficiary's name, health insurance claim number ("HIC"), the date of service, location where the service was rendered, the type of services provided, the CPT code, the number of services rendered, an ICD-9 code reflecting the patient's diagnosis, the charges for each service provided, the provider's NPI, and a certification that the services were personally rendered by the provider.

33.     Medi-Cal claims for breast surgeries and related charges are submitted on Form CMS-1500 (for medical services and supplies) or Form UB-04 (for inpatient services for acute hospital accommodations and ancillary charges) to the California Medicaid Management Information System (California MMIS) Fiscal Intermediary using

the Medi-Cal claims processing system.  Effective January 3, 2017, Conduent State

Healthcare, LLC is the new California MMIS Fiscal Intermediary, which processes all

Medi-Cal claims.

**B.**   **Billing Medicare and Medi-Cal for Services**

34.    The American Medical Association has established certain codes to identify

medical services and procedures performed by physicians, known as the Physicians

Current Procedural Terminology ("CPT") system.  CPT codes are widely used and

accepted by health care providers and insurers, including Medicare, Medi-Cal, and other

public and private insurers. States administering the Medicaid program, including the

State of California, are required to process and pay Medicaid claims in conformity with

the NCCI.  *See* https://www.medicaid.gov/federal-policy-guidance/downloads/smd-10-

017.pdf.

35.    Medicare payment for a surgical procedure includes the pre-operative,

intra-operative, and post-operative services routinely performed by the surgeon or by

members of the same group with the same specialty.  Physicians in the same group

practice who are in the same specialty must bill and be paid as though they were a single

physician.

36.    The "global surgical package," also called global surgery fee, includes all

the necessary services normally furnished by a surgeon before, during, and after a

procedure.  Physicians who furnish the surgery and all of the usual pre-and post-operative

care may bill for the global package by entering the appropriate CPT code for the surgical

procedure only.  The Medicare approved amount for these procedures *includes* payment

for services related to the surgery when furnished by the physician who performs the surgery.  Separate billing is not allowed for visits or other services that are included in the global package.  Thus, a surgeon cannot "unbundle" and bill separately for the pre-operative visit the day before surgery, or break components of a global surgery and bill into *"a la carte"* upcoded components.

37.     Pursuant to CMS, codes with "090" are major surgeries which have a 90-day post-operative period which by definition includes one day pre-operative.  Also, the day of the procedure is generally not payable as a separate service.  Thus, the total global period is 92 days, counting one day before the day of surgery, the day of surgery, and the 90 days immediately following the day of surgery.

### C.     Mastectomy Reconstruction and Global Days

38.     Breast cancer or cancer prevention surgery is comprised of two main steps.  First, the work required to remove the breast cancer, tumor, or high-risk benign tissue ("mastectomy"). Second, the work required to repair the wound or defect from the surgery ("reconstruction") designed to recreate a breast mound following a mastectomy performed to treat cancer or other disease, or a mastectomy performed for prophylactic purposes.

39.     Breast reconstruction can be immediate (performed at the time of the mastectomy procedure) or delayed (performed at a later date).

40.     Most breast surgery codes have 90-day global periods.  Therefore, a global fee paid for performing a TE placement after mastectomy (a major surgery) already includes in that total fee an amount for pre-operative and post-operative visits.  Thus, the

surgeon is not entitled to unbundle and bill separately for pre-operative or post-operative visits, nor is the surgeon permitted to bill a second stage surgery as though he did an immediate reconstruction at the time of mastectomy.

### D. Sutter's Scheme is Discovered by Relator.

41.    Relator Jones is a physician and surgeon, and a certified professional medical coder, who has worked in a surgical specialty from 2000 to the present day.

42.    Relator Jones was diagnosed as having a high risk for potential breast cancer on November 15, 2012 by Doctor Roy Hong, who worked for Sutter and Palo Alto Medical Foundation and Palo Alto Medical Foundation, Inc. (hereinafter referred to collectively as "PAMF"). Sutter billed Relator $2850.90 for Hong's service on December 12, 2012.

43.    Relator Jones submitted to an operation for a single stage breast reconstruction by Dr. Hong on December 12, 2012 (following preventative double mastectomy by a non-Sutter surgeon Dr. Frederick Dirbas).

