Scott J. Kiepen (State Bar No. 175504)
Katrina A. Pagonis (State Bar No. CA 262890)
**HOOPER LUNDY & BOOKMAN, P.C.**
101 Montgomery Street, 11th Floor
San Francisco, CA 94104
Telephone: (415) 875-8500
Facsimile: (415) 986-2157
Email: SKiepen@health-law.com
Email: KPagonis@health-law.com

Joseph R. LaMagna (State Bar No. CA 246850)
**HOOPER LUNDY & BOOKMAN, P.C.**
101 W. Broadway, Suite 1200
San Diego, CA 92101
Telephone: (619) 744-7300
Facsimile: (619) 230-0987
Email: JLamagna@health-law.com

Attorneys for Defendants Roy Hong, M.D. aka
Roy W. Hong and Palo Alto Foundation Medical
Group, Inc., a corporation

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and THE STATE OF CALIFORNIA, *ex rel.* Judy Jones, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>SUTTER HEALTH, a corporation; SUTTER BAY MEDICAL FOUNDATION, a corporation: et. al.,<br><br>Defendants. | Case No. 18-CV-02067-LHK<br><br>(*Assigned to The Honorable Lucy H. Koh*)<br><br>**DEFENDANTS ROY HONG, M.D. aka ROY HONG AND PALO ALTO FOUNDATION MEDICAL GROUP'S NOTICE OF MOTION AND MOTION TO DISMISS RELATOR'S SECOND AMENDED COMPLAINT**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: July 1, 2021<br>Time: 1:30 p.m.<br>Crtrm.: 8<br>Judge: Lucy H. Koh<br><br>Second Am. Comp. Filed: January 25, 2021<br>Trial Date: None Set |

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on July 1, 2021 at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 8, 4th Floor of the United States District Court for the Northern District of California, 280 South First St., San Jose, CA 95113, Defendants Palo Alto Medical Foundation, Palo Alto Foundation Medical Group, and Roy Hong, M.D. (collectively, the "Doctor Defendants"), by and through their counsel will and hereby do respectfully move this Court to dismiss the Second Amended Complaint in the above-captioned action pursuant to Federal Rules of Civil Procedure 12(b)(6), 8(a), and 9(b).

This Motion is based on this Notice of Motion and Motion, the concurrently filed Memorandum of Points and Authorities, and the pleadings and papers on file in this action, and on such other further evidence and argument as may be presented prior to, and at, the hearing on this Motion.

HOOPER, LUNDY & BOOKMAN, P.C.

DATED:  March 1, 2021

By: _____
SCOTT J. KIEPEN
KATRINA A. PAGONIS
JOSEPH R. LAMAGNA
Attorneys for Defendants Roy Hong, M.D.
aka Roy W. Hong; Palo Alto Foundation Medical
Group, Inc., a corporation

Case No. 18-CV-02067-LHK

DR. HONG AND PAFMG'S MOTION TO DISMISS RELATOR'S SECOND AMENDED COMPLAINT

7038110.6

# <u>TABLE OF CONTENTS</u>

**Page**

I.      INTRODUCTION .................................................................................................7

II.     FACTUAL BACKGROUND .............................................................................8

    A.      Relator's Previous Lawsuits ...................................................................8

    B.      Procedural History ..................................................................................9

    C.      Relator's Allegations ............................................................................10

III.    PLEADING STANDARDS UNDER THE FCA AND CFCA ........................11

IV.     ARGUMENT ....................................................................................................12

    A.      Relator's Claims are Disclosed in a Federal Report and are Barred Under the Public Disclosure Bar. ...........................................................................13

        1.      Any Alleged False Claims are Wholly Disclosed in FOIA Reports. ...........14

        2.      Relator is Not an Original Source. ................................................15

            a.      Relator's Personal Experience with her Private Insurance Claim Does not Materially Add to the Publicly Disclosed Transactions. .................................................................16

            b.      Relator's Allegations of Deposition Testimony and "Admissions" are No Different from Allegations Previously Considered by this Court and Fail to Establish that She is an Original Source. .....................................................................18

    B.      Relator Fails to Plead Any FCA or CFCA Violation with the Plausibility and Particularity Required Under Rule 8(a) or Rule 9(b) .......................20

        1.      Relator's Vague Allegations Fail to Plead Fraud with the Particularity Required under Rule 9(b). .....................................21

        2.      Relator has not Alleged that PAFMG Caused the Submission of Any Claims. ..........................................................................25

        3.      Relator Again Fails to Allege Dr. Hong or PAFMG Had the Requisite Knowledge of False Claims. .......................................26

        4.      Relator Still Has Not Alleged Any Reverse False Claims by Dr. Hong or PAFMG. ..............................................................27

V.      CONCLUSION .................................................................................................28

**HOOPER, LUNDY & BOOKMAN, P.C.**
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL. (415) 875-8500 • FAX (415) 986-2157

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

7038110.6

# TABLE OF AUTHORITIES

**Cases**            **Page(s)**

*Adams v. Johnson*,
    355 F.3d 1179 (9th Cir. 2004) ........................................................................................ 16

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ......................................................................................... 11, 16, 27

*Bailey v. Gatan, Inc.*,
    783 F. App'x 692 (9th Cir. 2019) .................................................................................. 20

*Cafasso v. General Dynamics C4 Systems, Inc.*,
    637 F.3d 1047 (9th Cir. 2011) ....................................................................................... 11

*United States ex rel. Campie v. Gilead Scis., Inc.*,
    862 F.3d 890 (9th Cir. 2017) ......................................................................................... 20

*United States ex rel. Gonzalez v. Planned Parenthood of L.A.*,
    759 F.3d 1112 (9th Cir. 2014) ................................................................................. 11, 26

*U.S. ex rel. Hopper v. Anton*,
    91 F.3d 1261 (9th Cir. 1996) ......................................................................................... 26

*United States ex rel. Lee v. Corinthian Colls.*,
    655 F.3d 984 (9th Cir. 2011) ......................................................................................... 26

*United States ex rel. Modglin v. DJO Glob. Inc.*,
    114 F. Supp. 3d 993 (C.D. Cal. 2015), *aff'd sub nom United States v. DJO
    Glob., Inc.*, 678 F. App'x 594 (9th Cir. 2017) ............................................................. 12

*United States ex rel. Pecanic v. Sumitomo Elec. Interconnect Prods. Inc.*,
    2013 U.S. Dist. LEXIS 27913, 2013 WL 774177 (S.D. Cal. Feb. 28, 2013) ......................... 26

*United States ex rel. Roe v. Stanford Healthcare Billing Department*,
    No. 2:17-cv-8726 (C.D. Cal. filed Dec. 4, 2017), *appeal docketed*, No. 20-
    55874 (9th Cir. Aug. 25, 2020) ....................................................................................... 8
    2020 WL 1074585 (C.D. Cal. Feb. 4, 2020) .................................................................... 9
    2020 WL 5033219 (C.D. Cal. July 13, 2020) ........................................................ 9, 12, 17

*Schindler Elevator Corp. v. United States ex rel. Kirk*,
    563 U.S. 401 (2011) ................................................................................................. 14, 20

*In re Stac Elecs. Sec. Litig.*,
    89 F.3d 1399 (9th Cir. 1996) ......................................................................................... 12

*State of California v. Altus Fin.*,
    116 P.3d 1175 (Cal. 2005) ............................................................................................. 20

**HOOPER, LUNDY & BOOKMAN, P.C.**
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

7038110.6

*Swartz v. KPMG LLP*,
     476 F.3d 756 (9th Cir. 2007) ............................................................................ 26

*Winter ex rel. United States v. Gardens Reg'l Hosp. & Med. Ctr.*,
     953 F.3d 1108 (9th Cir. 2020) .......................................................................... 26

*United States v. Kinetic Concepts, Inc.*,
     No. CV0801885BROAGRX, 2017 WL 2713730 (C.D. Cal. Mar. 6, 2017) ........... 28

*Ebeid ex rel. United States v. Lungwitz*,
     616 F.3d 993 (9th Cir. 2010) ......................................................... 12, 21, 22, 25