44.    Relator Jones brought suit for professional malpractice against both doctors due to the very poor results of the operation on April 5, 2014 in Superior Court.

45.    During that civil litigation, counsel for Relator deposed Doctor Hong and discovered that the reconstruction procedures performed by Hong on Relator were neither safe nor necessary.  Further, she independently discovered when examining her bill from Dr. Hong, and having many years working with such coded billings, that although the priced charged to her insurance was $2850.90, based on the use of a fraudulent code, the actual cost for the surgery in fact performed was less than $1550.

46.     On or about December 11, 2012 Relator Jones then spoke alone directly with Dr. Hong, who later admitted to her that he, PAMF and Sutter had falsely represented to her insurance carrier that she had been diagnosed with breast cancer, when in fact she did not have breast cancer.  Moreover, he admitted that he performed these same breast reconstructive procedures frequently on all his clients, specifically including those covered by Medicare and Medi-cal.

47.     Doctor Hong's co-surgeon, Dr. Dirbas, also admitted while speaking to Relator that it was common knowledge that doctors Hong and others who were part of the Sutter Health Care system frequently did the same unnecessary procedures.  These surgeries were then "upcoded" for billing purposes, that is, the billers used a specific billing code for a non-diagnosed medical procedure which resulted in a higher and false bill being presented to the insurer, including Medicare and Medi-Cal.  Based on Relators own experience of billing procedures and the costs allowed by medical insurers, including Medicare and Medi-Cal, on information and belief, Defendants thus gained unjust enrichment of approximately 40-50% per procedure.

48.     Mastectomy reconstruction and breast cancer treatment are one of the few carve out plastic surgeries that are not considered "elective" or cosmetic.  Federal and California state laws require that insurance carriers provide indemnity for plastic surgery related to breast cancer detection, prevention, treatment, and reconstruction. *See* 29 U.S.C. § 1185b; Cal. Ins. Code § 10123.8; Cal. Health & Safety Code § 1367.6. Plastic surgery and breast augmentation are otherwise self-pay procedures costing $5000-$12,000, depending on geographical factors.  However, Medicare, Medicaid, and

private insurance reimbursement for the professional component of mastectomy reconstruction with implants averages a fraction of self-pay rates.  Defendants executed various "upcoding" and "unbundling" schemes in order to subvert these lower rates.

49.     Defendant's misconduct has resulted in many tens of millions of dollars of overpayments from Medicare and the State. Sutter then compounded its misconduct by knowingly and improperly avoiding its obligations to repay these overpayments to Medicare and the State.  After Dr. Hong's  admissions to Relator, she examined his billing records and discovered that Defendant Hong billed Medicare over $1.7 million dollars from 2010 to 2016, of which over $488,000 was for breast surgery. Dr. Hong billed for surgeries which his colleagues including co-surgeon Dr. Dirbas testified under oath, and Dr. Hong admitted, he had never performed.

50.     Relator, in examining her own bill, discovered that the Sutter surgeons knowingly billed insurance carriers' higher "first-time" reconstruction codes in her case and misused CPT code modifiers to falsely obtain higher pay, and they unbundled and billed for component surgical services which in fact should have been free.

51.     Sutter uses Current Procedural Terminology ("CPT") code 19357 for placing a tissue expander ("TE") at the time of mastectomy reconstruction, a very high paying code.  CPT 19357 is nearly always a two-stage mastectomy reconstruction.  Then, at the second surgery, Defendants falsely stacked a *second* "first-time" major surgery code as a single-stage reconstruction by billing CPT 19340, a high paying code

(approximately $1195)[5] meant for a "one-and-done," single stage reconstruction performed at the same time as the mastectomy. Further, they tacked on other improper codes like CT 19370 and 19371 to increase revenues per surgery. Instead, Sutter should have billed CPT 11970, which is a much lower paying code (approximately $624) for implant exchange after TE and less work units than a "one and done" CPT code 19340.

52.     As to "unbundling", Sutter increased the chargeable costs for Relator's, and other's two stage mastectomy reconstructions with improper add-on single surgery codes like 19370, opening the scar capsule (capsulotomy), and CPT 19380 (revision of a reconstructed breast). However, capsulotomy is not separately chargeable as it is included in the global fee for TE exchange (CPT 11970). Moreover, the act of exchanging an implant after a TE is not "revision of a reconstructed breast" (CPT 19380), it is a prosthesis change within the meaning of CPT. Sutter's coding manipulation and unbundling results in an *additional* $1386 in payment for the two-stage reconstruction.