*United States v. Safran Grp., S.A.*,
     2017 U.S. Dist. LEXIS 8408, 2017 WL 235197 (N.D. Cal. Jan. 19, 2017) ......... 26

*United States v. United Healthcare Insurance Company*,
     848 F.3d 1161 (9th Cir. 2016) .......................................................................... 21

*Universal Health Services, Inc. v. Escobar*,
     136 S. Ct. 1989 (2016) .................................................................................... 24

**Federal Statutes**

5 U.S.C. § 552 ........................................................................................................ 14

31 U.S.C. § 3729(a)(1)(G) .................................................................................. 27, 28

31 U.S.C. § 3729(b)(1) ........................................................................................... 20

31 U.S.C. § 3729(b)(2) ........................................................................................... 22

31 U.S.C. § 3729(b)(4) ........................................................................................... 24

31 U.S.C. § 3730(e)(4)(A) ............................................................................. 7, 13, 15

31 U.S.C. § 3730(e)(4)(B) ......................................................................... 7, 13, 15, 16

31 U.S.C. § 3733 ..................................................................................................... 7

**California Statutes**

Bus. & Prof. Code § 2400 *et seq.* ........................................................................... 25

Cal. Corp. Code § 13400 .......................................................................................... 25

Cal. Gov't Code §12650(b)(1) .................................................................................. 20

Cal. Gov't Code § 12651(a)(7) ........................................................................... 27, 28

Cal. Gov't Code § 12651(a)(8) ........................................................................... 27, 28

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

Cal. Gov't Code §§ 12650-56 ............................................................................................ 7

**Other Authorities**

Fed. R. Civ. P. Rule 9(b) ..................................................................................... *passim*

Fed. R. Civ. P. Rule 10(a) ............................................................................................ 7

Fed. R. Civ. P. Rule 8(a) ............................................................................ 11, 13, 20, 26

Fed. R. Civ. P. Rule 12(b)(6) ..................................................................................... 11

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL. (415) 875-8500 • FAX (415) 986-2157

7038110.6

## I.    **INTRODUCTION**

By filing a facially deficient Second Amended Complaint ("SAC"), ECF No. 96, Relator "Judy Jones" is continuing her pattern of bringing unsuccessful and frivolous litigation against Defendants Dr. Roy Hong, Palo Alto Foundation Medical Group ("PAFMG"), and others under various pseudonyms.[1]  Relator is a serial, parasitic relator, and this Court properly dismissed her first amended complaint ("FAC"), ECF Nos. 13-14, under the public disclosure bar by its order of November 6, 2020 (Order Granting Defs.' Mots. Dismiss with Leave to Amend ("Order"), ECF No. 90).  In doing so, this Court concluded that Federal reports issued by the Centers for Medicare and Medicaid Services ("CMS") (FAC ¶¶ 94-95, Exs. A-B, ECF No. 14) in response to Relator's Federal Freedom of Information Act ("FOIA") requests disclose the relevant transactions alleged by Relator, namely Dr. Hong's use of Current Procedural Terminology ("CPT") Code 19340 for procedures other than single-stage breast reconstructions.  Order at 10, ECF No. 90.

In response, Relator attempts to ignore the existence of the CMS reports that trigger the public disclosure bar, presenting nebulous and sometimes nonsensical allegations of fraud in her SAC.  In the end, Relator's SAC makes clear that she cannot overcome the public disclosure bar, 31 U.S.C. § 3730(e)(4)(A), because she is not an "original source."  Her scant independent knowledge largely concerns her own single-stage breast reconstruction procedure, which is a procedure that Relator alleges Dr. Hong rarely performs (SAC ¶ 14) and alleged mistakes concerning the diagnostic code that accompanied her claim.  None of this knowledge "materially adds" to the CMS reports that publicly disclose the transactions at issue, as would be required for Relator to be an "original source" under 31 U.S.C. § 3730(e)(4)(B).

The SAC also fails to state a claim under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33, or the California False Claims Act ("CFCA"), Cal. Gov't Code §§ 12650-56.  Under

---

[1] Although Relator claims she will file a motion to proceed under a pseudonym in this action (SAC ¶ 2 n.1), as of the date of this filing she has failed to do so in violation of Fed. R. Civ. P. Rule 10(a).  Her violation of Rule 10(a) provides an additional basis for dismissing Relator's SAC, and Defendants Dr. Hong and PAFMG again urge the Court to establish a deadline for Relator to file such an application or proceed under her true name.  Because Relator cannot satisfy the requirements for proceeding pseudonymously, Defendants Dr. Hong and PAFMG intend to vigorously oppose any application by Relator to proceed under a pseudonym.

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

Fed. R. Civ. P. Rule 9(b), "the circumstances constituting fraud" must be "state[d] with particularity." But Relator offers only vague allegations of upcoding and unbundling without any particularity. It appears that Relator continues to disagree with the use of CPT Code 19340 outside of the context of a single-stage breast reconstruction, but she cites no Medicare or Medi-Cal rules or guidance to back up her assertions that claims reporting these codes are false, and she wholly disregards this Court's observation that the description of CPT Code 19340 on its face contemplates its use for other procedures.

This Court expressly warned Relator that "failure to cure the deficiencies identified" in the Court's November 6, 2020 Order and in Defendants' motions to dismiss Relator's FAC "will result in dismissal of the deficient claims with prejudice." Order at 19, ECF No. 90. Relator has not only failed to cure these deficiencies, but has compounded them with ambiguous and threadbare allegations in her SAC. Therefore, this action should be dismissed with prejudice in its entirety, or, in the alternative, as to Defendants Dr. Hong and PAFMG.

## II. **FACTUAL BACKGROUND**

### A. **Relator's Previous Lawsuits**

Relator is a serial, pseudonymous plaintiff and former patient who unsuccessfully sued Dr. Hong and PAFMG along with other parties for malpractice following her December 2012 mastectomy. *See* Compl. for Damages, *Doe vs. Hong*, No. 1-14-CV-261702 (Cal. Super. Ct. Mar. 5, 2014); SAC ¶ 4 (repeated at ¶ 44). On November 29, 2017, her malpractice action was dismissed because she failed to appear for trial, despite having obtained discovery from Dr. Hong, PAFMG, and others. Order at 3, ECF No. 90 (citing Doctor Defs.' Req. Judicial Notice, Ex. B, ECF No. 72-2). Approximately four months later, she filed her original complaint in this action under a new pseudonym—Judy Jones. ECF 1.

Relator also separately filed another FCA suit against Stanford Health Care and other defendants under a third pseudonym following another unsuccessful malpractice action. Order at 11 (ECF No. 90); *see United States ex rel. Roe v. Stanford Healthcare Billing Department*, No. 2:17-cv-8726 (C.D. Cal. filed Dec. 4, 2017), *appeal docketed*, No. 20-55874 (9th Cir. Aug. 25, 2020). On February 4, 2020, the district court in *Stanford Healthcare* dismissed her first amended

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11ᵀᴴ FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

1    complaint under the public disclosure bar, holding that a FOIA report constitutes a public

2    disclosure and that Relator is not an independent source because her independent information did

3    not "materially add" to the FOIA reports. 2020 WL 1074585, at *2-4 (C.D. Cal. Feb. 4, 2020).