53.     On October 20, 2016, Relator contacted Sutter and PAMF executive Michael Williams about Defendant Hong's December 2012 false cancer diagnosis which led to the false billing. Sutter, PAMF, and Hong **admitted in writing on**

---

[5] The amount allowed by Medicare for each CPT code, by year the services were rendered and by locality, is available at https://www.cms.gov/apps/physician-fee-schedule/search/search-criteria.aspx. As the amount allowed for each code varies by location, and generally increases over time, these exemplar charges may not correspond to the actual charges for a specific patient.

**December 12, 2016** to making the specific false cancer entry of "bilateral history of breast cancer" dated "12/12/12", and **admitted that no breast cancer had ever existed in Relator**. Despite this admission, **Sutter, PAMF, and Hong never made corrections to the carrier and the false cancer diagnosis payments were retained by Sutter.**

54.     As to why surgeons like Hong would do this, the answer is simple. Money.  Dr. Hong admitted that he, and other very "busy" surgeons were heavily incentivized to maximize coding for facility fees, as well as upcharges for the durable surgical supplies, such as breast implants and TE used, which are billed at thousands of dollars per breast.

55.     As a direct, proximate, and foreseeable result of Sutter's fraudulent course of conduct set forth herein, Defendants knowingly submitted, and caused to be submitted, thousands of false or fraudulent statements, records, and claims for payment to Medicare and Medicaid for upcoded and unbundled mastectomy and breast reconstruction surgeries and procedures, and related charges.


### FIRST CLAIM FOR RELIEF
### VIOLATIONS OF THE FALSE CLAIMS ACT
### 31 U.S.C. § 3729, *et seq.*

(By Plaintiff United States Against All Defendants)

56.     The allegations of the preceding paragraphs are incorporated by reference as if fully set forth herein.

57.     This claim for violations of the False Claims Act, 31 U.S.C. § 3729, *et seq*., is brought by Relator in the name of the United States, pursuant to 31 U.S.C. § 3730(b). Relator is an "original source" of the information on which this claim is based, as that term is defined in 31 U.S.C. § 3730(e)(4)(B). 31 U.S.C. § 3729(a)(1)(A) provides that any person who:

> knowingly presents, or causes to be presented, a false or
> fraudulent claim for payment or approval . . . is liable to the
> United States Government for a civil penalty of not less than
> $5,000 and not more than $10,000, as adjusted by the Federal
> Civil Penalties Inflation Adjustment Act of 1990 . . . , plus 3
> times the amount of damages which the Government sustains
> because of the act of that person.

58.     31 U.S.C. § 3729(b)(1) defines "knowingly" to "mean that a person, with respect to information – (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information; and (B) require[s] no proof of specific intent to defraud."

59.     In relevant part, 31 U.S.C. § 3729(b)(2) defines "claim" as:

> any request or demand, whether under a contract or
> otherwise, for money or property and whether or not the
> United States has title to the money or property, that—

(i) is presented to an officer, employee, or agent of the

United States; or

(ii) is made to a contractor, grantee, or other recipient,

if the money or property is to be spent or used on the

Government's behalf or to advance a Government

program or interest, and if the United States

Government—

(I) provides or has provided any portion of the

money or property requested or demanded; or

(II) will reimburse such contractor, grantee, or

other recipient for any portion of the money or

property which is requested or demanded . . . .

60.     The Medicare and Medicaid claims submitted by Defendants to CMS

and/or its Medicare Administrative Contractors and/or the MMIS Fiscal Intermediaries

are "claims" within the meaning of the FCA.

61.     By virtue of the acts described above, Defendants knowingly presented, or

caused to be presented, false or fraudulent claims for payment or approval by regularly

and freely unbundling and separately charging for surgeries and procedures that were part

of a global fee schedule, and thus not eligible for separate billing, in violation of 31

U.S.C. § 3729(a)(1)(A).