4    On July 13, 2020 the *Stanford Healthcare* Court dismissed Relator's claims and declined to grant

5    further leave to amend. 2020 WL 5033219, at *2 (C.D. Cal. July 13, 2020). In dismissing

6    Relator's claims, the court noted that she had "done essentially nothing to address the issue that

7    caused the first amended complaint to be dismissed." *Id.* at *1. Just like in the matter at hand,

8    Relator's personal experience of a "single instance of incorrect billing" to a private insurer did not,

9    and could not, "materially add" to the public information she relied on and was properly dismissed

10   pursuant to the public disclosure bar. *Id.*[2]

11   **B.    Procedural History**

12   On April 4, 2018, Relator filed the instant *qui tam* action. Compl., ECF No. 1. On

13   October 19, 2018, Relator filed her FAC. ECF No. 13. On June 11, 2019, the United States

14   declined to intervene and on June 19, 2019, the State of California followed suit. ECF Nos. 23,

15   29. On December 4, 2019, Relator voluntarily dismissed her claims under the California

16   Insurance Fraud Prevention Act. ECF No. 39.

17   On June 15, 2020, Sutter Health ("Sutter"), Sutter Bay Medical Foundation and Palo Alto

18   Medical Foundation (together the "Sutter Defendants") and Dr. Hong and PAFMG (collectively

19   the "Doctor Defendants") moved to dismiss Relator's FAC. ECF Nos. 72, 73. On November 6,

20   2020, the Court granted the Sutter Defendants' and the Doctor Defendants' motions to dismiss

21   under the public disclosure bar, concluding that the material elements of the allegedly fraudulent

22   transactions are disclosed in FOIA reports and that Relator could not proceed as an "original

23   source" because she lacks "knowledge that is independent of and materially adds to the publicly

24   disclosed allegations or transactions." *Id.* at 10, 19. The Court granted Relator leave to amend but

25   warned that "failure to cure the deficiencies identified in this order and in the motions to dismiss

26

27   [2] Although Relator filed an appeal in her *Stanford Healthcare* matter, she failed to file any
     opening brief in that matter as of her February 26, 2021 filing deadline. The latest docket entry in

28   the matter is her February 16, 2021 reply in support of her motion for a further extension of time
     to file her opening brief.

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

1    will result in dismissal of the deficient claims with prejudice." *Id.* at 19.

2        **C.**    **<u>Relator's Allegations</u>**

3        Relator's factual allegations in her SAC largely focus on her own experience undergoing a

4    breast reconstruction covered by her private insurance. SAC ¶¶ 2-6 (repeated at ¶¶ 42-47). She

5    alleges that her December 12, 2012 single stage reconstruction procedure was billed with an

6    erroneous diagnostic code (SAC ¶¶ 5-6 (repeated at ¶¶ 45-47)) and that Defendants failed to

7    correct this error (SAC ¶ 13 (repeated at ¶ 53)). Relator alleges that this diagnostic code inflated

8    the "price[] charged to her insurance" (SAC ¶ 5 (repeated at ¶ 45)), but she does not allege that

9    any similar error would alter the amount Medicare or Medi-Cal would pay for such a procedure.

10       Relator asserts that Defendants improperly billed specific combinations of CPT Codes

11   related to breast reconstruction surgeries following mastectomies. SAC ¶¶ 11-12 (repeated at

12   ¶¶ 51-52). She alleges that "in examining her own bills," she "discovered that the Sutter surgeons

13   knowingly billed insurance carrier's higher 'first-time' reconstruction codes" and that Defendant's

14   billed a "*second* 'first-time' major surgery code as a single-stage reconstruction by billing CPT

15   19340" in cases involving two-stage mastectomy reconstructions. SAC ¶¶ 10-11 (repeated at

16   ¶¶ 50-51). But elsewhere she states that she underwent a single stage reconstruction rather than a

17   two-stage reconstruction (SAC ¶ 3 (repeated at ¶ 43)), and Relator does not explain how her bill

18   could have revealed the purported misuse of CPT Code 19340. Moreover, in asserting that CPT

19   Code 19340 can only be used for single stage procedures, Relator fails to address this Court's

20   conclusion that the plain text of CPT Code 19340 contemplates its use in other procedures (Order

21   at 18, ECF No. 90).

22       Relator also alleges information she purportedly learned in conversations with Dr. Hong

23   and Dr. Frederick Dirbas (a non-party) and in the course of litigating her unsuccessful malpractice

24   suit. She alleges that Dr. Hong "admitted that he performed these same breast reconstructive

25   procedures frequently on all his clients, specifically including those covered by Medicare and

26   Medi-Cal." SAC ¶ 6 (repeated at ¶ 46). This allegation appears to reference single stage breast

27   reconstruction procedures because it immediately follows discussion of her own single stage

28   procedure. Later, Relator alleges that Dr. Dirbas testified at his deposition "that he had *never* seen

1  Dr. Hong perform a single stage (CPT 19340) reconstruction after mastectomy" and that he "only

2  knew of a single surgeon in San Francisco that had ever done the single stage" procedure as of

3  December 12, 2012.  SAC ¶ 14.  She also alleges that "Dr. Hong admitted that he, and other very

4  'busy' surgeons were heavily incentivized to maximize coding for facility fees, as well as

5  upcharges for the durable surgical supplies, such as breast implants and [tissue expanders] used,

6  which are billed at thousands of dollars per breast."  SAC ¶ 14 (repeated at ¶ 54).  The SAC makes

7  no further allegations adding specificity to this broad statement.  The SAC otherwise contains

8  broad and conclusory allegations of "upcoding" and "unbundling."

9  Lastly, the SAC includes an opaque reference to the FOIA requests that fully disclose the

10  transactions alleged (*e.g.*, these Federal reports disclose the use of CPT Code 19340 in the course

11  of a two-stage procedure first billed with CPT Code 19357 as well as the use of CPT Codes 19370

12  and other reconstruction codes that Relator (mistakenly) believes are not separately payable on the

13  same date of service): She alleges that she "examined [Dr. Hong's] billing records and discovered

14  that Defendant Hong billed Medicare over $1.7 million dollars from 2010 to 2016, of which over

15  $488,000 was for breast surgery."  These billing records are the CMS reports prepared in response

16  to Relator's FOIA requests.  *See* FAC ¶¶ 94-95, Exs. A-B, ECF Nos. 13, 14, 14-1, 14-2.

17  ### III.    PLEADING STANDARDS UNDER THE FCA AND CFCA

18  To survive a motion to dismiss, a complaint must "contain sufficient factual matter,

19  accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

20  U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); Rule 8(a);

21  *United States ex rel. Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115-16 (9th Cir.

22  2014) (dismissing FCA action under Rule 8(a)); *Cafasso v. General Dynamics C4 Systems, Inc.*,

23  637 F.3d 1047, 1055 (9th Cir. 2011) (footnotes omitted) (explicitly recognizing that FCA claims

24  must meet Rule 8(a) plausibility and state "enough fact[s] to raise a reasonable expectation that

25  discovery will reveal evidence of [the misconduct alleged]."  When deciding a Rule 12(b)(6)

26  motion, the Court must accept the facts pleaded in the complaint as true.  However, pleadings that

27  "are no more than conclusions . . . are not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at

28  679.

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

7038110.6

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL. (415) 875-8500 • FAX (415) 986-2157

1    The heightened pleading standard of Rule 9(b) applies to FCA and CFCA actions.  "Rule

2    9(b) serves to give defendants adequate notice to allow them to defend against the charge and to

3    deter the filing of complaints as a pretext for the discovery of unknown wrongs. . . ."  *In re Stac*

4    *Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996) (internal quotation marks omitted).  To

5    satisfy Rule 9(b), a relator must "state with particularity the circumstances constituting fraud or

6    mistake, including the who, what, when, where, and how of the misconduct charged."  *Ebeid ex*

7    *rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (internal quotation marks

8    omitted); *see also United States ex rel. Modglin v. DJO Glob. Inc.*, 114 F. Supp. 3d 993, 1011

9    (C.D. Cal. 2015) ("[A] plaintiff must specify the content of the fraudulent representation, the

10   person who made it, when and where the representation was made, and the manner in which it was

11   untrue and misleading, or the circumstances indicating that it was false."), *aff'd sub nom United*

12   *States v. DJO Glob., Inc.*, 678 F. App'x 594 (9th Cir. 2017).

13   Failure to cure a complaint of deficiencies after having the opportunity to amend will result

14   in dismissal with prejudice.  *Stanford Healthcare*, 2020 WL 5033219, at *2 (C.D. Cal. July 13,

15   2020) (dismissing Relator's second amended for failure to adequately allege she qualified as an

16   "original source").  Here, the Court previously put Relator on notice that failure to remedy her

17   deficiencies would result in a dismissal with prejudice.  Order at 19, ECF No. 20.