62.     By virtue of the acts described above, Defendants knowingly presented, or

caused to be presented, false or fraudulent claims for payment or approval for

innumerable "single stage immediate mastectomy reconstructions" which were not performed as such, in violation of 31 U.S.C. § 3729(a)(1)(A).

31 U.S.C. § 3729(a)(1)(B) provides that any person who:

> knowingly makes, uses, or causes to be made or used, a false
> record or statement material to a false or fraudulent claim . . . .
> is liable to the United States Government for a civil penalty
> of not less than $5,000 and not more than $10,000, as adjusted
> by the Federal Civil Penalties Inflation Adjustment Act of
> 1990 . . . , plus 3 times the amount of damages which the
> Government sustains because of the act of that person.

63.     31 U.S.C. § 3729(b)(4) defines "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property."

64.     By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used, false records and statements material to the foregoing false or fraudulent claims, in violation of 31 U.S.C. § 3729(a)(1)(B).  Specifically, Defendants knowingly submitted false or fraudulent claims using false CPT billing codes, which not only influenced, but determined, the amount they were paid.

65.     The United States, unaware of the falsity or fraudulence of the claims presented by Defendants, or the falsity of the records and/or statements which the Defendants made or used, or caused doctors and other health care providers to make, and in reliance on the accuracy thereof, paid Defendants, doctors, and other health care

providers for claims that would otherwise not have been allowed, suffering damages.  31 U.S.C. § 3729(a)(1)(G) provides that any person who

> knowingly makes, uses, or causes to be made or used, a false
>
> record or statement material to an obligation to pay or
>
> transmit money or property to the Government, or
>
> knowingly conceals or knowingly and improperly avoids
>
> or decreases an obligation to pay or transmit money to the

Government . . .

> is liable to the United States Government for a civil penalty
>
> of not less than $5,000 and not more than $10,000, as adjusted
>
> by the Federal Civil Penalties Inflation Adjustment Act of
>
> 1990 . . . , plus 3 times the amount of damages which the
>
> Government sustains because of the act of that person.

66.     31 U.S.C. § 3729(b)(4) defines "obligation" to include "an established duty, whether or not fixed, arising from an express or implied contractual . . . relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment[.]"

67.     By virtue of the acts described above, Defendants knowingly concealed and/or knowingly and improperly avoided an obligation to pay or transmit money to the Government resulting from Defendants' retention of the foregoing overpayments, in violation of 31 U.S.C. § 3729(a)(1)(G).

68.   As a result of the above-described conduct, the United States is entitled to civil penalties and treble damages as provided by 31 U.S.C. § 3729(a)(1).

69.   31 U.S.C. § 3729(a)(1)(C) provides that any person who "conspires to commit" any of the foregoing violations is liable for the same civil penalties and treble damages.  Defendants conspired to commit each the violations alleged, for which they are jointly and severally liable.

**SECOND CLAIM FOR RELIEF**
**VIOLATIONS OF THE CALIFORNIA FALSE CLAIMS ACT**
**Cal. Gov't Code § 12650, *et seq*.**
**(By Plaintiff State of California Against All Defendants)**

70.   The allegations of the preceding paragraphs are incorporated by reference as if fully set forth herein.

71.   This claim for violations of the California False Claims Act, Cal. Gov't Code § 12650, *et seq*., is brought by Relator in the name of the State of California, pursuant to Gov't Code § 12652(c).  Relator is an "original source" of the information on which this claim is based, as that term is defined in Gov't Code § 12652(d)(3)(C).

72.   Gov't Code § 12651(a) provides that:

Any person who commits any of the following enumerated

acts in this subdivision shall have violated this article and

shall be liable to the state or to the political subdivision for

three times the amount of damages that the state or political

subdivision sustains because of the act of that person.  A

person who commits any of the following enumerated acts

shall also be liable to the state or to the political subdivision

for the costs of a civil action brought to recover any of those

penalties or damages, and shall be liable to the state or

political subdivision for a civil penalty of not less than five

thousand five hundred dollars ($5,500) and not more than

eleven thousand dollars ($11,000) for each violation, as

adjusted by the Federal Civil Penalties Inflation Adjustment

Act of 1990 . . . .

73.    Gov't Code § 12651(a)(1) provides that any person who "knowingly

presents or causes to be presented a false or fraudulent claim for payment or approval" is

so liable.