18   ## IV.   ARGUMENT

19   Despite this Court's warning that "failure to cure the deficiencies identified in this order

20   and in the motions to dismiss [would] result in dismissal of the deficient claims with prejudice"

21   (Order at 19, ECF No. 90), Relator still fails to state a cognizable FCA or CFCA claim.  Because

22   she is not an original source, Relator attempts to side-step the public disclosure bar by simply

23   *ignoring* the CMS reports disclosing the alleged false claims and offering mere conclusory

24   allegations concerning the public disclosure bar.  SAC ¶¶ 15-16.[3]  This approach cannot save her

25   SAC from dismissal because, as this Court previously concluded, the FOIA reports disclose all the

26

27   [3] There are two paragraphs numbered 15 in Relator's SAC.  This reference is to the version
of paragraph 15 appearing on lines 22 through 25 of page 7 of the SAC.

28

7038110.6

**HOOPER, LUNDY & BOOKMAN, P.C.**
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL. (415) 875-8500 • FAX (415) 986-2157

1  material elements of the allegedly fraudulent transactions (Order at 10, ECF No. 90),[4] and

2  ignoring those reports certainly cannot alter this conclusion or transform Relator into an original

3  source. The public disclosure bar prohibits parasitic and opportunistic relators from seeking to

4  profit off the government's own data and reports, which is exactly what Relator has done here.

5  　　　Moreover, her SAC fails to cure the other deficiencies identified in Defendants' previous

6  motions to dismiss (ECF Nos. 72-73), and in fact compounds those deficiencies by offering even

7  more vague and amorphous allegations that fail to provide the requisite level of plausibility under

8  Rule 8(a) or particularity under Rule 9(b).

9  　　　Relator has not and cannot state a cognizable claim under the FCA or CFCA, despite

10  having already had the opportunity to amend her complaint following this Court's clear warning.

11  Any further amendment would be futile and would unnecessarily burden Defendants with further

12  litigation costs after years of defending against Relator's baseless lawsuits. The SAC should

13  therefore be dismissed with prejudice.

14  　　**A.　　Relator's Claims are Disclosed in a Federal Report and are Barred Under the
　　　　　Public Disclosure Bar.**

15

16  　　　The public disclosure bar provides that "[t]he court shall dismiss" a *qui tam* action "if

17  substantially the same allegations or transactions as alleged in the action or claim were publicly

18  disclosed" in a federal "report" or other specified sources. 31 U.S.C. § 3730(e)(4)(A). Where the

19  public disclosure bar applies, the court must dismiss the action unless the relator is an original

20  source. 31 U.S.C. § 3730(e)(4)(B).

21  　　　This Court has already concluded that the material elements of the allegedly fraudulent

22  transactions are disclosed in CMS's response to Relator's FOIA requests. Order at 10, ECF No.

23  90. Relator's SAC does not disclose any material transactions that were not disclosed in those

24  CMS reports and thus presents no basis for altering the Court's earlier conclusion. Nor does

25  Relator allege new facts indicating that she is an original source. Instead, the SAC largely ignores

26  　　　[4] Relator's SAC also continues to rely on her (mis)understanding that CPT Code 19340
27  can only be used when an implant is inserted immediately after the mastectomy in a single-stage
procedure (*e.g.*, SAC ¶¶ 11, 14, 51), ignoring this Court's prior conclusion that non-mastectomy
28  reconstructions can be billed to CPT Code 19340 based on the plain text definition of the CPT
Code (Order at 18, ECF No. 90).

1 the public disclosure bar in the apparent hope that she can evade dismissal by failing to repeat

2 allegations concerning her FOIA requests and by failing to include data taken from those CMS

3 reports (*compare* SAC *with* FAC Exs. A & B).  In doing so, she offers vague and threadbare

4 allegations, thereby confirming that she has only scant and immaterial independent knowledge and

5 cannot proceed as an original source.

6      The fact remains that Relator's allegations are entirely disclosed in FOIA reports and that

7 she has no independent knowledge that material adds to the publicly disclosed transaction.  Her

8 SAC should therefore be dismissed with prejudice.  *See Stanford Healthcare Billing Dep't*, 2020

9 U.S. Dist. LEXIS 40906 (C.D. Cal. Feb. 4, 2020) (dismissing Relator's other FOIA-based FCA

10 action with prejudice under the public disclosure bar), *appeal docketed*, No. 20-55874 (9th Cir.

11 Aug. 25, 2020); Order at 19, ECF No. 90.

12      1.    <u>Any Alleged False Claims are Wholly Disclosed in FOIA Reports.</u>

13      As this Court previously concluded, FOIA reports from CMS qualify as a "report"

14 pursuant to the public disclosure bar.  Order at 9, ECF No. 90.  Despite this clear statutory

15 requirement, the SAC ignores the public disclosure bar entirely.

16      As this Court previously concluded, all "the material elements of the allegedly fraudulent

17 'transaction' are disclosed in" CMS's responses to Relator's FOIA requests and Relator

18 "uncovered" the alleged fraud "simply by analyzing data" already in the "possession of the United

19 States at the time [her] suit was brought."  Order at 10 (quoting *Schindler Elevator Corp. v. United*

20 *States ex rel. Kirk*, 563 U.S. 401, 412 (2011)), ECF No. 90.  "[A] federal agency's written

21 response to a request for records under the Freedom of Information Act, 5 U.S.C. § 552,

22 constitutes a 'report' within the meaning of the public disclosure bar."  *Schindler Elevator*, 563

23 U.S.  404; *Stanford Healthcare Billing Dep't*, 2020 U.S. Dist. LEXIS 40906, *2 (C.D. Cal. Feb. 4,

24 2020); Order at 9.  *Qui tam* actions based on FOIA requests are "a classic example of the

25 'opportunistic' litigation that the public disclosure bar is designed to discourage." *Schindler*

26 *Elevator*, 563 U.S. at 413; Order at 9.  Thus, this Court properly concluded that "Relator's suit is a

27 paradigmatic example of a suit foreclosed by the public disclosure bar" and afforded her the

28 opportunity to amend her complaint.  Order at 11.

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

14

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL. (415) 875-8500 • FAX (415) 986-2157

1    Nothing in the SAC disrupts this analysis. Relator's theory of FCA liability is still

2    premised on her (mistaken) allegation that CPT Code 19340 cannot be used for anything other

3    than a "'one-and-done,' single stage reconstruction performed at the same time as the

4    mastectomy," and that other breast reconstruction codes were misused. SAC ¶ 10-12 (repeated at

5    ¶¶ 50-52). As this Court previously observed, Defendants' use of CPT Code 19340 and other

6    breast reconstruction codes are disclosed in the CMS reports such that the "material elements of

7    the allegedly fraudulent 'transaction' are disclosed in" these reports. Order at 10.

8    Relator attempts to evade the public disclosure bar by removing direct references to the

9    FOIA reports from the SAC. But, Relator's failure to include allegations concerning her reliance

10   on FOIA reports does not negate the existence of these CMS reports or call into question this

11   Court's prior determination that the transactions alleged were disclosed in these CMS reports. As

12   explained below, because Relator is not an "original source" under 31 U.S.C. § 3730(e)(4)(B), her

13   claims must be dismissed with prejudice.

14              2.    <u>Relator is Not an Original Source.</u>

15   Relator's new allegations in her SAC fail to save her from dismissal under the public

16   disclosure bar. These allegations largely expand on her personal experience with her private

17   insurance claim and do not qualify her as an "original source" that is exempt from the public

18   disclosure bar under 31 U.S.C. § 3730(e)(4)(A). An original source is an individual who either:

19       (1) prior to a public disclosure under subsection (e)(4)(A), has voluntarily disclosed
         to the Government the information on which allegations or transactions in a claim
20       are based, or (2) who has knowledge that is independent of and materially adds to
         the publicly disclosed allegations or transactions, and who has voluntarily provided
21       the information to the Government before filing an action under this section.