74.    Gov't Code § 12650(b)(2) defines "knowingly" to "mean that a person,

with respect to information, does any of the following:

(A) Has actual knowledge of the information.

(B) Acts in deliberate ignorance of the truth or falsity of the

information.

(C) Acts in reckless disregard of the truth or falsity of the

information.

Proof of specific intent to defraud is not required.

75.    In relevant part, Gov't Code § 12650(b)(1) defines "claim" as:

any request or demand, whether under a contract or

otherwise, for money, property, or services, and whether or

not the state or a political subdivision has title to the money,

property, or services that meets either of the following

conditions:

      (A) Is presented to an officer, employee, or agent of

the state or of a political subdivision.

      (B) Is made to a contractor, grantee, or other recipient,

if the money, property, or service is to be spent or used

on a state or any political subdivision's behalf or to

advance a state or political subdivision's program or

interest, and if the state or political subdivision meets

either of the following conditions:

            (i) Provides or has provided any portion of the

money, property, or service requested or

demanded; or

            (ii) Reimburses the contractor, grantee, or other

recipient for any portion of the money,

property, or service that is requested or

demanded.

76.    The Medicaid claims submitted by Defendants to the California MMIS

Fiscal Intermediary are "claims" within the meaning of the CFCA.

77.     By virtue of the acts described above, Defendants knowingly presented, or caused to be presented, false or fraudulent claims for payment or approval by regularly and freely unbundling and separately charging for surgeries and procedures that were part of a global fee schedule, and thus not eligible for separate billing, in violation of Gov't Code § 12651(a)(1).

78.     By virtue of the acts described above, Defendants knowingly presented, or caused to be presented, false or fraudulent claims for payment or approval for innumerable "single stage immediate mastectomy reconstructions" which were not performed as such, in violation of Gov't Code § 12651(a)(1).

79.     Gov't Code § 12651(a)(2) provides that any person who "knowingly makes, uses, or causes to be made or used a false record or statement material to a false or fraudulent claim" is liable for the same treble damages and civil penalties.

80.     Gov't Code § 12650(b)(4) defines "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money, property, or services."

81.     By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used, false records and statements material to the foregoing false or fraudulent claims, in violation of Gov't Code § 12651(a)(2). Specifically, Defendants knowingly submitted false or fraudulent claims using false CPT billing codes, which not only influenced, but determined, the amount they were paid.

82.     The State, unaware of the falsity or fraudulence of the claims presented by Defendants, or the falsity of the records and/or statements which the Defendants made or

used, or caused doctors and other health care providers to make, and in reliance on the accuracy thereof, paid Defendants, doctors, and other health care providers for claims that would otherwise not have been allowed, suffering damages.

83.     Gov't Code § 12651(a)(7) imposes liability for the same treble damages and civil penalties on any person who

> Knowingly makes, uses, or causes to be made or used a false record or statement material to an obligation to pay or transmit money or property to the state or to any political subdivision, or knowingly conceals or knowingly and improperly avoids, or decreases an obligation to pay or transmit money or property to the state or to any political subdivision.

84.     Gov't Code § 12650(b)(5) defines "obligation" to include "an established duty, whether or not fixed, arising from an express or implied contractual . . . relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment."

85.     By virtue of the acts described above, Defendants knowingly concealed and/or knowingly and improperly avoided an obligation to pay or transmit money to the State resulting from Defendants' retention of the foregoing overpayments, in violation of Gov't Code § 12651(a)(7).

86.     Gov't Code § 12651(a)(8) imposes liability for the same treble damages and civil penalties on any person who,

> Is a beneficiary of an inadvertent submission of a false claim, subsequently discovers the falsity of the claim, and fails to

disclose the false claim to the state or the political subdivision

within a reasonable time after discovery of the false claim.

87.     By virtue of the acts described above, Defendants, to the extent they were beneficiaries of the inadvertent submission of false claims, were alerted by Relator to the falsity of the claims, but failed to disclose the false claims to the State within a reasonable time thereafter, in violation of Gov't Code § 12651(a)(8).

88.     As a result of the above-described conduct, the State is entitled to civil penalties and treble damages as provided by Gov't Code § 12651(a).