22   *Id.* § 3730(e)(4)(B). Relator did not voluntarily disclose to the Government the information on

23   which her claims are based prior to receiving the FOIA reports, as would be required under the

24   first prong of 31 U.S.C. § 3730(e)(4)(B).[5] And Relator also fails to qualify as an original source

25

26       [5] Relator makes a passing attempt in her SAC to allege that she "voluntarily disclosed to
     the United States the specific information admitted to her by Doctors Hong and Dirbas and other
27   information she thereafter collected and upon which allegations or transactions at issue in this
     complaint are based prior to any purported disclosure under 31 U.S.C. § 3730(e)(4)(A)." SAC
28   ¶ 16. In the next paragraph, however, she makes clear that this disclosure was in connection with

7038110.6

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

1  under the second prong of 31 U.S.C. § 3730(e)(4)(B) because any "knowledge that is independent

2  of" the publicly disclosed transactions fails to "materially add[]" to those transactions.  Order at

3  18, ECF No. 90.  Rather, Relator is the paradigmatic parasitic relator whose claims must be

4  dismissed under the public disclosure bar.

5       Courts of appeals have set "rigorous thresholds" for satisfying the materiality

6  requirements.  Order at 16.  In the Ninth Circuit, "[a]llegations do not materially add to public

7  disclosures when they provide only background information and details relating to the alleged

8  fraud—they must add value to what the government already knew."  *Id.* (citing *United States ex*

9  *rel. Hastings v. Wells Fargo Bank, NA, Inc.*, 656 F. App'x 328, 331 (9th Cir. 2016)).

10      Relator's SAC fails to plead any facts showing she possesses independent knowledge that

11  meets the rigorous threshold for materiality.  Rather, the SAC merely recites the statutory

12  requirements without providing any supporting factual allegations or details.  SAC ¶¶ 16, 57, 71.

13  These mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a

14  motion to dismiss."  *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).  Liberally construed,

15  Relator's SAC alleges independent knowledge concerning (1) her personal experience with a

16  commercial insurance claim (including the diagnostic coding contained therein) and (2) deposition

17  testimony and discovery responses concerning the types of breast reconstruction procedures

18  performed by Dr. Hong.  Neither category of information materially adds to the publicly disclosed

19  FOIA reports.

20       a.   *Relator's Personal Experience with her Private Insurance Claim*
            *Does not Materially Add to the Publicly Disclosed Transactions.*

21       With respect to Relator's new allegations concerning the reporting of diagnostic codes on

22

23

---

24  service of her original Complaint in this action, which was filed on April 4, 2018.  *Id.* at ¶ 17.
    Relator does not allege that she made any disclosure to the Government before receiving CMS's

25  response to her November 2016 FOIA request.  (Nor could she in light of her earlier allegation
    that she "first observed certain billing irregularities" in or about "November 2016," FAC ¶ 42.)

26  In fact, Relator wholly fails to allege any facts supporting her conclusion that she made the
    requisite disclosure to qualify as an original source under the first prong of 31 U.S.C.

27  § 3730(e)(4)(B) (*i.e.*, the date and substance of any such disclosure).  As such, her conclusory
    allegations under this prong "are not entitled to the assumption of truth," *Ashcroft v. Iqbal*, 556

28  U.S. 662, 679 (2009), and warrant no further discussion.

7038110.6

her commercial insurance claim, any alleged miscoding of Relator's diagnosis cannot be the basis

of an FCA action. Relator alleges that Dr. Hong "admitted to her that he, PAMF and Sutter had

falsely represented to her insurance carrier that she had been diagnosed with breast cancer." SAC

¶ 6 (repeated at ¶ 46); *see also* SAC ¶¶ 1, 13, 53 (same). Although Relator appears to contend that

the use of a "fraudulent code" misrepresenting her diagnosis impacted the amount charged to or

paid by her commercial insurer (SAC ¶ 5 (repeated at ¶ 45); *see also* SAC ¶ 7 (repeated at ¶ 47)

(alleging the use of a "code for a non-diagnosed medical procedure")), she does not allege that any

such error with respect to diagnostic codes would impact coverage or payment by Medicare or

Medi-Cal. Rather, she only alleges that the misuse of *procedure codes* (particularly the use of

CPT Code 19340 for procedures other than single-stage breast reconstruction surgeries) impacted

the allowed or paid amounts under Medicare. SAC ¶¶ 11-12 (repeated at ¶¶ 51-52). Because she

admits that she underwent a single-stage breast reconstruction on December 12, 2012, her personal

experience cannot provide any independent knowledge of any Defendant's alleged use of CPT

Code 19340 for procedures *other than* single-stage breast reconstruction surgeries.[6]

Relator should be well aware by now of the limited value that her own personal experience

with a private insurance claim has in the context of an FCA claim. As the *Stanford Healthcare*

Court observed in Relator's other FCA action:

> [E]ven if her personal experience with private insurance claims could count as
> independent information under the FCA, Relator still has not addressed the
> problem previously noted by the Court—that her personal experience does not
> appear to 'materially add' to the public information. Relator has a single
> experience with incorrect billing that did not even involve a government claim.
> Relator's failure to address . . . exactly how this single claim could materially add
> to the huge amount of public information Relator has relied on confirms the Court's
> prior conclusion that "little can be inferred from a single instance of incorrect
> billing."

2020 WL 5033219, *1 (C.D. Cal. July 13, 2020). This analysis applies with even greater force in

the case at bar because the "single instance of incorrect billing" alleged by Relator involves a

diagnostic code rather than the procedural codes (CPT Codes) that she alleges were improperly

---

[6] Relator also makes a vague allegation that she "discovered that the reconstruction
procedures performed by [Dr.] Hong on Relator were neither safe nor necessary." SAC ¶ 5
(repeated at ¶ 45). Relator's malpractice claims have already been dismissed in State court, and
her allegations of safety and efficacy are wholly irrelevant to this FCA action.

1  used in Medicare and Medi-Cal claims.

2          *b.      Relator's Allegations of Deposition Testimony and "Admissions"
                    are No Different from Allegations Previously Considered by this
3                   Court and Fail to Establish that she is an Original Source.*

4          In her SAC, Relator also continues to assert that Dr. Hong's deposition testimony, Dr.

5  Dirbas' deposition testimony, and alleged admissions by Dr. Hong materially add to her

6  allegations and that she "independently discovered" that Dr. Hong incorrectly billed using CPT

7  Code 19340.  SAC ¶ 14 (Dr. Hong's deposition); SAC ¶¶ 9, 14 (repeated at ¶ 49) (Dr. Dirbas'

8  deposition); SAC ¶¶ 6, 9, 13, 14 (repeated at ¶¶ 46, 49, 53, 54) (Dr. Hong's alleged "admissions").

9  Although some of these allegations are vaguely stated and difficult to discern, it appears that they

10  largely concern Dr. Hong's use of CPT Code 19340 for procedures other than single-stage breast

11  reconstruction surgeries, an allegation that "wrongly presumes that 'CPT 19340' refers only to

12  *mastectomy* reconstructions" (Order at 18, ECF No. 90).  As this Court previously observed, the

13  definition of CPT Code 19340 makes plain that it can be "used in three operations: '*mastopexy*,

14  mastectomy or *in reconstruction.*'"  *Id.* (quoting FAC ¶¶ 87,89 (emphasis added)).  Relator's

15  allegations that she had independent knowledge that Dr. Hong used CPT Code 19340 for

16  procedures that were not single-stage breast reconstruction procedures continues to be insufficient

17  to transform her into an original source rather than a parasitic, opportunistic Relator.