89.     Gov't Code § 12651(a)(3) provides that any person who "conspires to commit" any of the foregoing violations is liable for the same civil penalties and treble damages.  Defendants conspired to commit each the violations alleged, for which they are jointly and severally liable pursuant to Gov't Code § 12651(a)(c).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

1.     That the Court enter Judgment against Defendants and in favor of the United States in an amount equal to three times the amount of damages the United States has sustained as a result of Defendants' actions, plus the maximum civil penalty for each violation of the False Claims Act, 31 U.S.C. § 3729, *et seq*.;

2.     That the Court enter Judgment against Defendants and in favor of the State of California in an amount equal to three times the amount of damages the State of California has sustained as a result of Defendants' actions, plus the maximum civil

penalty for each violation of the California False Claims Act, Cal. Gov't Code § 12650 *et seq*.

3.      For Relator's reasonable attorney's fees, expenses, and costs of suit, pursuant to 31 U.S.C. § 3730(d) and Gov't Code § 12652(g)(8).

4.      For orders preliminarily and permanently enjoining Defendants from continuing the fraudulent claims practices alleged herein; and

5.      For such other and further relief as the Court deems just and proper.


## **DEMAND FOR JURY TRIAL**

Realtor and Plaintiffs demand a trial by jury on all claims so triable.


Respectfully submitted,

**GRAHAM & ASSOCIATES LLP**

Dated:  January 25, 2021                  \s\ *Anthony Graham*
                                           Anthony Graham (SBN 148682)

                                           *Attorneys for Relator Judy Jones*

## CERTIFICATE OF SERVICE

I, Anthony Graham, hereby certify that I am I am over eighteen years of age and not a party to this action.  My business address is: 2901 West Coast Hwy, Ste 200, Newport Beach, CA 92663-4045.  On January 25, 2021, I served the following document(s) via the court's electronic filing system ECF as agreed on by the parties:

**SECOND AMENDED COMPLAINT**

on the person(s) below, as follows:

Attorneys for Defendants Roy Hong, M.D. aka Roy W. Hong and Palo Alto Foundation Medical Group, Inc., a corporation:

Scott J. Kiepen (State Bar No. 175504)
Katrina A. Pagonis (State Bar No. CA 262890)
**HOOPER LUNDY & BOOKMAN, P.C.**
101 Montgomery Street, 11th Floor
San Francisco, CA 94104
Telephone: (415) 875-8500
Facsimile: (415) 986-2157
Email: SKiepen@health-law.com
Email: KPagonis@health-law.com

Joseph R. LaMagna (State Bar No. CA 246850)
**HOOPER LUNDY & BOOKMAN, P.C.**
101 W. Broadway, Suite 1200
San Diego, CA 92101
Telephone: (619) 744-7300
Facsimile: (619) 230-0987
Email: JLamagna@health-law.com

Attorneys for the United States:
Sarah Winslow, Assistant United States Attorney, Civil Division
**U.S. ATTORNEY'S OFFICE, NORTHERN DISTRICT OF CALIFORNIA**
450 Golden Gate Avenue, Box 36055
San Francisco, CA 94102-3495
Email: sara.winslow@usdoj.gov

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

_/S/AnthonyGraham_
Anthony Graham

I also caused to be electronically served the documents by email, and addressed to the persons at the addresses listed below.

Assistant United States Attorney
Deputy Chief, Civil Division
U.S. Attorney's Office, Northern District of California
450 Golden Gate Avenue, Box 36055
San Francisco, CA 94102-3495
Email: cgarcia@dao.sccgov.org

Katherine Wang, Fraud Liaison Bureau
California Department of Insurance
45 Fremont Street, 21st Floor
San Francisco, CA 94105
Email: Katherine.Wang@insurance.ca.gov

Elizabeth Voorhies, Office of the Attorney General
1455 Frazee Road, Suite 315
San Diego, CA 92108
Email: Elizabeth.Voorhies@doj.ca.gov

Vonda L. Tracey, Insurance Fraud
Office of the District Attorney
Santa Clara County
70 West Hedding, West Wing
San Jose, CA 95110
Email: vtracey@dao.sccgov.org

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct. Dated January 25, 2021

_/S/AnthonyGraham_
Anthony Graham

Case No. 18-CV-02067-LHK
SECOND AMENDED COMPLAINT
United States vs. Sutter Health et al.