18          Relator alleges in paragraph 14 of her SAC that Dr. Hong and Dr. Dirbas both testified in

19  depositions that Dr. Hong had limited experience performing "single-stage" reconstruction

20  procedures.  These allegations closely mirror the allegations in paragraph 96 and 118 of her FAC,

21  and continue to be immaterial.  *See* Order at 18-19 (analyzing similar allegations in the FAC),

22  ECF No. 90.  Relator also alleges that "Dr. Hong billed for surgeries which his colleagues

23  including co-surgeon Dr. Dirbas testified under oath, and Dr. Hong admitted, he had never

24  performed."  SAC ¶ 9 (repeated at ¶ 49).  To the extent that anything can be discerned from this

25  vague and uncertain allegation, it appears that Relator is again alleging Dr. Hong billed using CPT

26  Code 19340 for procedures other than single-stage reconstruction surgeries, which again fails to

27  materially add to the publicly disclosed transactions.  (To the extent that Relator intended to allege

28  something different with this statement, her uncertain allegation certainly fails to satisfy the

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL. (415) 875-8500 • FAX (415) 986-2157

1   requirements of Rules 8 and 9(b).)

2       Relator's other allegations concerning deposition testimony and admissions is so vague as

3   to be indecipherable.  In the course of discussing the "single stage breast reconstruction" that Dr.

4   Hong allegedly performed on her (SAC ¶ 5 (repeated at ¶ 45)), Relator alleges that Dr. Hong

5   "admitted that he performed these same breast reconstructive procedures frequently on all his

6   clients, specifically including those covered by Medicare and Medi-cal."  SAC ¶ 6 (repeated at

7   ¶ 46).  It appears that "these same breast reconstructive procedures" refers to single stage breast

8   reconstruction procedures (SAC ¶ 3 (repeated at ¶ 43)), but elsewhere Relator alleges that Dr.

9   Hong performed only a small number of these procedures (*e.g.*, SAC ¶ 14).  Relator next alleges

10  that Dr. Dirbas "admitted while speaking to Relator that it was common knowledge that doctors

11  [*sic*] Hong and others . . . frequently did the same unnecessary procedures."  SAC ¶ 7 (repeated at

12  ¶ 47).  Again, this allegation is ambiguous but appears to suggest that unnecessary single-stage

13  breast reconstruction procedures were performed.  This is contradicted by her allegations that Dr.

14  Hong performed only a couple single-stage reconstruction procedures (*e.g.*, SAC ¶ 14), and her

15  suggestion of medical necessity issues are not borne out with supporting factual allegations.

16  Moreover, this allegation of "unnecessary" procedures makes no reference to any Medicare or

17  Medi-Cal claims.

18      Finally, Relator alleges that "Dr. Hong admitted that he, and other very 'busy' surgeons

19  were heavily incentivized to maximize coding for facility fees as well as upcharges for the durable

20  surgical supplies, such as breast implants and [tissue expanders] used, which are billed at

21  thousands of dollars per breast."  SAC ¶ 47.  Like much of this SAC, this allegation fails to state

22  anything with particularity.  It makes no reference to Medicare or Medi-Cal claims and does not

23  allege the submission of any false claims.  To the extent that Relator is again using the term

24  "upcharges" to refer to the use of CPT Code 19340 for procedures other than single-stage

25  reconstruction procedures, "this allegation wrongly presumes that 'CPT 19340' refers only to

26  *mastectomy* reconstructions" (Order at 18, ECF No. 90).

27      In short, Relator's vague and indefinite allegations in her SAC confirms this Court's earlier

28  conclusion that Relator has no independent information that materially adds to the transactions

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL. (415) 875-8500 • FAX (415) 986-2157

disclosed in FOIA reports  Order at 15-19, ECF No. 90.  Relator is a parasitic relator seeking to profit off of "information in the possession of the United States at the time [her] suit was brought," *Schindler Elevator*, 563 U.S. at 412 (quoting *Graham Cty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280, 294 (2010)).  Because Relator is not an original source, her SAC should be dismissed with prejudice.

### B.    Relator Fails to Plead Any FCA or CFCA Violation with the Plausibility and Particularity Required Under Rule 8(a) or Rule 9(b)

In order to establish liability under the FCA or CFCA, there must be: "(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due."  *United States ex rel. Campie v. Gilead Scis., Inc.*, 862 F.3d 890, 902 (9th Cir. 2017) (quoting *United States ex rel. Hendow v. Univ. of Phx.*, 461 F.3d 1166, 1174 (9th Cir. 2006)).[7]  Defendants' motions to dismiss Relator's FAC (ECF Nos. 72 & 73) identified substantive deficiencies with her FCA and CFCA claims, in addition to arguing for dismissal under the public disclosure bar, and this Court warned Relator that "failure to cure the deficiencies identified . . . in the motions to dismiss will result in dismissal with prejudice."  Order at 19, ECF No. 90.  Relator's SAC, however, persists in failing to allege the elements of the FCA and CFCA, and in fact compounds those deficiencies by stripping out any reference to specific claims and retreating to vague allegations of fraud that fail to meet the particularity requirements under Rule 9(b).

Therefore, her claims, already barred pursuant to the public disclosure bar, are meritless, and her SAC should be dismissed with prejudice.

---

[7] Because the CFCA is "patterned on" the Federal FCA, California courts generally "look to precedent construing the equivalent federal act."  *State of California v. Altus Fin.*, 116 P.3d 1175, 1184 (Cal. 2005); *see also Bailey v. Gatan, Inc.*, 783 F. App'x 692, 694 (9th Cir. 2019) (same).  The CFCA is narrower than the FCA in some respects—for example, the CFCA only reaches false claims that involve funds of the State or of a political subdivision thereof and thus does not reach false Medicare claims, *compare* Cal. Gov't Code §12650(b)(1) *with* 31 U.S.C. § 3729(b)(1).  But, for purposes of this Motion to Dismiss, the elements of an FCA and CFCA violation are the same and arguments that Relator failed to state a claim under the FCA apply with equal force to her second cause of action under the CFCA.

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

1.      Relator's Vague Allegations Fail to Plead Fraud with the Particularity
Required under Rule 9(b).

In an attempt to plead around the public disclosure bar by largely ignoring the FOIA

reports, Relator fails to allege any FCA or CFCA violation with particularity.  Under Rule 9(b), a

plaintiff "must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).

A plaintiff must allege "the who, what, when, where, and how of the misconduct

charged" including what is false or misleading about a statement, and why it is false.  *Ebeid ex rel.*

*United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (quoting *Vess v. Ciba–Geigy Corp.*

*USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).

Consistent with these requirements, "mere conclusory allegations of fraud are insufficient"

and "[b]road allegations that include no particularized supporting detail do not suffice.  *United*

*States v. United Healthcare Insurance Company*, 848 F.3d 1161, 1180 (9th Cir. 2016)

(citing  *Wool v. Tandem Computers Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987), *overruled on other*

*grounds by Flood v. Miller*, 35 F. App'x 701 (9th Cir. 2002); *Bly-Magee v. California*, 236 F.3d

1014, 1018 (9th Cir. 2001)).  While a relator "need not identify representative examples of false

claims to support every allegation," they must "allege particular details of a scheme to submit false

claims paired with reliable indicia that lead to strong inference that claims were actually

submitted."  *Ebeid*, 616 F.3d at 999 (9th Cir. 2010) (quoting *United States ex rel. Grubbs v.*

*Ravikumar Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009)).

Previously, Relator's FAC included particular Medicare claims in an attempt to allege

Medicare fraud actionable under the FCA (but not Medi-Cal fraud actionable under the CFCA).

Her SAC, however, does not include a single Medicare or Medi-Cal claim, and does not state any

scheme to submit false Medicare or Medi-Cal claims.

Instead, she largely relies on repeated, vague references to "upcoding" and "unbundling"

that are simply not supported by actual, particularized allegations.  The closest Relator's SAC

comes to describing her upcoding and unbundling allegations is in paragraphs 11 and 12 (and then

repeated in paragraphs 51 and 52).  There, Relator alleges what she (mistakenly) believes is the

7038110.6

improper use of particular CPT Codes on claims to unknown payers[8] by unknown individuals at unstated times and through unstated means. SAC ¶¶ 11-12 (repeated at ¶¶ 51-52). Disregarding this Court's warning that "Rule 9(b) does not allow a complaint to merely lump multiple defendants together" (Order at 6 (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007)), ECF No. 90), Relator refers only to the Defendants collectively in these paragraphs (either as "Defendants" or as "Sutter," which she defines as all Defendants). In addition, these paragraphs repeat Relator's (mistaken) understanding of coding rules that this Court properly rejected based on the plain text of the CPT Code definitions (Order at 18-19). In short, she does not allege "the who, what, when, where, and how of the misconduct charged," *Ebeid*, 616 F.3d at 998. Without "particular details of a scheme to submit false claims paired with reliable indicia that lead to strong inference that claims were actually submitted," *id.* at 999, Relator's SAC must be dismissed.

Where Relator's SAC explicitly references Medicare and Medi-Cal, her allegations fail to advance any theory of fraud. These allegations fall within four categories: (1) general background concerning Medicare and Medi-Cal participation and billing, (2) broad allegations that breast reconstruction procedures were performed on Medicare and Medi-Cal beneficiaries, (3) confusing allegations concerning the coding of Medicare and Medi-Cal beneficiaries' diagnoses, and (4) conclusory assertions of fraud, unjust enrichment, and overpayments. None of these categories satisfies the requirements of Rule 9(b).

***Medicare and Medi-Cal Background.*** With regard to the first category, in paragraphs 29 through 37, she lays out general allegations concerning background on program participation and billing. She also generally alleges the amount of Dr. Hong's Medicare billings contained in FOIA reports and that any Medicare or Medi-Cal claims submitted by Defendants meet the FCA's definition of "claims" under 31 U.S.C. § 3729(b)(2). SAC ¶¶ 49, 60. These background allegations do not allege a scheme to submit fraudulent claims.

---

[8] The only reference to Medicare in these paragraphs is a footnote indicating that the dollar amounts reported in paragraphs 11 and 51 are taken from the national Medicare Physician Fee Schedule published by CMS. SAC ¶ 11 n.2 (repeated at ¶ 51 n.5).

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

7038110.6

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL. (415) 875-8500 • FAX (415) 986-2157

1   ***Performance of Reconstruction Procedures on Beneficiaries.***  The second category of

2   allegations generally concern breast reconstruction procedures being performed on Medicare

3   beneficiaries.  She alleges that FOIA reports show Dr. Hong billed Medicare $488,000 for breast

4   surgeries between 2010 and 2016, SAC ¶ 49, which is no more than an allegation that he

5   performed Medicare-covered reconstruction surgeries during this timeframe.  In paragraphs 6 and

6   46, she alleges that Dr. Hong "admitted that he performed these same breast reconstructive

7   procedures frequently on all his clients, specifically including those covered by Medicare and

8   Medi-cal [*sic*]."  This allegation is virtually indecipherable.  It appears that "these same . . .

9   procedures" refers back to the single stage procedure that Relator underwent on December 12,

10  2012 (SAC ¶ 3 (repeated at ¶ 43), but the gravamen of Relator's claims appears to be the opposite

11  (that Dr. Hong did not perform single stage procedures) and Relator does not allege the

12  submission of any false claims to Medicare or Medi-Cal for single stage procedures.

13  ***Medicare and Medi-Cal Beneficiary Diagnoses.***  Her third category of Medicare and

14  Medi-Cal allegations concern diagnostic coding issues and are similarly confusing.  In paragraphs

15  7 and 47, she alleges that Dr. Dirbas (a non-party) admitted that Dr. Hong and others "frequently

16  did the same unnecessary procedures" that were "'upcoded' for billing purposes, that is the billers

17  used a specific billing code for a non-diagnosed medical procedure which resulted in a higher and

18  false bill being presented to the insurer, including Medicare and Medi-Cal."  Putting aside the fact

19  that Medicare and Medi-Cal are not insurers, this allegation is simply unintelligible.  No "billers"

20  are identified.  The "procedures" discussed appear to be single stage reconstruction procedures

21  like the one that she underwent on December 12, 2012, SAC ¶ 3 (repeated at ¶ 43), but this again

22  conflicts with her assertions that Dr. Hong rarely performed these procedures, *e.g.*, SAC ¶ 14.

23  Lastly, the phrase "non-diagnosed medical procedure" is not defined or explained, and it is

24  inherently nonsensical as procedures are performed, not diagnosed.  Elsewhere, Relator alleges

25  that an erroneous diagnosis code was included on her commercial insurance claim for her single

26  stage reconstruction procedure, but she never alleges that her reconstruction procedure was

27  medically unnecessary based on her actual diagnosis.  In addition, the suggestion that a patient's

28  diagnosis would result in presenting a "higher" bill to Medicare or Medi-Cal is simply not borne

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

1  out.  Relator alleges that "an ICD-9 code reflecting the patient's diagnosis" is included in a

2  Medicare claim, in addition to the code for the procedure performed (CPT Code).  SAC ¶ 32.  But

3  she otherwise indicates that Medicare payments are based on the CPT Code rather than any

4  diagnostic code.  *E.g.*, SAC ¶ 51 n.5 (referring to the "amount allowed by Medicare *for each CPT*

5  *Code*") (emphasis added).  And Relator has previously alleged the definitions of various CPT

6  Code definitions, none of which include diagnostic information.  *See* FAC ¶¶ 87, 89 (alleging CPT

7  Code definitions).

8      Thus, even if Relator's allegations in this paragraph could be deciphered (it cannot be) and

9  was supported by more specific allegations of a scheme to submit false diagnostic codes in

10  Medicare and Medi-Cal claims (it is not), Relator fails to satisfy FCA's "demanding" materiality

11  standard.  *See Universal Health Services, Inc. v. Escobar,* 136 S. Ct. 1989, 2003 (2016)

12  (describing the FCA's demanding materiality standard).  Nowhere does Relator allege how any

13  diagnostic code would have "a natural tendency to influence, or be capable of influencing, the

14  payment or receipt of money or property," as is required under 31 U.S.C. § 3729(b)(4).  Her mere

15  reference to a "higher and false bill" is insufficient to allege material false claims with

16  particularity

17      ***Conclusory Assertions of Medicare and Medi-Cal Fraud.***  Relator's fourth category of

18  Medicare and Medi-Cal allegations sets forth nothing more than conclusory allegations of

19  Medicare and Medi-Cal overpayments.  She alleges as follows:

20  •  Based on her experience and the "costs allowed by medical insurers, including

21      Medicare and  Medi-Cal, on information and belief, Defendants thus gained unjust

22      enrichment of approximately 30-50% per procedure."  SAC ¶ 7(repeated at ¶ 47).

23  •  "Defendants executed various 'upcoding' and 'unbundling' schemes in order to

24      subvert these lower [Medicare and Medi-Cal] rates."  SAC ¶ 8 (repeated at ¶ 48).

25  •  "Defendants' misconduct has resulted in many tens of millions of dollars of

26      overpayments from Medicare and the State."  SAC ¶ 9 (repeated at ¶ 49).

27  •  "As a . . . result of Sutter's fraudulent course of conduct set forth herein,

28      Defendants knowingly submitted, and caused to be submitted, thousands of false or

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL. (415) 875-8500 • FAX (415) 986-2157

fraudulent statements, records, and claims for payment to Medicare and Medicaid

for upcoded and unbundled mastectomy and breast reconstruction surgeries and

procedures, and related charges." SAC ¶ 15 (repeated at ¶ 55).

These allegations, at most, offer Relator's mere conclusion that Defendants' behavior resulted in the payment of false claims or the receipt of overpayments, but without any particularized allegations of a fraudulent scheme, these are no more than naked accusations of fraud.

Relator's SAC suffers the same deficiencies as in *Ebeid*. By removing all references to the FOIA reports in an attempt to get around the public disclosure bar, the SAC is now devoid of any specificity as required by Rule 9(b). In fact, by ignoring the public disclosure bar, Relator highlights the fact that all her allegations are based on FOIA reports and misunderstandings of the various CPT Codes she relies upon. The SAC does not provide any particular details of a scheme to submit false claims or any inference that false claims were submitted. Relator's "general allegations — lacking any details or facts setting out the 'who, what, when, where, and how'" of such a scheme, *Ebeid*, 616 F.3d at 1000, do not satisfy the particularized pleading requirement of Rule 9(b).

Relator, with no independent knowledge of false Medicare or Medi-Cal claims, can only make broad and vague allegations concerning purported false claims. Her SAC thus fails to pass muster under Rule 9(b), and Relator's claims should be dismissed with prejudice.

       2.    <u>Relator has not Alleged that PAFMG Caused the Submission of Any Claims.</u>

Again, Relator's allegations concerning PAFMG are scant, at best. She alleges that PAFMG is a professional corporation and that Defendant Palo Alto Medical Foundation for Health Care, Research and Education dba Palo Alto Medical Foundation ("PAMF") has offices staffed by PAFMG physicians. SAC ¶ 23. Her only other allegation concerning PAFMG is that Sutter is "the corporate parent of, owns, or otherwise controls" PAFMG.[9] SAC ¶ 20. She does not otherwise mention PAFMG and instead collectively references "Defendants" without

---

[9] This allegation should be accorded no weight in light of California's prohibition on the corporate practice of medicine, Bus. & Prof. Code § 2400 *et seq*., and restrictions limiting the ownership of professional corporations to licensed professionals. Cal. Corp. Code § 13400.

mentioning *any* conduct by PAFMG.

"Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant.'" *Swartz*, 476 F.3d at 764 (citation omitted). The plaintiff "must, at a minimum identify the role of each defendant in the alleged fraudulent scheme." *United States ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 998 (9th Cir. 2011). This requirement is necessary to "inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz*, 476 F.3d at 764-65 (citation omitted). Moreover, the rule is the same when the defendants are related corporate entities. *See, e.g., United States ex rel. Pecanic v. Sumitomo Elec. Interconnect Prods. Inc.*, 2013 U.S. Dist. LEXIS 27913, 2013 WL 774177, at *5 (S.D. Cal. Feb. 28, 2013) (holding that plaintiffs may not "commingle" defendants, whether related entities or not, but rather must clearly "demonstrate that each entity is liable for its own role in the submission of false claims or statements"); *see also United States v. Safran Grp., S.A.*, 2017 U.S. Dist. LEXIS 8408, 2017 WL 235197, at *8 (N.D. Cal. Jan. 19, 2017) (holding that Relator's "generalized allegations made against the three 'Defendants' . . . make it impossible" to determine which defendant or defendants made false statements and certifications).

Without any allegation that PAFMG presented or caused to be presented any claim or made or used a false record or statement material to a false or fraudulent claim, Relator's claims against PAFMG must be dismissed with prejudice.

3.    Relator Again Fails to Allege Dr. Hong or PAFMG Had the Requisite Knowledge of False Claims.

The SAC fails to allege that Dr. Hong or PAFMG *knowingly* submitted any false claims. The scienter element is central to liability under the FCA and the CFCA. *U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1267 (9th Cir. 1996). "[A]fter alleging a false statement, a plaintiff must still establish scienter." *Winter ex rel. United States v. Gardens Reg'l Hosp. & Med. Ctr.*, 953 F.3d 1108, 1118 (9th Cir. 2020); *United States ex rel. Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112 (9th Cir. 2014) (dismissing FCA complaint under Rule 8(a) where relator failed to plausibly allege scienter).

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL. (415) 875-8500 • FAX (415) 986-2157

1    The issue is not whether the Defendants' coding practices lived up to Relator's standard.

2    The issue is whether the Defendants knew the law, violated the law, and knowingly submitted

3    false claims.  Relator has not alleged as much.  Relator simply states that "Defendants knowingly"

4    presented false claims or made or used false records and statements.  SAC ¶¶ 10, 15 (repeated at

5    ¶¶ 50, 55), ¶¶ 61, 62, 77-78.  These allegations are "[t]hreadbare recitals of a cause of action's

6    elements, supported by mere conclusory statements" and need not be accepted as true on a motion

7    to dismiss.[10]  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Because Relator does not allege (let

8    alone plausibly allege) a knowing violation of the FCA, the SAC should be dismissed.

9            4.    Relator Still Has Not Alleged Any Reverse False Claims by Dr. Hong or
                   PAFMG.

10

11    Relator again fails to allege reverse false claims actionable under the FCA, 31 U.S.C.

12    § 3729(a)(1)(G), or the CFCA, Cal. Gov't Code § 12651(a)(7) & (8).  Putting aside her summary

13    recitation of the applicable provisions of the FCA and CFCA in paragraphs 65-67 and paragraphs

14    83-87 of the SAC, respectively, her only allegation relevant to a claim of liability for reverse false

15    claims is found in paragraph 9 and repeated in paragraph 49.  She alleges: "Defendants'

16    misconduct has resulted in many tens of millions of dollars of overpayments from Medicare and

17    the State.  Sutter then compounded its misconduct by knowingly and improperly avoiding its

18    obligations to repay these overpayments to Medicare and the State."  SAC ¶ 9 (repeated at ¶ 49).

19    These allegations "are mere conclusions" and are therefore "not entitled to the assumption of

20    truth."  *Iqbal*, 556 U.S. at 1950.

21    Relator has failed to allege any facts that would support a theory that Dr. Hong or PAFMG

22    knowingly and improperly failed to repay the government.  In particular, the SAC includes no

23    allegations as to the existence of an obligation to pay or transmit money or property to the United

24    States or the State of California, let alone a false record or statement or concealment or avoiding or

25

26    [10] Relator makes no effort to distinguish between Defendants in making her conclusory
      allegations concerning knowledge.  Rather, each time she mentions scienter, she refers to
27    Defendants' collective knowledge (SAC ¶ 15 (repeated at 55), ¶¶ 61, 62, 77-78), with the
      exception of a lone and vague reference to knowledge on the part of "Sutter's surgeons" in
28    paragraph 10 and 50 of the SAC.

HOOPER, LUNDY & BOOKMAN, P.C.
101 MONTGOMERY STREET, 11TH FLOOR
SAN FRANCISCO, CALIFORNIA 94104
TEL (415) 875-8500 • FAX (415) 986-2157

1  decreasing an obligation to the United States or the State of California, as is required for liability

2  under 31 U.S.C. § 3729(a)(1)(G) or Cal. Gov't Code § 12651(a)(7).  Similarly, Relator simply

3  recites the elements of a claim under Government Code section 12651(a)(8) and fails to allege any

4  facts establishing that Dr. Hong or PAFMG was the "beneficiary of an inadvertent submission of a

5  false claim," discovered such false claims, and thereafter failed to disclose such claims to the State

6  of California.  Because Relator does not allege (let alone plausibly allege with particularity)

7  reverse false claim liability, her SAC should be dismissed with prejudice.

8          In addition, Relator's FCA and CFCA claims for reverse false claims should be dismissed

9  as redundant of her claims that Defendants caused the submission of false claims.  *See United*

10  *States v. Kinetic Concepts, Inc.*, No. CV0801885BROAGRX, 2017 WL 2713730, at *13 (C.D.

11  Cal. Mar. 6, 2017) ("When a relator "alleges a reverse false claim by claiming that the defendant

12  fraudulently overcharged the government and then failed to repay the government, courts have

13  consistently dismissed the claim as redundant of false statement and presentment claims.")

14  (citations omitted).

15  **V.      CONCLUSION**

16          Based on the foregoing, Defendants Roy Hong, M.D. aka Roy W. Hong and Palo Alto

17  Foundation Medical Group, Inc., respectfully asks this Court to dismiss Relator's claims against

18  Defendants with prejudice.

19

20  DATED:  March 1, 2021                    HOOPER, LUNDY & BOOKMAN, P.C.

21

22                                          By:  _____

23                                                SCOTT J. KIEPEN
                                                  KATRINA A. PAGONIS
24                                                JOSEPH R. LAMAGNA
                                            Attorneys for Defendants Roy Hong, M.D.
25                                          aka Roy W. Hong; Palo Alto Foundation Medical
                                            Group, Inc., a corporation
26

27

28